1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6  KOSSOFF PLLC,                              Lead Case No.

7          Debtor.                           21-10699-dsj

8  - - - - - - - - - - - - - - - - - - - -x

9  ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

10  CHAPTER 7 INTERIM TRUSTEE,

11          Plaintiff,                        Adv. Proc. No.

12  v.                                        22-01113-dsj

13  VNB NEW YORK LLC, ET AL.,

14          Defendants.

15  - - - - - - - - - - - - - - - - - - - -x

16  ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

17  CHAPTER 7 INTERIM TRUSTEE,

18          Plaintiff,                        Adv. Proc. No.

19  v.                                        22-01158-dsj

20  ROC-LE TRIOMPHE ASSOCIATES, LLC, ET AL.,

21          Defendants.

22  - - - - - - - - - - - - - - - - - - - -x

23

24

25

2

1

2    - - - - - - - - - - - - - - - - - - -x

3    ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

4    CHAPTER 7 INTERIM TRUSTEE,

5           Plaintiff,                        Adv. Proc. No.

6    v.                                       22-01141-dsj

7    PEREVOSKI, ET AL.,

8           Defendants.

9    - - - - - - - - - - - - - - - - - - -x

10   ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

11   CHAPTER 7 INTERIM TRUSTEE,

12          Plaintiff,                        Adv. Proc. No.

13   v.                                       22-01146-dsj

14   KOSSOFF,

15          Defendant.

16   - - - - - - - - - - - - - - - - - - -x

17   ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

18   CHAPTER 7 INTERIM TRUSTEE,

19          Plaintiff,                        Adv. Proc. No.

20   v.                                       23-01023-dsj

21   COLGATE UNIVERSITY, ET AL.,

22          Defendants.

23   - - - - - - - - - - - - - - - - - - -x

24

25

3

1

2    - - - - - - - - - - - - - - - - - - -x

3    ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

4    CHAPTER 7 INTERIM TRUSTEE,

5              Plaintiff,                    Adv. Proc. No.

6    v.                                      23-01062-dsj

7    AMERICAN EXPRESS COMPANY,

8              Defendant.

9    - - - - - - - - - - - - - - - - - - -x

10   ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

11   CHAPTER 7 INTERIM TRUSTEE,

12             Plaintiff,                    Adv. Proc. No.

13   v.                                      23-01066-dsj

14   WOART,

15             Defendant.

16   - - - - - - - - - - - - - - - - - - -x

17   ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

18   CHAPTER 7 INTERIM TRUSTEE,

19             Plaintiff,                    Adv. Proc. No.

20   v.                                      23-01069-dsj

21   ROSENBLATT,

22             Defendant.

23   - - - - - - - - - - - - - - - - - - -x

24

25

4

1

2   - - - - - - - - - - - - - - - - - - - -x

3   ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

4   CHAPTER 7 INTERIM TRUSTEE,

5           Plaintiff,                    Adv. Proc. No.

6   v.                                    23-01071-dsj

7   46/47 APARTMENT HOLDINGS LLC,

8           Defendant.

9   - - - - - - - - - - - - - - - - - - - -x

10  ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

11  CHAPTER 7 INTERIM TRUSTEE,

12          Plaintiff,                    Adv. Proc. No.

13  v.                                    23-01073-dsj

14  161 WEST 4 REALTY LLC,

15          Defendant.

16  - - - - - - - - - - - - - - - - - - - -x

17  ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

18  CHAPTER 7 INTERIM TRUSTEE,

19          Plaintiff,                    Adv. Proc. No.

20  v.                                    23-01074-dsj

21  169 WEST 22 STREET, INC.,

22          Defendant.

23  - - - - - - - - - - - - - - - - - - - -x

24

25

5

1

2   - - - - - - - - - - - - - - - - - - - -x

3   ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

4   CHAPTER 7 INTERIM TRUSTEE,

5          Plaintiff,                    Adv. Proc. No.

6   v.                                   23-01075-dsj

7   333 EAST 46TH STREET APARTMENT CORP.,

8          Defendant.

9   - - - - - - - - - - - - - - - - - - - -x

10  ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

11  CHAPTER 7 INTERIM TRUSTEE,

12         Plaintiff,                    Adv. Proc. No.

13  v.                                   23-01076-dsj

14  BANYAN TREE CAPITAL LLC,

15         Defendant.

16  - - - - - - - - - - - - - - - - - - - -x

17  ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

18  CHAPTER 7 INTERIM TRUSTEE,

19         Plaintiff,                    Adv. Proc. No.

20  v.                                   23-01077-dsj

21  145 HENRY PARTNERS, LLC,

22         Defendant.

23  - - - - - - - - - - - - - - - - - - - -x

24

25

6

1

2   - - - - - - - - - - - - - - - - - - - -x

3   ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

4   CHAPTER 7 INTERIM TRUSTEE,

5          Plaintiff,                    Adv. Proc. No.

6   v.                                   23-01079-dsj

7   PENNA,

8          Defendant.

9   - - - - - - - - - - - - - - - - - - - -x

10  ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

11  CHAPTER 7 INTERIM TRUSTEE,

12         Plaintiff,                    Adv. Proc. No.

13  v.                                   23-01080-dsj

14  BARASKY,

15         Defendant.

16  - - - - - - - - - - - - - - - - - - - -x

17  ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

18  CHAPTER 7 INTERIM TRUSTEE,

19         Plaintiff,                    Adv. Proc. No.

20  v.                                   23-01081-dsj

21  JELIC,

22         Defendant.

23  - - - - - - - - - - - - - - - - - - - -x

24

25

7

1

2    - - - - - - - - - - - - - - - - - - - -x

3    ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

4    CHAPTER 7 INTERIM TRUSTEE,

5         Plaintiff,                    Adv. Proc. No.

6    v.                                 23-01083-dsj

7    CURANOVIC, ET AL.,

8         Defendants.

9    - - - - - - - - - - - - - - - - - - - -x

10   ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

11   CHAPTER 7 INTERIM TRUSTEE,

12        Plaintiff,                    Adv. Proc. No.

13   v.                                 23-01086-dsj

14   SHAMAH,

15        Defendant.

16   - - - - - - - - - - - - - - - - - - - -x

17   ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

18   CHAPTER 7 INTERIM TRUSTEE,

19        Plaintiff,                    Adv. Proc. No.

20   v.                                 23-01092-dsj

21   ALEXANDER, ET AL.,

22        Defendants.

23   - - - - - - - - - - - - - - - - - - - -x

24

25

8

1

2   - - - - - - - - - - - - - - - - - - - -x

3   ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

4   CHAPTER 7 INTERIM TRUSTEE,

5          Plaintiff,                    Adv. Proc. No.

6   v.                                   23-01094-dsj

7   BLOOMINGDALE'S INC., ET AL.,

8          Defendants.

9   - - - - - - - - - - - - - - - - - - - -x

10

11

12             United States Bankruptcy Court

13             One Bowling Green

14             New York, New York

15

16             May 23, 2023

17             10:00 AM

18

19

20

21   B E F O R E:

22   HON.  DAVID S. JONES

23   U.S. BANKRUPTCY JUDGE

24

25

9

1

2  Adversary proceeding: 22-01113-dsj, Albert Togut, not

3  individually, but solely in his capacity as Chapter 7 interim

4  trustee v. VNB New York LLC, et al.

5  1) Scheduling conference

6

7  Adversary proceeding: 22-01158-dsj, Albert Togut, not

8  individually, but solely in his capacity as Chapter 7 interim

9  trustee v. Roc-Le Triomphe Associates, LLC, et al.

10  1) Pre-trial and case conference

11

12  Adversary proceeding: 22-01141-dsj, Albert Togut, not

13  individually, but solely in his capacity as Chapter 7 interim

14  trustee v. Perevoski, et al.

15  1) Pre-trial conference

16

17  Adversary proceeding: 22-01146-dsj, Albert Togut, not

18  individually, but solely in his capacity as Chapter 7 interim

19  trustee v. Kossoff

20  1) Pre-trial conference

21

22  Adversary proceeding: 23-01023-dsj, Albert Togut, not

23  individually, but solely in his capacity as Chapter 7 interim

24  trustee v. Colgate University, et al.

25  1) Pre-trial conference

10

1

2   Adversary proceeding: 23-01062-dsj, Albert Togut, not

3   individually, but solely in his capacity as Chapter 7 interim

4   trustee v. American Express Company

5   1) Pre-trial conference

6

7   Adversary proceeding: 23-01066-dsj, Albert Togut, not

8   individually, but solely in his capacity as Chapter 7 interim

9   trustee v. Woart

10  1) Pre-trial conference

11

12  Adversary proceeding: 23-01069-dsj, Albert Togut, not

13  individually, but solely in his capacity as Chapter 7 interim

14  trustee v. Rosenblatt

15  1) Pre-trial conference

16

17  Adversary proceeding: 23-01071-dsj, Albert Togut, not

18  individually, but solely in his capacity as Chapter 7 interim

19  trustee v. 46/47 Apartment Holdings LLC

20  1) Pre-trial conference

21

22  Adversary proceeding: 23-01073-dsj, Albert Togut, not

23  individually, but solely in his capacity as Chapter 7 interim

24  trustee v. 161 West 4 Realty LLC

25  1) Pre-trial conference

11

1

2    Adversary proceeding: 23-01074-dsj, Albert Togut, not

3    individually, but solely in his capacity as Chapter 7 interim

4    trustee v. 169 West 22 Street, Inc.

5    1) Pre-trial conference

6

7    Adversary proceeding: 23-01075-dsj, Albert Togut, not

8    individually, but solely in his capacity as Chapter 7 interim

9    trustee v. 333 East 46th Street Apartment Corp.

10   1) Pre-trial conference

11

12   Adversary proceeding: 23-01076-dsj, Albert Togut, not

13   individually, but solely in his capacity as Chapter 7 interim

14   trustee v. Banyan Tree Capital LLC

15   1) Pre-trial conference

16

17   Adversary proceeding: 23-01077-dsj, Albert Togut, not

18   individually, but solely in his capacity as Chapter 7 interim

19   trustee v. 145 Henry Partners, LLC

20   1) Pre-trial conference

21

22   Adversary proceeding: 23-01079-dsj, Albert Togut, not

23   individually, but solely in his capacity as Chapter 7 interim

24   trustee v. Penna

25   1) Pre-trial conference

12

1

2   Adversary proceeding: 23-01080-dsj, Albert Togut, not

3   individually, but solely in his capacity as Chapter 7 interim

4   trustee v. Barasky

5   1) Pre-trial conference

6

7   Adversary proceeding: 23-01081-dsj, Albert Togut, not

8   individually, but solely in his capacity as Chapter 7 interim

9   trustee v. Jelic

10  1) Pre-trial conference

11

12  Adversary proceeding: 23-01083-dsj, Albert Togut, not

13  individually, but solely in his capacity as Chapter 7 interim

14  trustee v. Curanovic, et al.,

15  1) Pre-trial conference

16

17  Adversary proceeding: 23-01086-dsj, Albert Togut, not

18  individually, but solely in his capacity as Chapter 7 interim

19  trustee v. Shamah, et al.,

20  1) Pre-trial conference

21

22  Adversary proceeding: 23-01092-dsj, Albert Togut, not

23  individually, but solely in his capacity as Chapter 7 interim

24  trustee v. Alexander, et al.,

25  1) Pre-trial conference

13

1

2   Adversary proceeding: 23-01094-dsj, Albert Togut, not

3   individually, but solely in his capacity as Chapter 7 interim

4   trustee v. Bloomingdale's Inc., et al.,

5   1) Pre-trial conference

6   2) Status conference

7   3) Status conference re: order signed on 4/17/2023 compelling

8   Imperial Business Solutions, LLC to comply with Bankruptcy Rule

9   2004 order and subpoena

10   4) Status conference re: order signed on 4/17/2023 compelling

11   Biz Advance Now, Inc. to comply with Bankruptcy Rule 2004 order

12   and subpoena

13   5) Status conference re: order signed on 4/17/2023 compelling

14   Ace Funding Source LLC to comply with Bankruptcy Rule 2004

15   order and subpoena

16

17

18

19

20   Transcribed by:   Sharona Shapiro

21   eScribers, LLC

22   7227 North 16th Street, Suite #207

23   Phoenix, AZ 85020

24   (302)263-0885

25   operations@escribers.net

14

1

2   A P P E A R A N C E S (All present by video or telephone):

3   TOGUT, SEGAL & SEGAL LLP

4        Attorneys for Chapter 7 trustee

5        One Penn Plaza

6        Suite 3335

7        New York, NY 10119

8

9   BY:   NEIL MATTHEW BERGER, ESQ.

10        JARED C. BORRIELLO, ESQ.

11        MINTA J. NESTER, ESQ.

12        RONALD HOWARD, ESQ.

13

14

15   MITCHELL H. KOSSOFF, Pro se

16

17

18   PARDALIS NOHAVICKA LLP

19        Attorneys for Peter Xenopoulos and

20        P. Xenopoulos Realty, LLC

21        950 Third Avenue

22        11th Floor

23        New York, NY 10022

24

25   BY:   TODD B. SHERMAN, ESQ.

15

1

2    MICHAEL B. KRAMER & ASSOCIATES

3          Attorneys for Hampton Management

4          488 Madison Avenue

5          Suite 1120

6          New York, NY 1007

7

8    BY:   MICHAEL BARRIE KRAMER, ESQ.

9

10

11   MCGRAIL & BENSINGER LLP

12         Attorneys for John Boswell

13         888-C Eighth Ave

14         Suite 107

15         New York, NY 1001

16

17   BY:   VERONIQUE URBAN, ESQ.

18

19

20

21

22

23

24

25

16

1

2   DAVID BOLTON, P.C.

3         Attorneys for Pamela Kossoff, in her capacity as

4         executor of the estate of Phyllis Kossoff

5         666 Old Country Road

6         Suite 509

7         Garden City, NY 11530

8

9   BY:   DAVID BOLTON, ESQ.

10

11

12   PRYOR CASHMAN LLP

13         Attorneys for Roc-Le Triomphe Associates, LLC

14         Hampton management

15         7 Times Square

16         New York, NY 10036

17

18   BY:   ANDREW S. RICHMOND, ESQ.

19         RICHARD LEVY, ESQ.

20

21

22

23

24

25

17

1

2   ZEICHNER ELLMAN KRAUSE LLP

3           Attorneys for Valley National Bank

4           1211 Avenue of the Americas

5           Suite 40th Floor

6           New York, NY 10036

7

8   BY:   BRUCE SETH GOODMAN, ESQ.

9

10

11  KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP

12          Attorneys for Michael Besen

13          200 West 41st Street

14          New York, NY 10036

15

16  BY:   BRENDAN M. SCOTT, ESQ.

17

18

19  BOND, SCHOENECK KING PLLC

20          Attorneys for Colgate University

21          One Lincoln Center

22          18th Floor

23          Syracuse, NY 1320

24

25  BY:   SARA C. TEMES, ESQ.

18

SIEGEL & SIEGEL, P.C.

 Attorneys for 333 East 46th St. Apartment Corp.

 521 Fifth Avenue

 Suite 1700

 New York, NY 1017


BY:   MICHAEL D. SIEGEL, ESQ.



TARTER KRINSKY DROGIN LLP

 Attorneys for Jelic

 1350 Broadway

 11th Floor

 New York, NY 10018


BY:   SCOTT S. MARKOWITZ, ESQ.



LAMONICA HERBST & MANISCALCO LLP

 Attorneys for Alexander

 3305 Jerusalem Avenue

 Wantagh, NY 1179


BY:   JOSEPH S. MANISCALCO, ESQ.

19

1

2   WILEY LLP

3         Attorneys for Continental Casualty Company

4         2050 M Street NW

5         Washington, DC 20036

6

7   BY:   MORGAN L. CHINOY, ESQ.

8

9

10  GOLDBERG SEGALLA LLP

11        Attorneys for Ives Sultan & Spike CPAs PLLC

12        711 Third Avenue

13        Suite 1900

14        New York, NY 10017

15

16  BY:   CHRISTOPHER F. LYON, ESQ.

17

18

19

20

21

22

23

24

25

**KOSSOFF PLLC**

20

1              P R O C E E D I N G S

2         THE COURT:  Good morning, everyone.  It's Judge Jones.

3    We're here for a 10 a.m. calendar in mostly adversary

4    proceedings and a couple of things in the main case arising out

5    of the Kossoff PLLC bankruptcy, number 21-10699.

6         Hello to all of you.  We have your appearances through

7    the sign-in process, I think, so I don't need to take

8    appearances.  And I'm open to efficiency suggestions, but my

9    thought coming in is, we have Mr. Kossoff on the line, and I

10   think -- my thought was, let's go through with the matters in

11   which he has an interest first, so that we can accomplish that,

12   and the institution can free up its support of that, if it

13   needs and wants, and then we can move through the remainder.

14        Ms. Nester, are you leading us today?  You're muted.

15        MS. NESTER:  Your Honor, Minta Nester, Togut, Segal &

16   Segal, counsel for the Chapter 7 trustee.  My colleague Jared

17   Borriello will be handling certain of the adversary

18   proceedings, as will I.  And then Ron Howard will be tackling

19   the few other matters.

20        THE COURT:  Okay.

21        MS. NESTER:  So I think that makes sense.  We can do

22   that approach.

23        THE COURT:  Okay.  So I think -- I want to make sure I

24   cover the matters that Mr. Kossoff has, meaning Mitchell

25   Kossoff, has played a role in, and I think that is the -- oh,

**eScribers LLC**

**KOSSOFF PLLC**

1    I'm looking at a calendar printout that cuts off defendants'

2    names.  But I think that's going to include the VNB matter,

3    the Roc -- I'm wrong.  I'm just not reading it properly.

4           So I think that's going to include the matters in

5    which the defendants are VNB New York LLC, Roc-Le Triomphe

6    Associates, maybe Perevoski, and Kossoff, numbers 22-1113,

7    1158, 1141, and 1146.  Do I have that right?

8           MR. BORRIELLO:  Your Honor, it's Jared Borriello from

9    Togut, on behalf of the defendant, Kossoff PLLC.

10          I think so.  VNB, which is 1113, is correct.  Mr.

11   Kossoff is not a defendant in 1141 or 1146.  I think --

12          THE COURT:  Okay.  So maybe we can just -- and how

13   about Roc-Le Triomphe, 1158?

14          MR. BORRIELLO:  Yes, he is.  He's also a defendant.

15   So we can cover those.

16          THE COURT:  So let's just do those two, right?

17          MR. BORRIELLO:  Yep, that's fine.  I'm handling the

18   Valley National Bank, VNB matter.  So we can start there, and

19   then I'll pass it to Ms. Nester, who will be handling the Roc-

20   Le Triomphe.

21          THE COURT:  Okay.  Great.  Let me, before you get

22   going, just ask, Mr. Kossoff, are you with us and able to hear

23   okay?  And if you can also say hello and make sure you're good

24   with this procedure.

25          MR. KOSSOFF:  Yes.  I have no problem with it, Your

**KOSSOFF PLLC**

22

1   Honor, and salutations of the day.

2          THE COURT:  Great.  Thank you very much.  When you do

3   speak, just try to speak a little loudly.  I could hear you

4   okay, but your volume was not robust.  But we're good.  Okay.

5   So let's --

6          MR. KOSSOFF:  Okay.

7          THE COURT:  Yeah.  Thanks very much.

8          So let's turn to VNB, please.  Go ahead, Mr.

9   Borriello.

10         MR. BORRIELLO:  Okay.  Good morning, Your Honor.

11  Again, Jared Borriello for the Chapter 7 trustee.

12         Since the last time we were before Your Honor, Valley

13  Bank -- VNB and Valley Bank and the trustee have continued to

14  engage in discussions involving both our financial advisors and

15  the exchange of additional information.

16         Unfortunately, to date, those discussions have not

17  been successful.  Similarly, with counsel for the estate of

18  Phyllis Kossoff, we continue to exchange information, but we

19  have not been able to reach a resolution.

20         So today we're proposing that we submit a scheduling

21  order to Your Honor so we can start to move that case forward.

22  We've previously circulated the order to both Valley Bank's

23  counsel and the estate of Phyllis Kossoff's counsel, and

24  they've signed off.  At least that's my understanding.  They

25  could tell you differently if that's the case.

**KOSSOFF PLLC**

23

1          I have not sent it to Mr. Kossoff yet.  The other

2    parties just signed off today.  But I'm happy to send him the

3    text of that order, given the limitations we have with the --

4          THE COURT:  Yeah.

5          MR. BORRIELLO:  -- in an email so he can --

6          THE COURT:  Well, let me -- I got it.  Let me just --

7    sorry to cut you off.  But let me just ask you to describe --

8    I'm picturing a fairly standard scheduling order that's going

9    to set a series of deadlines.  So do you want to just --

10          MR. BORRIELLO:  Sure.

11          THE COURT:  Do you want to please describe what those

12   are?

13          MR. BORRIELLO:  So we worked off of Your Honor's

14   standard, I think, form from the court portal.  We set initial

15   disclosures on June 22nd, the close of all fact discovery -- or

16   fact discovery for October 15th.  And then the close of all

17   discovery, including any expert discovery, for December 15th.

18          THE COURT:  Okay.  Do you know yet if this is going to

19   involve expert discovery?

20          MR. BORRIELLO:  For at least insolvency purposes, we

21   anticipate --

22          THE COURT:  Oh, right.

23          MR. BORRIELLO:  -- that the trustee will have an

24   expert.  And parties may also, if they're challenging our

25   insolvency determination, they'll likely have experts as well.

**KOSSOFF PLLC**

24

1        THE COURT:  Okay.  And are those dates contemplated to

2   apply to Mr. Kossoff in his role as defendant as well?

3        MR. BORRIELLO:  We are --

4        THE COURT:  In your view.

5        MR. BORRIELLO:  Yeah, we've contemplated them applying

6   to all defendants.  That's one of the reasons we built in a

7   good lead time for even initial disclosures.

8        THE COURT:  Right.

9        MR. BORRIELLO:  We thought that would be able to

10  accommodate his schedule.

11       THE COURT:  Okay.  So let me say a couple of things,

12  and then I'll ask Mr. Kossoff about this.

13       So first, thank you for undertaking this.  I think

14  I've previously said, either in this or other cases, I'm good

15  leaving people a reasonable amount of time to try to reach a

16  consensual resolution.  But if not, it needs to get on a

17  discovery track, or else this process will drag on forever.  So

18  you're implementing that right about in line with what I was

19  hoping to see.

20       As a general matter, I have a very broad brush, sort

21  of, sparse form order on the website, which is fine with me.

22  If people think it would be productive, I'm always open to

23  inserting more granular deadlines.  You can impose deadlines

24  for service of written document requests and interrogatories,

25  and then for responses, and so forth, like, whatever degree of

1  particularity you want, I'm open to, so don't think that's

2  something I don't like.  I just didn't impose it universally.

3  Okay?

4          MR. BORRIELLO:  Okay.

5          THE COURT:  So keep that in mind.  That said, I'm fine

6  with you using the sequence you described.

7          And let me turn to Mr. Kossoff.  This may be the first

8  you're hearing about this, but are you able to say whether

9  you're okay with the deadlines that Mr. Borriello described,

10  Mr. Kossoff?

11          MR. KOSSOFF:  Generally, I am.  I just have one or two

12  specific thoughts.

13          THE COURT:  Okay.  So why don't you let me know what

14  your specific thoughts are?  That's fine.

15          MR. KOSSOFF:  First of all, I want to thank you for

16  your decision on my motion for reargument.  And I assume the

17  July 12th conference is canceled.

18          THE COURT:  Wait.  You said -- I'm sorry.  You said

19  5/12, which is in the past.

20          MR. KOSSOFF:  No, July 12th.

21          THE COURT:  Oh, I misheard you.

22          MR. KOSSOFF:  July 12th.

23          THE COURT:  Sorry.  I don't know the answer off the

24  top of my head.  Let me see if we -- I don't know.  I don't

25  know the answer.  I have a lot of conferences on -- I just

**KOSSOFF PLLC**

26

1    looked at my calendar for July 12th.

2             MR. KOSSOFF:  It was set down in a separate --

3             THE COURT:  But let --

4             MR. KOSSOFF:  It was set down in a separate order for

5    Your Honor on scheduling of briefings of the reargument motion

6    and then a hearing on July 12th.

7             THE COURT:  Oh, if it was a hearing specific to that

8    motion, yeah, that won't go forward, because I've decided it.

9             MR. KOSSOFF:  Okay.  All right.  Also, Your Honor,

10   according to your suggestion, I sent out a letter to both

11   counsel for VNB and the trustee, on March 31st, asking for

12   certain documentation.  And I was given repeated assurances

13   that I would get that documentation.  But unfortunately, I have

14   not received it.

15            THE COURT:  Okay.

16            MR. KOSSOFF:  I'm wondering --

17            THE COURT:  Yeah, so let's do this.  I mean, really,

18   I'm interested in setting schedules at this point.  Since

19   everyone's together, I guess I can ask trustee counsel and then

20   VNB counsel where things stand on that, are they willing --

21   well, first, let me ask Mr. Kossoff, did your letter ask for

22   everything that you anticipate wanting by way of document

23   discovery in the case anyway?

24            MR. KOSSOFF:  No.  There's a second letter that I'm

25   probably going to be sending out with -- I wanted a copy of the

**eScribers LLC**

**KOSSOFF PLLC**

27

1   IRS claim filing online, since I can't access it online.

2          THE COURT:  Um-hum.

3          MR. KOSSOFF:  And as well as some billing summaries.

4   But yes, so there are two other additional items.

5          THE COURT:  Okay.  So what I'll --

6          MR. KOSSOFF:  It's --

7          THE COURT:  Yeah, hang on, Mr. Kossoff.  So look,

8   you're going to be in touch -- this discovery schedule that's

9   being imposed is going to include time for formal written

10  discovery requests.  I am all for cooperation and people

11  getting you whatever you're entitled to informally as well.

12  But with a backup, you can make formal written discovery

13  requests under the civil rules, and those are obliged to be

14  replied to.

15         But let me just hear quickly from --

16         MR. KOSSOFF:  Let me just speak to that.

17         THE COURT:  Oh, you've got one more thing?  Go ahead.

18         MR. KOSSOFF:  Let me just speak to that.  Will I be

19  able to, given my circumstances, just make these document

20  requests by letter?

21         THE COURT:  So you worded that as a question, but I'm

22  going to interpret that as a request that everyone accept

23  letter --

24         MR. KOSSOFF:  Yes.

25         THE COURT:  -- form document requests as more

**KOSSOFF PLLC**

28

1  achievable for you.  Is that right?

2         MR. KOSSOFF:  Yes.

3         THE COURT:  Okay.  So let me hear from -- I'll start

4  with the trustee about that.  So here are the questions for

5  you, Mr. Borriello.  One is -- well, we'll start with the last

6  thing.  Will you accept letter requests from Mr. Kossoff in

7  lieu of more formal written discovery requests?

8         The one thing I would say is, Mr. Kossoff, though, you

9  should be comprehensive.  You shouldn't hit the trustee with,

10  like, a series of letter requests.

11         MR. KOSSOFF:  I understand.

12         THE COURT:  So it has to be administrable.  But

13  subject to that, would that be workable for the trustee?  And

14  then the other is what's the status on any prior request for

15  information?

16         MR. BORRIELLO:  The trustee is -- sorry.  Jared

17  Borriello, for the record, Chapter 7 trustee.

18         We are -- the trustee is fine accepting discovery

19  requests in letter format, subject to our right to object and

20  respond accordingly.  The form of the request is not the --

21         THE COURT:  Yeah, of course; you'd preserve all of

22  responsive defenses.  Okay.

23         MR. BORRIELLO:  We would ask, as you said, that they

24  be served in a comprehensive manner, rather than one off

25  requests, just for administrative purposes and efficiency.

**KOSSOFF PLLC**

29

1        With respect to Mr. Kossoff's past requests, I have

2   been coordinating with Valley Bank to send him hard files of

3   what I understood is what he wanted.  I believe they were sent,

4   but I can let Valley's counsel speak to that.

5        As to the IRS proof of claim, we can send him a copy

6   of that document.  That's not a problem.

7        THE COURT:  Great.

8        MR. BORRIELLO:  So I think that covered everything he,

9   Mr. Kossoff, raised.

10        I would raise one issue for Your Honor.  To the extent

11   he is requesting documents that would involve spreadsheets or

12   financial information, I'm not sure how we could produce

13   certain documents to him, given his limitations in accessing

14   only hard copy files, given, if you would print some of these

15   files, you're talking about tens of thousands, potentially, of

16   pages.

17        THE COURT:  Okay.  Yeah, I don't have to get into that

18   on --

19        MR. BORRIELLO:  Yeah.

20        THE COURT:  -- the spot today.  But we'll have to

21   figure that out.  So yeah, we'll just have to -- I'll let you

22   and he try to communicate about that.  I take your point.

23   Right, you're talking about information that exists in

24   electronic form and --

25        MR. BORRIELLO:  In electronic form.

**KOSSOFF PLLC**

30

1          THE COURT:  -- when you print it you get a mess.

2   Okay.  Understood.  So I'm going to let you and he -- that's

3   not ripe for today, but I'll want you to try to work out

4   something constructive.

5          MR. BORRIELLO:  I just wanted to flag it, because we

6   may have to contact the facility to see if they can provide

7   some accommodation.

8          THE COURT:  Yeah, if that's doable.  Yeah, that's a

9   challenging circumstance for sure.  Okay.  So look, I think

10  that covers Mr. Kossoff's things.

11         MR. KOSSOFF:  One other thing.

12         THE COURT:  Yeah.  Okay.  Let me finish my --

13         MR. KOSSOFF:  The reorder --

14         THE COURT:  Let me finish my sentence.  Hang on.  I'll

15  come back to you.  Let me finish my sentence.  So far, of the

16  issues Mr. Kossoff has raised, which are all appropriate for

17  raising, I think we're okay.  This doesn't cause a deviation

18  from the scheduling sequence Mr. Borriello described.  And then

19  I'll want everyone to proceed as described.

20         You're good making letter discovery requests as long

21  as they're not piecemeal.  And it sounds like everyone's

22  working on the information you previously requested.

23         MR. GOODMAN:  Yes.

24         THE COURT:  If something got lost in the mail, they

25  can try to resend and make sure you put legal mail on it or

**KOSSOFF PLLC**

31

1   whatever the facility needs.

2            MR. GOODMAN:  If I may, Your Honor?

3            THE COURT:  Oh, yeah, go ahead.  Is that counsel for

4   VNB?

5            MR. GOODMAN:  It is, Your Honor.  Thank you.  I just

6   wanted to add one thing.  So --

7            THE COURT:  Yeah.  Say your name for the transcript.

8   Go ahead.

9            MR. GOODMAN:  I apologize, Your Honor.  Bruce Goodman,

10  with the law firm of Zeichner Ellman & Krause, on behalf of

11  Valley National Bank and VNB New York LLC.

12           To add to what Mr. Borriello was saying, within the

13  last ten days, we mailed to Mr. Kossoff the identical set of

14  documents that we previously produced to the trustee in

15  connection with our ongoing settlement talks, which constitutes

16  the bank's loan file and underwriting file for the two loans

17  that are the subject of the adversary complaint.

18           So Mr. Kossoff, if he hasn't already received those,

19  should be receiving those shortly.  I don't know how long it

20  takes for them to get to him.  But they were mailed, as I said,

21  about ten days ago.

22           And concerning future discovery, it's all the

23  documents we have.  So to the extent that Mr. Kossoff wants to

24  serve formal document demands, whether by letter or otherwise,

25  these are the documents we would produce.  So he has --

**KOSSOFF PLLC**

32

1           THE COURT:  Okay.  Great.

2           MR. GOODMAN:  He has all of the documents.

3           THE COURT:  Okay.  That's helpful.

4           MR. GOODMAN:  Or will shorty.

5           THE COURT:  I got it.  Okay.  So Mr. Kossoff, just

6    keep an eye out for your incoming mail --

7           MR. KOSSOFF:  Can I --

8           THE COURT:  -- for that.  And if it doesn't show up,

9    in some normal amount of time for your circumstances, with a

10   little bit of a margin, just let folks know.  I'm sure they'd

11   be happy to resend.  And if --

12          MR. KOSSOFF:  I've had documents --

13          THE COURT:  -- there's specific labeling, let them

14   know.  Go ahead.

15          MR. KOSSOFF:  I've had documents that have been sent a

16   couple of days ago that I've received.  What I fear is that VNB

17   counsel didn't address them correctly.  Trustee counsel knows

18   how to address them, but it has to be -- the first line of the

19   addressee has to be legal mail, then my name, then my DIN

20   number, then the address.  And if VNB counsel has not addressed

21   them in that fashion, they will be returned to them.

22          MR. GOODMAN:  So I can speak to that, Your Honor.  I

23   addressed them exactly as I was instructed to address them by

24   Mr. Borriello.  He provided me with the address, and it

25   contained all of those items.

**KOSSOFF PLLC**

33

1          THE COURT:  Okay.  Look, just give it a little time.

2     I mean, we're adopting a schedule that has the benefit of

3     building a little cushion in for exactly this kind of thing.

4     So it sounds like you should be getting it.  And if it doesn't

5     show up soon, just let Mr. Goodman know, or the trustee, if you

6     have easier access, and they can let Mr. Goodman know, and it

7     could be resent.  But I don't want to put them to the labor of

8     that until we give enough time for delivery.  Okay.

9          Mr. Kossoff --

10          MR. KOSSOFF:  Your Honor --

11          THE COURT:  -- you said you had one more thing?

12          MR. KOSSOFF:  Yeah.  To the extent -- I mean, I don't

13     really -- I'm not going to require anybody's deposition, and I

14     don't have any expert.  I won't be sending out any

15     interrogatories.  But to the extent that either party wants my

16     deposition, I just want to remind them that that has to be

17     arranged directly with the prison, not with me, to be produced.

18     And I assume I'll have to be present for some sort of zoom

19     format for it.  So I'm just stating that for the record.

20          THE COURT:  Okay.  Yeah, let me say, our chambers is

21     very grateful to the folks at the facility, and we have a

22     standard contact that we use there for logistics.  The trustee

23     might as well.  But I'm just going to say anybody is welcome to

24     contact chambers if they need a contact person.  I don't want

25     to be roped into arranging the deposition, but if you need a

**KOSSOFF PLLC**

34

1  contact, you can contact us; we can provide it.  I'm sure

2  they'll be helpful.  They're terrific.

3       And if you need an order from the Court to cause Mr.

4  Kossoff to be produced -- I think is probably the verb for a

5  deposition -- we can enter such an order.  Just get us a

6  proposed order.  Okay?  So it's good we're taking the time to

7  talk through all of these issues, but so far, I think

8  everything's manageable.

9       Okay.  I think I've heard pretty fully from Mr.

10  Borriello on the VNB matter.  But let me just see if Mr.

11  Goodman wanted to raise anything else.

12       MR. GOODMAN:  Just one last point, Your Honor.  As Mr.

13  Borriello described, we've been in ongoing discussions.  I

14  think they've been conducted in good faith.  Notwithstanding

15  the fact that we've agreed to, and Your Honor will be shortly

16  entering a case management order, those discussions are still

17  ongoing.

18       And we intend on reaching out to the trustee shortly

19  after we've conferred with our client about our latest round of

20  talks and our expert witness.  And I'm not suggesting it will

21  resolve, but I'm not saying it won't resolve either.  But the

22  fact that the parties are entering into a case management order

23  doesn't mean that the discussions have broken down or have been

24  unsuccessful.

25       THE COURT:  Right.

**KOSSOFF PLLC**

35

1         MR. GOODMAN:  We just --

2         THE COURT:  Okay.

3         MR. GOODMAN:  -- haven't resolved everything to this

4   point.  With that, Your Honor, if the VNB case is over, I would

5   request Your Honor's leave to drop off the call.

6         THE COURT:  I'm going to say something about it, and

7   then, yes, you can go.

8         So first let me say, in response to what you said,

9   that's great.  My intention is that people keep talking.  It's

10  just, if talks don't end quickly, I want to put people on a

11  litigation footing, both so that the case can reach a

12  conclusion at some reasonable time, and because that sometimes

13  will incentivize and focus the mind and get people done with

14  their talks.  So I definitely intend to -- there's never an

15  inappropriate time to talk, and I'm glad you are acting in

16  accord with that thought.

17        The other thing I want to say is, so having heard all

18  the parties, the proposed schedule described by Mr. Borriello

19  is going to be approved.  You can just submit it as a proposed

20  order, maybe referencing notice to all parties in discussion on

21  the record at today's hearing.  And I will get that entered.

22        MR. KOSSOFF:  I didn't take --

23        THE COURT:  Do you know, Mr. -- sorry, go ahead, Mr.

24  Kossoff.

25        MR. KOSSOFF:  I didn't take the dates down.

**eScribers LLC**

**KOSSOFF PLLC**

36

1          THE COURT:  Oh, yeah, I'll tell them to you again.

2    Are you ready?  Are you ready?

3          MR. KOSSOFF:  Pardon me?

4          THE COURT:  I'm going to give them to you again.

5          MR. KOSSOFF:  Yes.  Okay.

6          THE COURT:  Initial disclosures to be served by June

7    27th; close of fact discovery, October 15; close of all

8    discovery, including experts, December 15, all of 2023.

9          MR. KOSSOFF:  Okay.  And just another quick question,

10   Your Honor.  Nothing that is being ordered today precludes me

11   from, at some point, making a motion for -- sending a request

12   to have a conference on a possible Rule 7056 motion if I so --

13         THE COURT:  Right.  I mean, typically -- my very

14   strong preference is to not consider summary judgment motions

15   until the close of discovery.  They're almost always premature

16   before that point, and it interrupts -- it delays the

17   resolution of the case.

18         That said, any party -- this is without prejudice to

19   any party's right to request anything at any time, really.  So

20   it's primarily -- this is simply putting a roadmap for

21   discovery in place, and a schedule for discovery, so that we

22   have defined expectations and deadlines and the case can get

23   done in good order.  Okay.

24         MR. KOSSOFF:  Okay.  Thank you, Your Honor.

25         THE COURT:  All right.  So that resolves, I think, the

**KOSSOFF PLLC**

37

1   VNB matter.  And let's see; I guess I'll just ask the trustee

2   to order a transcript of the whole hearing, including this,

3   just to capture the discussion.  We may well want to refer back

4   to it.

5           All right.  So that concludes case number 22-1113,

6   which is Togut v. VNB.

7           And I think we're ready to proceed to 22-1158, which

8   is the Roc-Le Triomphe matter.

9           MR. GOODMAN:  Thank you, Your Honor.  I'm going to be

10  dropping off.  I appreciate it.

11          THE COURT:  Okay.  Take care, Mr. Goodman.

12          MR. GOODMAN:  Thank you.

13          MS. NESTER:  Minta Nester, counsel for the Chapter 7

14  trustee.

15          As Your Honor mentioned, the next item up is the

16  adversary proceeding number 22-1158.  This is a complaint

17  brought against Roc-Le Triomphe Associates, Hampton Management

18  Company, and Mr. Kossoff, seeking to avoid transfers totaling

19  not less than $1,616,797.55 in connection with the lease on Mr.

20  Kossoff's personal family residence.  Most recently --

21          THE COURT:  I'm sorry.  Can you give me the dollar

22  amount again?  I just didn't absorb it.

23          MS. NESTER:  $1,616,797.55.

24          THE COURT:  Okay.  Thanks.

25          MS. NESTER:  So recently, as Your Honor will recall,

**KOSSOFF PLLC**

38

1   on April 14th, Roc and Hampton's counsel made a request for

2   mediation; that's docket number 34.  The trustee opposed this

3   request; that's at docket number 35.  And in short, we believe

4   mediation was premature at this stage and would not be

5   productive and that discovery was necessary to move forward on

6   an informed basis.

7         At a conference held on April 26th, the request to

8   refer the matter to mediation was denied, and an answer

9   deadline was set for May 16th.  At that conference, the Court

10  also referenced getting us on a discovery schedule that would

11  be reasonably prompt; that's the transcript at page 13, lines

12  16 to 21.  And in the order that followed, at docket number 44,

13  there's a reference to the parties may propose a case

14  management order and discovery order prior to the conference

15  now scheduled for May 23rd.

16        Consistent with those instructions, answers were filed

17  on the docket.  Mr. Kossoff's answer appears at docket number

18  47, and Roc/Hampton's answer appears at docket number 48.  I'll

19  note that answer includes fact intensive affirmative defenses

20  related to, among other things, good faith and the treatment of

21  the debtor vis-a-vis Mr. Kossoff.

22        Also consistent with the Court's instructions, we sent

23  counsel for Roc and Hampton a proposed case management order on

24  May 9th.  It had dates that would have been keyed off the May

25  16th answer deadline.  In response, counsel indicated that they

**KOSSOFF PLLC**

39

1   would like to move for judgment on the pleadings.

2          For similar reasons that we stated in connection with

3   the mediation, we don't believe that this is a situation that's

4   appropriate for dispositive motions before the end of

5   discovery.  As we stated at the mediation conference, discovery

6   is necessary here, given the assertions by the parties.  And

7   there's been nothing to change that, certainly nothing

8   contained in the answer.  Rather, it would deprive the trustee

9   of the ability to obtain the documents and information that we

10  need.

11         And we believe this echoes sentiments that the Court

12  has made at that conference, again, the conference on April

13  26th, transcript 22, lines 19 to 23.  Generally, it's

14  inefficient and usually not justified to entertain summary

15  judgment motions until the end of discovery.  Certainly this is

16  a motion for judgment on the pleadings, but we also believe it

17  would be inefficient and not aid resolution.

18         So for those reasons, we would respectfully request

19  that the Court direct the parties to confer about a case

20  management order with discovery deadlines.

21         THE COURT:  Okay.  And you haven't had discussions, as

22  of this minute, about what those dates would look like?

23         MS. NESTER:  Our draft contained proposed dates.  I do

24  know that counsel has indicated that we would want to work

25  those out, so I'm happy to tell the Court what those were.  I

**KOSSOFF PLLC**

40

1   don't believe that's where we were --

2          THE COURT:  Okay.  Well, no, my question was just is

3   there a meeting of the minds on that, I guess.  And the answer

4   is certainly not a meeting of the minds.  That's fine.

5          Okay.  So let me say something, and then turn to

6   counsel for Roc-Le Triomphe.  The something I want to say is

7   Ms. Nester has done a nice job of quoting my own words, saying

8   my general opinion, which I continue to hold, which is these

9   cases deserve to move and have a discovery schedule.

10          I will say I have a principled reticence about my own

11   power to tell people they may not move, although I can control

12   the timing.  So I'm going to let Roc-Le Triomphe describe what

13   their contemplated motion is, but with a very great likelihood

14   that, at best, I might let you file it without delaying

15   discovery, and I might reserve the right to rule on it without

16   requiring the trustee to respond, if I eyeball it and think

17   it's just clearly not viable.  However, I might, on the other

18   hand, ask the trustee to brief it up, if that's not the case.

19          So having said all that, let me hear from counsel for

20   Roc-Le Triomphe, and get your take, including an explanation of

21   what you want to do.

22          MR. LEVY:  Good morning, Your Honor.  Richard Levy of

23   Pryor Cashman, on behalf of the defendants, Roc-Le Triomphe and

24   Hampton Management.  I'm joined by my colleague Andrew

25   Richmond.  And co-counsel, Michael Kramer, is also on the line.

**KOSSOFF PLLC**

41

1          Your Honor, before I get into details, let me just

2    indicate that our preliminary discussions on case management,

3    to my knowledge, have not included Mr. Kossoff directly.  So I

4    can't speak to whether or not any particular deadlines or

5    intervals are or are not acceptable to him.  We can obviously

6    deal with that, I suppose, as we move forward.

7          Your Honor, let me supplement Ms. Nester's overview of

8    the status of the matter.  As you know, Your Honor, the parties

9    spent a long time before the answering phase in an attempt to

10   resolve the matter consensually.  That, regrettably, did not

11   work, despite what I believe are our best intentions and, I

12   assume, the trustee's best intentions.  And the trustee made

13   the point to Your Honor that it wanted to proceed into

14   discovery and get this case moving.

15         Between the time of the conference on mediation, at

16   the end of April, and the time that we filed our answer,

17   roughly a week ago or ten days ago, we spent a lot of time

18   reviewing, scrubbing, considering the allegations in the

19   complaint, and applicable law relevant to it, and came to the

20   conclusion that we have viable motions for judgment -- a viable

21   motion for judgment on the pleadings on a number of grounds

22   that I will summarize in a moment for Your Honor.

23         I recognize that we are on the threshold of discovery.

24   However, the trustee, having indicated at the last conference

25   that he intended to get moving into the discovery phase,

**KOSSOFF PLLC**

42

1  obviously, Your Honor, the right to file a motion that may be

2  dispositive of some or all of the claims at this point is

3  something that we view is very important and relevant both to

4  case management and to the further proceedings in this case.

5  If we are correct, there may be a substantial narrowing of the

6  issues for which discovery is required and potentially all

7  issues or virtually all issues.  So for that --

8         THE COURT:  Wait.  Is this a partial motion or

9  formally a motion for complete judgment on the pleadings as to

10 the --

11        MR. LEVY:  Your Honor, we are in the process of

12 evaluating that right now.  We believe we have -- now would be

13 a good point for me to summarize what our thinking is.

14        Your Honor, number one, let me remind the Court, as

15 Ms. Nester told you, that there were 1.6-plus million dollars

16 of transfers at stake.  Roughly 960,000 of that are what are

17 called direct transfers in which the trustee alleges that the

18 monies were paid directly by the debtor.

19        The balance -- I forget the exact number, but the

20 balance, based on the mathematics, are what are called indirect

21 transfers, where the complaint alleges, on its face, the

22 transfers went from the debtor to Mr. Kossoff, and then from

23 Mr. Kossoff to my clients.  That's what are called the indirect

24 transfers.

25        I'm going to start there because we believe, based on

43

1  the complaint, we've got a motion for judgment on the

2  pleadings, based on the defenses of the subsequent transferee

3  under Section 550(b), and that would resolve forty percent

4  of -- let's call it roughly forty percent of the monetary

5  claims at issue.

6          Number two, Judge, on the direct transfers, the

7  balance of the transfers direct, we believe that there is a

8  defense, as a matter of law, based on our client's status as a

9  holder in due course of checks that were issued by the

10 trustee -- excuse me, by the debtor, in payment of those 960-

11 some-thousand dollars of direct transfers.

12         Thirdly, Your Honor, the trustee has a complaint for

13 unjust enrichment.  We believe that, under applicable law and

14 jurisprudence, that claim is not viable under either the in

15 pari delicto standard, the Wagoner Doctrine, or otherwise.

16         We certainly believe that the existence of the lease

17 will defeat the unjust enrichment claims as they relate

18 certainly to the indirect transfers.  But whether it reaches

19 the directs is another question.  But again, the existence of a

20 lease surely resolves the unjust enrichment claim as to the

21 indirect transfers.

22         Fourth, Your Honor, virtually all of the trustee's

23 counts allege that Roc and Hampton were persons for whose

24 benefit transfers were made, which I believe is a not so veiled

25 attempt by the trustee to assert the equivalent of initial

**KOSSOFF PLLC**

44

1    transferring of liability against Roc and Hampton on all

2    claims.

3          Now, there is strong jurisprudence, in this court and

4    in this circuit, to the effect that claims based on "for the

5    benefit of" don't lie against a party that actually received

6    the money.  Those claims are -- the "for the benefit of" claims

7    are typically codebtors, guarantors, sureties, and the like who

8    have not physically received the money but received some

9    economic benefit by virtue of the transfer to another party.

10   So we think that all of those claims will drop out as a matter

11   of course.

12         Finally, Judge, we are evaluating whether, on the face

13   of the complaint and the allegations concerning the overlap,

14   for lack of a better word, between Mr. Kossoff and the debtor,

15   render them a single entity such that payments out could

16   benefit --

17         THE COURT:  Wait, can I jump in?

18         MR. LEVY:  Of course, Your Honor.

19         THE COURT:  On that one, I don't see how that's a Rule

20   12 motion.  I mean, some of the others sound Rule 12 motion-

21   like.  But is does that last issue going to be a Rule 12

22   motion?

23         MR. LEVY:  Well, if the trustee has admitted that they

24   were common entities, and Your Honor can make a conclusion that

25   they were common or commonly-controlled entities, we think that

**KOSSOFF PLLC**

45

1    there is a basis for a determination that the benefit to one

2    constituted a benefit to both.

3              THE COURT:  Isn't that in tension with your direct/

4    indirect payment dichotomy?  You're saying money floated

5    from --

6              MR. LEVY:  Of course --

7              THE COURT:  -- PLLC right into Mr. Kossoff, and thence

8    to you, so if that collapses, you're risking a mess for

9    yourself.

10             MR. LEVY:  We understand that, Your Honor, which is

11   why I said we are evaluating our position on that --

12             THE COURT:  Okay.

13             MR. LEVY:  -- at this point.  But I wanted to be fair

14   to Your Honor in explaining the potential scope of our motion.

15             THE COURT:  Okay.  And why did you not file a motion

16   and instead choose to file an answer?

17             MR. LEVY:  Your Honor, for several reasons.  Number

18   one, we spent most of the first several months of this case

19   concentrating our efforts and resources on the settlement

20   process, preparing statements of position, and the like.  We

21   had not contemplated at that point whether or not a motion was

22   viable, whether or not it was appropriate.

23             In the time since what I will call the suspension of

24   the settlement process, and the attempt to put the case into

25   mediation, as I said earlier, we scrubbed our thinking on the

**KOSSOFF PLLC**

46

1  complaint, looked at it in much greater detail, with an eye

2  towards determining what defenses we had, what admissions and

3  denials, and that led us to further analysis and research,

4  which gives us, we believe, the bases to proceed with a motion

5  at this time.

6        THE COURT:  Okay.  I got it.  And Mr. Levy, turning to

7  what discovery would look like, what do you need from the

8  trustee or others to carry out discovery in the case?

9        MR. LEVY:  Off the top of my head, Your Honor -- I'm

10  going to do it sort of in a structured manner.  First, we

11  contemplated internally that we would be taking written

12  discovery of both the trustee and Mr. Kossoff at the outset.

13  We contemplated that that would be document requests and

14  interrogatories.  I'm not ruling out whether there was anything

15  else that would be appropriate, whether it would be requests

16  for admission or not.

17        I understand that, given Mr. Kossoff's situation being

18  in state custody, that the question of what we can get from

19  him, how quickly, and documents, in particular, may be a

20  complication that we'll have to deal with as a management

21  issue.

22        We then thought, Your Honor, that after that process,

23  which in my mind I would think would be thirty days to propound

24  requests, thirty to forty-five days for responses, possibly a

25  second round of written discovery, if prompted by the first set

**KOSSOFF PLLC**

47

1   of materials, would then be followed by fact depositions.  We

2   would intend to depose Mr. Kossoff.  We would intend to depose

3   members of Mr. Kossoff's family.  We may have other parties we

4   wish to depose, including the trustee and trustee's analysts,

5   who have prepared some of the information that we see in the

6   complaint.  I'm not ruling out any other possibilities.  That's

7   what we see at this point.

8         After the close of fact discovery, we have not yet

9   made a determination of whether we will be retaining an expert

10  or not.  I understand that the trustee has the burden on

11  insolvency.  And I'm going to reserve the right for expert

12  depositions of at least the trustee's experts.

13        THE COURT:  Okay.  Got it.  All right.  So look, it

14  seems like you're talking a good minimum of a six-month loop,

15  right?

16        MR. LEVY:  On discovery?

17        THE COURT:  Yeah.

18        MR. LEVY:  Or including the motion practice?

19        THE COURT:  No, setting aside the motion practice.

20        MR. LEVY:  That's roughly what I contemplated, Your

21  Honor.  I'm looking at a penciled schedule I put up, and I have

22  a conclusion of fact discovery at the end of the year or early

23  January, with experts to follow.

24        THE COURT:  Okay.  All right.  Thank you for walking

25  me through all of that.  I mean --

**KOSSOFF PLLC**

48

1          MR. LEVY:  And Your Honor, may I step back on that for

2    a second?  That would be a discovery schedule without motion

3    practice.  If we were to proceed with a motion for judgment on

4    the pleadings, I would propose, in order to avoid unnecessary

5    expense, and facing the possibility that some -- some part of

6    the complaint, if not all, drops out of the case, that that

7    will certainly reduce the discovery burden for all parties and

8    management issues for the Court going forward.  And I would

9    suggest that the motion process be completed with dates then to

10   run from the time Your Honor disposes of it.

11          THE COURT:  What is your best pushback to my thinking

12   that, particularly since the case was filed back in October,

13   it's appropriate to move on discovery, let you file your

14   motion, twin track it; if you file your motion promptly enough,

15   you'll have an answer before you get around to anything more

16   than written discovery anyway, and then we won't have wasted

17   time.

18          MR. LEVY:  Well, Your Honor, it does pose somewhat of

19   a management issue for my team.  We have limited numbers of

20   people working on the case, and we don't want to overload this

21   for the client.  The client is obviously more interested in

22   devoting resources to resolving the case consensually, as

23   opposed to on a litigated matter, as we have repeatedly said to

24   the Court.

25          That's my basic thinking, Your Honor.  We are prepared

**KOSSOFF PLLC**

49

1    to file a motion within a matter of weeks, mid-June, which

2    would be intended not to prolong the agony, if you will, and

3    give Your Honor and the parties time to fully brief the matter,

4    and for the Court to make an educated determination, at which

5    point there may be not much more to do, or there may be more to

6    do.

7              THE COURT:  Okay.  I mean, I'll just say that's three

8    weeks from now.  A normal briefing cycle might end at the end

9    of July.

10             MR. LEVY:  Your Honor, I asked the trustee when we

11   started; I explained that we would be prepared to file our

12   motion mid-June, and we would be prepared to work with them on

13   whatever period of time they wished for a response.  And we

14   would obviously want a couple of weeks, maybe three weeks, for

15   our reply.

16             THE COURT:  Yeah.  Let me hear from the trustee about

17   all this.

18             MS. NESTER:  Minta Nester, counsel for the Chapter 7

19   trustee.

20             Two general responses, Your Honor.  The first is we'd

21   certainly like to move forward with discovery, twin track

22   through any motion that may go forward.  We think that there is

23   an importance in getting on this discovery schedule, litigating

24   this case, moving towards a resolution that way.  We think

25   these are documents and materials we need to be able to

**KOSSOFF PLLC**

50

1  evaluate this matter.

2       I also believe we would be able to do so on a time

3  line a little bit shorter than what counsel referenced.  And so

4  I would propose a --

5       THE COURT:  Sorry.  A briefing schedule or a --

6       MS. NESTER:  Oh, I apologize, Your Honor.

7       THE COURT:  -- discovery schedule?

8       MS. NESTER:  A discovery schedule that's a little bit

9  shorter than what counsel proposed.  So I would ask that we

10  move forward with the discovery.  We can meet and confer about

11  specific dates, as I think we're on the same track with regards

12  to the steps, initial disclosures, written discovery, fact

13  depositions, and expert discovery.  And then if the Court would

14  like to allow this motion to move forward at this time, before

15  the close of discovery, to set a briefing schedule for that,

16  but to not hold up the --

17       THE COURT:  All right.  Yeah, I got it.  Here's

18  what -- I'm going to cut you off, because I think I have a

19  pretty clear sense of what I ought to do, and I'll explain why.

20  And this also I recognize -- I am not losing sight of the fact

21  that Mr. Kossoff is a defendant as well.  So this really

22  governs two of the parties, I guess, Roc-Le Triomphe and

23  Hampton Management.

24       So Mr. Levy has persuaded me that he's describing a

25  thing that sounds like a -- it does sound like a threshold

**KOSSOFF PLLC**

51

1    sufficiency of the pleadings type motion.  And so I'm willing

2    to have that be filed and not, sort of, use my case management

3    authority to tell him, no, that's an end of discovery motion.

4           But I do -- I think the -- I am going to want twin

5    tracking.  I will, a little bit, cushion the blow by

6    contemplating that I'll approve a discovery schedule that

7    let's -- I'm going to tell you all to talk off line and submit

8    a proposed scheduling order that's a combo briefing schedule.

9    And you can contact chambers for an argument date as part of

10   that, as well as discovery schedule.

11          It is to be twin tracked.  If you want to slightly

12   push out your commencement of discovery date to maximize the

13   prospects of a narrowing of issues, particularly before you get

14   to fact -- to discovery -- excuse me, to depositions, or other

15   burdensome steps, I would listen to that.

16          Mr. Levy described a sort of standard, somewhat

17   leisurely briefing approach.  I mean, not crazily leisurely,

18   but the kind of thing that I might be more receptive to.  I

19   don't like to impose impossible schedules on people, but the

20   case is six months old, so I don't want to just say, oh, we can

21   now just act as if six months haven't passed.  This is sort of

22   the price of the amount of leeway you got before, and we need

23   to move towards results.

24          So bottom line, please talk, work out a briefing

25   schedule.  You're going to have to, sort of, use your judgment

**KOSSOFF PLLC**

52

1  to balance your desire to have an answer and a narrowed scope

2  of discovery sooner versus your desire to have a lifestyle

3  sustainable briefing sequence.  And also you're going to have

4  to, sort of, put discovery in place at the same time because,

5  given the passage of time, I don't want things to carry on.

6       It sounds like you don't -- I think you two need to

7  have a discussion.  And so I'm not going to try to lock in

8  dates on the spot.  But that does raise the complication of Mr.

9  Kossoff's scheduling needs.

10      So let me just ask Mr. Kossoff this.  If we have a

11  discovery schedule that's comparable to the VNB case that was

12  just discussed, is that something that's viable for you?  I'm

13  wondering if we can sort of preemptively lock in dates that are

14  going to be acceptable?

15      MR. KOSSOFF:  I have not --

16      THE COURT:  Again, I'll repeat what those were.  Yeah,

17  Go ahead, Mr. Kossoff.

18      MR. KOSSOFF:  Yes, I have them.  I have them.  And I

19  don't have a problem with them.  I would just -- the only thing

20  I would say, because I've been thinking about these

21  interrogatories, and you know my ability to respond is somewhat

22  limited to a typewriter, but not on JPay.

23      And neither VNB counsel, nor counsel for Roc-Le

24  Triomphe -- and I don't think that -- I'm not trying to cast

25  aspersions -- have come on JPay with me.  But if counsel for

53

1   Roc-Le Triomphe would come on JPay, then I would have somewhat

2   of a word-processing ability in responding to interrogatories,

3   which would, I believe, be helpful to me, and probably help me

4   make these deadlines.  And also, VNB counsel, despite, I think,

5   suggestions, has failed to do that, which makes it difficult

6   for me as well --

7              THE COURT:  Okay.

8              MR. KOSSOFF:  -- should they propound interrogatories.

9              THE COURT:  So let me just say this, that --

10             MR. KOSSOFF:  That's my --

11             THE COURT:  Yeah, hang on, Mr. Kossoff.  Thank you for

12   raising these things.

13             I should say for the record, Mr. Kossoff is on phone,

14   not Zoom, at least he doesn't have a video feed, which makes it

15   harder for him to see when I'm starting to talk, so we have a

16   little crosstalk, but no fault of his own.

17             So let me encourage everyone, to the extent possible,

18   to get on JPay and facilitate that.  I'm not going to require

19   it.  I think it may be that there's -- there may well be, for

20   all I know, firm computer system concerns, or you may have to

21   download software that firm's security people may be very

22   reticent about doing.

23             But think about it in good faith, because that is

24   going to make case management a lot better, and it's going to

25   make Mr. Kossoff's ability to engage with you and work on the

**KOSSOFF PLLC**

54

1   case a lot better.  So take a good hard look at that.  I'm not

2   requiring it because I don't know that everyone's going to be

3   prepared to talk about it, but think about it.  All right.  And

4   thanks.

5          So let me make the following suggestion as the parties

6   talk about their proposed scheduling order.  So we just heard

7   Mr. Kossoff was okay with the broad sequence of discovery dates

8   from the prior VNB case which is, again, initial disclosures,

9   June 27; close of fact discovery, October 15; close of all

10  discovery, including experts, December 15.

11         I'm going to be fine with those dates, and I'm going

12  to take it that Mr. Kossoff, who's just said those are fine, is

13  going to be fine with those in this case as well.  If you want

14  later dates, I'll look at them.  If you want -- but I'll say,

15  let's not set any earlier dates than those.  And that way we

16  have locked in that those are viable dates for Mr. Kossoff as

17  well and fair dates for Mr. Kossoff as well.

18         Okay.  So when you're finalizing your proposed

19  discovery schedule, just don't pick dates earlier than that.

20  And that way we will know we have something viable, and we

21  don't have to wait for a further round of communications that

22  could be cumbersome.

23         Yeah, go ahead, Mr. Levy.

24         MR. LEVY:  Your Honor, would you please repeat those

25  dates?

**KOSSOFF PLLC**

55

1          THE COURT:  Oh, yeah, sure.  Okay.  Initial

2     disclosures shall be served on or before June 27.  Close of

3     fact discovery, October 15 -- on or before October 15.  And

4     close of all discovery, including expert discovery, December

5     15.

6          MR. LEVY:  And I understand what Your Honor is saying,

7     the dates should be -- those intervals should be no earlier

8     than those dates, but depending upon how the parties discuss,

9     and what Your Honor's view is of a case management order, later

10    dates may permit.

11         THE COURT:  That's exactly right.  I will say I like

12    those dates pretty much, so don't be too greedy.  But I do

13    like -- but that is correct; you have my point.  Okay?

14         MR. LEVY:  Thank you, Your Honor.

15         THE COURT:  All right.  I think --

16         MR. KOSSOFF:  Your Honor?

17         THE COURT:  Yeah --

18         MR. KOSSOFF:  I had one or --

19         THE COURT:  Yeah, go ahead, Mr. Kossoff.

20         MR. KOSSOFF:  -- two other things.  Okay.  I already

21    feel like, to some extent, I've been sandbagged today.  And I

22    don't mean it in any kind of sense that it's purposeful or

23    intentional.  But there's been a discovery order that's been

24    floated between parties, and I have not received it.  And so I

25    have to respond on the fly to dates.  And I would just remind

**KOSSOFF PLLC**

56

1   everybody that I am a party in this proceeding and that I

2   should be getting copies of these documents well before a

3   conference date.

4          The other thing I would say is, with respect to this

5   judgment on the pleadings, that I know there is a flaw in the

6   pleadings that I pointed out in my answer, and I might want to

7   either join in the motion, or certainly -- so that I think that

8   if there's going to be motion practice dates -- and all of

9   these dates do affect me because, in fact, if the trustee is

10  successful in some of his -- I mean, if Roc-Le Triomphe doesn't

11  want to -- is successful in some of these defenses, it may

12  affect my own liability.

13         So I would like to be included in discussion with

14  respect to these motion practice dates.  I do have one theory

15  that I put in my answer with respect to the trustee's failure

16  to allege a triggering creditor.  I think it's a scrivener's in

17  their complaint, because all the other adversarial proceedings

18  that I have looked at, and there have been many, do have the

19  standard incantations about the IRS as a predicate creditor.

20         But unfortunately, they're missing in this complaint.

21  And I think that it probably will necessitate for them an

22  amendment of their pleadings.  If they don't amend their

23  pleadings, then of course a statute of limitations of six years

24  would apply on fraudulent transfers.  And the only statute that

25  would apply would be the bankruptcy rule for two years from the

**KOSSOFF PLLC**

57

1  bankruptcy filing date, which would severely emasculate their

2  claim.

3          THE COURT:  I got it.  Yeah.  Mr. Kossoff --

4          MR. KOSSOFF:  So I've got that --

5          THE COURT:  Hang on, Mr. Kossoff.  So am I right that

6  you're able to communicate with the trustee's counsel using

7  JPay?  You didn't mention --

8          MR. KOSSOFF:  I am.

9          THE COURT:  Okay.  That's great.  So here's my

10  reaction to this.  It's pointless and a waste of money and time

11  for you to write a whole motion about something you think is a

12  scrivener's error, that sounds like it may well be, because I

13  know they've alleged IRS is triggering creditor many, many

14  times over in other cases.

15          So I'd suggest you just email the trustee's counsel.

16  I don't want to see a separate motion -- first off, I'm not

17  precluding you from filing any motion; I should say that

18  explicitly.  Okay, Mr. Kossoff?  You are not precluded from

19  filing any motion.

20          However, this does seem like a big waste of effort, if

21  you're right that you're simply identifying a scrivener's error

22  in their complaint.  So why don't you just email them, raise

23  it.  I will tell you I'm going -- there's no reason for me not

24  to allow an amendment, at some appropriate point, if necessary,

25  in their view.  But I don't want to derail the case or cause

**KOSSOFF PLLC**

58

1    you or anyone to write a whole motion over that.  It seems like

2    something that's readily fixable.  Okay?

3          MR. KOSSOFF:  I agree, Your Honor.

4          THE COURT:  So that's my thought about that.  Your

5    broader point about dates, so a couple of things.  This is why

6    I asked you at this kind of -- this is pretty clearly sort of a

7    conference that was set up for the purpose of setting a

8    schedule.  And that's why I asked you about the dates.  I

9    wanted to hear from you on the record.  And so I'm trying to

10   make sure you're not prejudiced in that way.

11         Parties can talk among themselves.  But I guess I

12   would say, if you want to be filing a motion, you're not being

13   precluded from doing so.  And you can just communicate,

14   certainly with the trustee, easily, about scheduling matters

15   using JPay.  Okay?

16         But for now, I'm just setting an order based on the

17   discussion that came to me.  Most importantly, from my point of

18   view, getting a discovery schedule in place, which covers your

19   needs.  And then we have the unexpected, to me, development of

20   the other defendants wanting to file a 12(c) motion, which

21   we've covered.  Okay?

22         MR. KOSSOFF:  Yes, Your Honor.

23         THE COURT:  So I think that's all we need to do today.

24   All right.  Mr. Kossoff, am I right; these are the two cases in

25   which you're a defendant on today's calendar?  I think so.

**KOSSOFF PLLC**

59

1       MR. KOSSOFF:  I've been told by the facility that I

2  have to go off line.  Apparently, they've only allotted me an

3  hour --

4       THE COURT:  Okay.

5       MR. KOSSOFF:  -- for the --

6       THE COURT:  That's fine, I think we -- oh, look at

7  that.  Okay.  I will just say to maybe comfort you -- let me

8  quickly ask; am I right -- I'll ask the trustee, anything else

9  in which Mr. Kossoff is a party on the calendar for today?  I

10  think not.

11       MS. NESTER:  No, Your Honor.

12       THE COURT:  Okay.  So good news, Mr. Kossoff.  We got

13  in just under the wire.  We're completed with your matters.  I

14  wish you a good day and good health and good luck.  All right?

15       MR. KOSSOFF:  Thank you, Your Honor.

16       THE COURT:  And the parties are available, as am I, as

17  you need us.  Thank you.  Take care.

18       MR. KOSSOFF:  Okay.  Thank you, Your Honor.  All

19  right.

20       THE COURT:  Okay.

21       MR. LEVY:  Your Honor, may we be excused at this

22  point?

23       THE COURT:  Yes.  That was Mr. Levy.  That's a

24  rolling --

25       MR. LEVY:  Yes, it was, Your Honor.  Sorry.

**KOSSOFF PLLC**

60

1      THE COURT:  No problem.  That's a rolling practice and

2  permission of mine.  Once your matter's done, you're free to

3  go.  Okay?

4      MR. LEVY:  Thank you, Judge.

5      THE COURT:  Thank you.

6      The next case on the calendar is --

7      MR. KOSSOFF:  Thank you, Judge.

8      THE COURT:  Yes, you're welcome.  Nice to see

9  everybody.

10      Okay.  The next case is 22-1141, the case in which

11  Perevoski and others are defendants.  And there may be a

12  bundling that's possible.

13      Well, let me just turn to the trustees counsel.  How

14  do you want to proceed for the balance of the calendar?  We've

15  got a long list.

16      MS. NESTER:  Yes, Your Honor.  Minta Nester, counsel

17  for the Chapter 7 trustee.

18      What I propose is to allow my colleague, Mr.

19  Borriello, to cover some of the motions that -- or sorry --

20  some of the adversary proceedings that have been here before

21  and touch base on general status of the case.  And then I can

22  walk the Court through some of the newer adversary proceedings

23  that hit the docket.

24      THE COURT:  Okay.  Great.  Oh, I should tell the --

25  let me say this for all the parties.  We asked the trustee to

**KOSSOFF PLLC**

61

1    provide us a chart of all of the adversaries on today's

2    calendar, just identifying basic information, case name, docket

3    number, identity of opposing counsel, if known, status of

4    service, whether a response has been filed yet, and what, if

5    any, adjournments have been granted.

6          So they provided me such a thing, and I will say, with

7    occasional additional status notes, all factual, none advocacy.

8    So if any party wants a copy of that, please provide -- just

9    ask the trustee; I'm sure they'll provide it.  It's a very

10   benign document.  I wanted to make sure people were aware of

11   that communication, which was helpful to me, and I'm sure

12   they'll share.  Okay.

13         Yeah.  So go ahead, Ms. Nester.  And what you

14   described is fine, and whatever sequencing and bunching you all

15   think makes sense is going to work for me.  I guess is Mr.

16   Borriello going to start us off?

17         MS. NESTER:  Yes, Your Honor.

18         THE COURT:  Okay.  Great.

19         MR. BORRIELLO:  Yes, Your Honor.  So Jared Borriello.

20   I will be addressing adversary proceeding 22-1141.

21         THE COURT:  Yes.

22         MR. BORRIELLO:  So I'm happy to report that the

23   trustee has reached settlements with several defendants,

24   including Ernest Perevoski, Terri Abbey, Ronny Mintz, Chalron

25   Enterprises, and Ms. Lee.  And we're filing a 9019 motion

**KOSSOFF PLLC**

62

1   seeking approval, either by the end of this week or early next

2   week at the latest, and if approved by the Court, it should

3   bring in an aggregate of approximately 900,000 dollars for the

4   estate.

5            THE COURT:  Great.

6            MR. BORRIELLO:  So I just wanted to flag that for Your

7   honor.  So that will be filed soon.  And we anticipate that,

8   for case management purposes, putting it on for, likely the

9   July 12th hearing, which is already on the Court's calendar --

10           THE COURT:  Okay.

11           MR. BORRIELLO:  -- or sooner, won't burden the Court

12   with additional dates.

13           As to the remaining, there are three other defendants

14   remaining:  Mr. Boswell, the estate of Phyllis Kossoff, and

15   then Peter Xenopoulos and Xenopoulos Realty, LLC.  The trustee

16   has engaged in settlement discussions with all of those

17   parties.  But at the same time, as with the Valley Bank

18   proceeding, given the length of time that has passed, we think

19   it's time to move the case forward.  And while we'll continue

20   to discuss settlement with those parties, we're proposing that

21   a case management or scheduling order be entered using

22   substantially the same dates we proposed and Your Honor  has

23   approved in the other case management orders.

24           THE COURT:  Okay.  First, congratulations on the

25   settlement.  And does anyone want to be heard with respect to

63

1   the scheduling proposal voiced by Mr. Borriello?

2          MS. URBAN:  Yes.  Good morning, Your Honor.  Veronique

3   Urban of McGrail & Bensinger LLP.  We represent the defendant,

4   John Boswell, in this adversary proceeding.

5          We did receive a copy of the scheduling order from the

6   trustee's counsel, but we were under the understanding that Mr.

7   Boswell would not be subject to these deadlines as of yet, as

8   we are trying to settle this case.  And our defendant has a

9   difficult financial condition, and we are trying to settle

10  before having to incur any fees relating to discovery.

11         We have sent numerous documents to the trustee's

12  counsel in an effort to settle.  So we just wanted

13  clarification from the trustee's counsel that these dates do

14  not apply to Mr. Boswell.

15         THE COURT:  Okay.  I'm going to guess -- well, they

16  just said they intend to impose dates on you, right, Mr.

17  Borriello?

18         MR. BORRIELLO:  Yes.  So the trustee's view is we've

19  built flexibility into the schedule.  We pushed even the

20  disclosures at least over a month.  And while we do hope to

21  reach a resolution with Mr. Boswell -- I mean, he has provided

22  significant documents -- we still need the case to move

23  forward.

24         THE COURT:  Yeah.  Let me say, Ms. Urban, I'm not a

25  mere passive bystander.  And so I will add that that's very

**KOSSOFF PLLC**

64

1  much my wish, that we get a schedule in place that applies to

2  everybody who hasn't settled.  I hear what you're saying and I

3  respect it.  And my thought would be just what's described,

4  which is make the initial date far enough away that you have an

5  opportunity to come to the table.  But if you're not going to

6  be able to get it done quickly, then the discovery process just

7  has to kick in.

8          MS. URBAN:  I --

9          THE COURT:  And you had another point, it looks like?

10         MS. URBAN:  Yes, I do understand that, Your Honor.

11  Thank you.  Perhaps the trustee may be able to make one

12  accommodation, which is that the scheduling order, as it

13  currently is drafted, states that there cannot be any amendment

14  of the scheduling order unless there is proof of cause beyond

15  the party's control for a delay.  So perhaps the language could

16  be modified --

17         THE COURT:  I see.

18         MS. URBAN:  -- in such a way to allow an amendment of

19  the scheduling order if there continues --

20         THE COURT:  Yeah.  Let me say -- I'm going to

21  interrupt you.  I think they probably stole from language I

22  generated, and I would agree to relax that.  I always want to

23  have deadlines set forth in an order subject to court approval,

24  like, not be modifiable without court approval.

25         But if you want to either add words or take words

**KOSSOFF PLLC**

65

1   away, you could take the words away "beyond the party's

2   control", or you could just add "or to facilitate settlement

3   discussions" or something like that.  That's okay with me in

4   the circumstances.

5           But I do want to keep the Court approval requirement

6   in place basically so that, if either side is dissatisfied, it

7   comes to me, and also so that you can't conspire among

8   yourselves to cause my case management efforts to unravel.

9   Okay?

10          MS. URBAN:  Understood.  That's fine, Your Honor.

11  Thank you.

12          THE COURT:  Okay.  Any other defendants on case number

13  22-1141 want to be heard?

14          MR. SHERMAN:  Your Honor, Todd Sherman, on behalf of

15  Pardalis & Nohavicka.  We represent those Xenopoulos

16  defendants.

17          THE COURT:  Um-hum.

18          MR. SHERMAN:  We have a similar issue.  However, we

19  just want to put on the record we have concerns about potential

20  ability to comply with a discovery order.  Our client, Mr.

21  Xenopoulos, is very ill.  We've disclosed this to our

22  adversary, and it was his suggestion, actually, that we inform

23  the Court, rather than include it on a written order or

24  anything like that.

25          THE COURT:  Yeah.

**KOSSOFF PLLC**

66

1          MR. SHERMAN:  It was a good idea on his part, and we

2     appreciate that.  He's very ill, and his wife is suffering from

3     a terminal condition.  We're having difficulty contacting him

4     at this point.  He's also of extremely limited financial means,

5     thanks to the COVID pandemic, which destroyed his business.

6          So while we understand that we need to get an order in

7     place, we just wanted the record to be clear that it is quite

8     possible, not our intention, but it is quite possible that we

9     would be seeking some sort of leave to enlarge our time if

10    these medical conditions continue, which we anticipate, which

11    will delay our ability, in the best of faith, to comply with

12    any demands that the trustee intends to make or --

13          THE COURT:  Okay.

14          MR. SHERMAN:  -- for us to be able to meaningfully

15    demand discovery in defense of the matter.  So we just wanted

16    the Court to be aware, so that if we do make an application

17    later, it was clear that we did inform the Court at the

18    earliest possible moment.

19          THE COURT:  Okay.  Great.  Well, hopefully we'll have

20    a transcript, and we keep chambers notes of all of these things

21    too.  We'll make sure to make a note of that so that, if we

22    hear from you on a future application, we won't be shocked and

23    you will have helped pave the way for that.  But it makes sense

24    for you, in the meantime, to put some sort of date structure in

25    place, though, yes?  I don't hear you saying otherwise.

**KOSSOFF PLLC**

67

1          MR. SHERMAN:  No, of course, it makes a lot of sense.

2    And I share with cocounsel Ms. Urban's view that we have to do

3    it, but we do want just to make the Court aware of what our

4    situations are.  And we do hope that we could come to some

5    resolution as well.  But at the same time, we're impaired in

6    our ability to communicate.

7          THE COURT:  I got it.  Okay.  That's fine.  And let me

8    not fail to say best wishes to your clients and family.  It

9    sounds very difficult.

10          MR. SHERMAN:  Thank you, Your Honor.

11          THE COURT:  So I'm sensitive to that.

12          MR. SHERMAN:  And we will convey that.

13          THE COURT:  Okay.

14          MR. SHERMAN:  Thank you.

15          THE COURT:  Yep.  Any other defendants want to be

16    heard?

17          Okay.  I saw a negative head shake, and nobody's

18    speaking up.  So you can just finish the talks you're having,

19    and finalize dates, and get it in as a proposed order.

20          Do you want to -- I think probably it makes sense to

21    just put this down on a status conference, maybe for the July

22    12th date, when I'm seeing a lot of people, just in case.  I

23    will say, so far I've heard from lawyers for two clients of no

24    means, and I don't want to make everyone show up and spend

25    money for no reason, but I'm available for a check-in.  You can

**KOSSOFF PLLC**

68

1    cancel it, or people can just -- if you trust Mr. Borriello to

2    just give a status report, you don't have to show up, whatever

3    works for you all.  Okay?  I just want to keep an eye on

4    things.  Workable?

5              MR. SHERMAN:  Thank you, Your Honor.

6              THE COURT:  Okay.

7              MS. URBAN:  Yes.  Thank you, Your Honor.

8              THE COURT:  Okay.  I think that covers 1141, yes, Mr.

9    Borriello?

10             MR. BORRIELLO:  Yes, Your Honor.  Just to clarify, so

11   I understand Your Honor is saying that we should proceed with

12   entering or proposing a scheduling order, but also put on the

13   calendar a placeholder status conference for the 12th?

14             THE COURT:  Yeah, I think so.  Does that --

15             MR. BORRIELLO:  That makes sense.

16             THE COURT:  Let's do that, because then that's at

17   least probably after your initial disclosure date.  It might

18   help you all get to the finish line with some, as of yet, not

19   finished negotiations.  And so we'll just see where we are.

20   Okay?

21             MR. BORRIELLO:  Okay.

22             THE COURT:  And like Mr. Sherman, with his clients'

23   problems, that would be a built-in opportunity for him to raise

24   any concerns he's got.

25             MR. BORRIELLO:  Understood, Your Honor.

**KOSSOFF PLLC**

69

1          MR. SHERMAN:  I hate to be the bearer of scheduling

2     issues, but I will likely be away that week.

3          THE COURT:  Okay.

4          MR. SHERMAN:  And I don't know that I would have

5     suitable coverage, based on the numerosity of these cases.

6     Now, I would have complete faith in Mr. Borriello conveying an

7     accurate status.

8          THE COURT:  Okay.  That's fine.

9          MR. SHERMAN:  I wouldn't worry about that.  But I

10    don't believe that my absence would assist in any resolution.

11    I certainly believe Your Honor would be well advised, but I

12    don't know how far we would be able to push forward in my

13    absence.  I would be back in late July.  But I don't want to

14    change Your Honor's calendar.  I just want to put you on

15    notice.  That is all.

16          THE COURT:  Okay.  Let's just put it down for a status

17    update or status conference July 12th.  I just want to hear a

18    quick update.  And then if anybody affirmatively wants to raise

19    something, fine.  And I'm available other times, but I'm

20    mindful of trying to let the trustee bundle these cases so they

21    don't have to show up more frequently than necessary.

22          MR. SHERMAN:  Thank you, Your Honor.

23          THE COURT:  Okay.  Thanks.

24          All right.  I think that covers 1141.

25          MR. BORRIELLO:  Yes, Your Honor.

**KOSSOFF PLLC**

70

1          THE COURT:  Okay.  And as I've been saying earlier

2   today, if you're here just for that matter, you're free to go.

3          And we're on to what case -- whatever case the trustee

4   wants to do next.

5          MR. BORRIELLO:  So I'll be covering -- again, Jared

6   Borriello for the trustee.

7          I will be covering the next case, next sequentially on

8   your calendar, which is adversary number 22-1146.  It's the

9   estate of Phyllis Kossoff.

10          THE COURT:  Yes.

11          MR. BORRIELLO:  This is the adversary proceeding

12   solely against Ms. Kossoff.  I believe Mr. Bolton is on the

13   line.  We are engaged in global settlement discussions, as I've

14   described previously, that involve the estate as well as other

15   family members.  And with respect to this specific adversary

16   proceeding, we're proposing just one final adjournment to 7/12

17   before we enter a scheduling order.

18          THE COURT:  Okay.  Yeah, that's fine with me -- I'm

19   mindful of the time -- if that's okay with the defendant.  Is

20   that okay with the defendant?

21          MR. BOLTON:  David Bolton.  Yes, Your Honor.  Thank

22   you very much.

23          THE COURT:  Okay.  So let's do that, and just notice a

24   continuation -- or notice of conference for the 12th.  And I

25   think that's all we need to do on this one.  Anything else on

**KOSSOFF PLLC**

71

1   1146?

2           MR. BORRIELLO:  That's everything for 1146 today.

3           The next one I'm covering --

4           THE COURT:  Okay.  Oh, hang on.  I don't know if I

5   need to do this.  I'm going to say the magic word.  So we're

6   adjourned on 1146, and if you're here only for that, you're

7   free to go.  Thanks.

8           Okay.  Go ahead.

9           MR. BORRIELLO:  So the next adversary proceeding that

10  will be covered is 23-1023.  And that's Togut v. Colgate

11  University, et al.  And just to give an update for Your honor,

12  we held our first settlement conference last Friday with

13  counsel for Colgate.  We asked that they provide us with a

14  confidential position statement similar to what we've been

15  doing in other cases.

16          And in connection with that, we'd like to adjourn this

17  pre-trial conference out to July 12th, as well, to see if that

18  process -- let that process play out.  And if not, we would

19  expect to be able to enter a scheduling order at that time.

20          THE COURT:  Okay.  Is anybody here for Colgate?

21          MS. TEMES:  Yes, Your Honor.  Sara Temes from Bond,

22  Schoeneck King, on behalf of Colgate University.

23          That comports with our understanding as well.

24          THE COURT:  Okay.  That's fine.  Let me just say

25  something you didn't expect, which is that I always am mindful

**KOSSOFF PLLC**

72

1   of conflicts and the appearance of conflicts.  I have

2   considered it and conclude I don't have them.  But I love

3   Colgate University, and my son went there, in fact, in the

4   class of 2019.  So I haven't told him about any possible ties,

5   but there you go.

6         So now that's on the record.  Nevertheless, there's a

7   formal procedure where courts can ask parties to advise if they

8   consent to an appearance issue.  I'm not invoking that because

9   I don't believe there is even an appearance.  But to help

10  ensure that's the case, I'm just telling you this fact.  Okay?

11        MS. TEMES:  Thank you, Your Honor.

12        THE COURT:  So I will see you on July 12th, or I will

13  see a beautiful stipulation that I sign off on before then.

14  Okay?

15        So we're adjourned -- I think that's it, right, for

16  1023?

17        MR. BORRIELLO:  Correct, Your Honor.  That's all for

18  1023.  And with that, my role in the pre-trial conference,

19  status conference role discussion has come to an end, and I'm

20  going to pass it to Ms. Nester.  You may hear from me at the

21  end with some general case updates, but --

22        THE COURT:  Right.

23        MR. BORRIELLO:  -- we'll get through all the

24  proceedings and let people get off the phone before we do that.

25        THE COURT:  Okay.  Thanks.  So we're adjourned on

**KOSSOFF PLLC**

73

1    1023, and onto Ms. Nester.  If we're going to stick in order,

2    the next case is 23-1062 with the defendant being American

3    Express.

4            MS. NESTER:  That's correct, Your Honor.  Ms. Nester,

5    counsel for the Chapter 7 trustee.

6            On March 30th, the trustee filed a complaint against

7    American Express Company seeking to avoid transfers totaling

8    not less than 73,315 dollars as preferences.  The summons was

9    issued -- that's docket number 2 -- setting forth a May 3rd

10   answer deadline.  The affidavit of service for the summons and

11   complaint was filed on April 6th; that's docket number 3.

12           Surprisingly, no answer was filed.  So we plan to send

13   a letter to the defendant seeking a response to the complaint

14   within seven days, and reserving all rights, including the

15   right to seek entry of default if no answer is provided.

16           THE COURT:  Yeah.  That sounds exactly right.  I mean,

17   sooner or later, a default motion is going to be met with -- is

18   just going to prove to be almost for sure wasted effort.  So

19   just try to make sure they kick into gear.  It sounds like

20   they've just slipped up, most likely.

21           MS. NESTER:  Certainly, Your Honor.

22           THE COURT:  Okay.  So should we put this down for July

23   12th for a further conference?

24           MS. NESTER:  Yes, Your Honor.  And would you like us

25   to file a notice of adjournment or a notice of hearing?

**KOSSOFF PLLC**

74

1       THE COURT:  Yes, please.  Let me say, I'm sympathetic

2  to the trustee with all the noticing you have to do.  But all

3  of these are individual cases, and their docket sheets need to

4  make individual sense.  So yes, please do that.

5       MS. NESTER:  So the next matter is case number

6  23-01066 against Nyeba Woart.

7       THE COURT:  Okay.  Oh, this may be unnecessary, but

8  I'm going to keep saying it.  I think we may get a thousand

9  separate transcripts; I don't know.  So that adjourns 23-1062.

10      Oh, and I should memorialize it.  Is anyone here today

11  for Amex?  I think not.

12      Okay.  So with an institution of that size and

13  sophistication, I'm sure they have some glitch and that they

14  will be awakened by this outreach and will get this in order.

15      Okay.  So go ahead.  We're on to 23-1066?

16      MS. NESTER:  Correct, Your Honor.  On March 31st, the

17  trustee filed a complaint against Nyeba Woart seeking to avoid

18  a $51,362.15 transfer as a preference.  A summons was issued --

19  that's docket number 2 -- setting an answer deadline of May

20  3rd.  An affidavit of service was filed on April 6th; that's

21  docket number 4.

22      No answer was filed, and we've had no communications

23  from the defendant.  So the defendant is in default, and our

24  plan would be to move forward to seek entry of a default.

25      THE COURT:  Okay.  Do you have any contact other than

**KOSSOFF PLLC**

1    whatever service means you achieved for the defendant?

2         MS. NESTER:  No, Your Honor.

3         THE COURT:  Okay.

4         MS. NESTER:  I should say --

5         THE COURT:  Yeah.

6         MS. NESTER:  -- not to my knowledge, Your Honor.

7    Perhaps there's something in my mailbox that arrived today that

8    I've not seen.

9         THE COURT:  Right.  No, that's fine.  Okay.  I think

10   that plan sounds right.  So I don't know, but I'm going to

11   guess this is an individual defendant, so maybe the opposite

12   end of the spectrum of Amex, who we just heard about.

13        I just want to make sure we have service taken care

14   of, which you've done, and just sort of see if -- if there is

15   some informal way of finding the person and making sure they're

16   aware, that's maybe worth it before you put together a default

17   motion.

18        But formally, you're right, a default motion is the

19   next step.  So you can proceed.  It's just if you have some

20   sort of -- if you can find an email or some contact info to

21   say, hello, individual person, you got served with a thing; you

22   may not know what to do, here's what it is, please be in touch.

23   That might save some time.

24        MS. NESTER:  Okay.

25        THE COURT:  You can proceed as you want.  You can also

**eScribers LLC**

76

1   file your motion and then see where we get.

2           MS. NESTER:  Thank you, Your Honor.  That would

3   conclude that adversary proceeding --

4           THE COURT:  Yes.

5           MS. NESTER:  -- unless the Court had any further

6   questions.

7           THE COURT:  No, that's fine.

8           And the next case's 23-1069, right?

9           MS. NESTER:  Correct, Your Honor.  On March 31st, the

10  trustee filed a complaint against William Rosenblatt, seeking

11  to avoid a 110,000-dollar transfer as a preference.  The

12  summons was issued -- that's docket number 2 -- setting forth

13  an answer deadline of May 3rd.  Affidavit of service was filed

14  on April 6th, docket number 4.

15          Again, no answer was filed, and we've received no

16  communications from the defendant.  So the defendant is in

17  default, and we plan to proceed, similar to what we talked

18  about in the previous adversary proceeding, by seeking an entry

19  of default.

20          THE COURT:  Okay.  That sounds, again, right.  Okay.

21          MS. NESTER:  Unless the Court had any further --

22          THE COURT:  No, I don't.  I'm sorry.  I'm looking like

23  I'm thinking, which I am, but I don't have a very constructive

24  thing to say, just that all of these cases make me nervous.

25  There's always the possibility of needing to have an inquest

**KOSSOFF PLLC**

77

1   and fix damages.  There's a million, sort of, tricky issues

2   that flow, so that it's way better if people can be induced to

3   engage.

4          And I know you know that, and there's only so much you

5   can do, and you're running a big slate of cases.  But keep that

6   in mind because, ultimately, I think resolutions are cleaner if

7   we can cause people to engage.

8          MS. NESTER:  Yes, Your Honor.

9          THE COURT:  But okay, that's neither here nor there.

10  What timing do you envision on next steps?

11         MS. NESTER:  So we would be prepared to seek the

12  clerk's entry of default relatively quickly.  We can put

13  together that affidavit, and then await entry on that.

14  Assuming that turned around pretty quickly, we would then have

15  the application to the Court seeking the default judgment in

16  the amount of sum certain pretty soon after that.  I hate to

17  put actual dates on my team, but we would be able to move

18  forward very quickly with these.

19         THE COURT:  Okay.  That's fine.  I'll let you work it

20  out.  I know you're managing a lot.

21         Okay.  So that adjourns -- that resolves today's

22  discussion of the William Rosenblatt case.  That's 23-1069.

23         And I think it's on to 23-1071, where defendant is

24  46/47 Apartment Holdings.

25         MS. NESTER:  Correct, Your Honor.  This is an

**KOSSOFF PLLC**

78

1  adversary proceeding where the complaint seeks to avoid

2  transfer totaling not less than $682,210.83 as preferences.  A

3  summons was issued; that's docket number 2.  The answer

4  deadline was May 4th.  Affidavit of service was filed on April

5  6; that's docket number 4.

6        No answer was filed.  No communications from the

7  defendant.  So the defendant is in default, and we plan to move

8  forward to seek the clerk's entry of default.

9        THE COURT:  Okay.  That's a repeat discussion of the

10  prior several cases, and that's fine.

11        MS. NESTER:  Yes, Your Honor.  So unless the Court has

12  any further questions --

13        THE COURT:  No further questions.  We're adjourned on

14  1071, and we can move on to 23-1073.

15        MS. NESTER:  Thank you, Your Honor.  On April 3rd, the

16  trustee filed a complaint against 161 West 4 Realty LLC,

17  seeking to avoid a 116,000-dollar transfer as a preference.  In

18  this action the answer was filed on May 9th; that's at docket

19  number 5.

20        So unless the Court would prefer a different approach,

21  in situations like these, where we have a defendant who's filed

22  an answer, we would propose to submit a proposed scheduling

23  order on presentment, with seven days' notice, with a discovery

24  schedule.

25        And our goal would be to keep as many of these actions

**KOSSOFF PLLC**

79

1   as possible on the same schedule so that, while there are

2   different cases with different defendants, they would be moving

3   forward kind of lockstep with one another, and we could sync

4   the appearances, the deadlines for fact discovery, expert

5   discovery, and those sort of things.

6           THE COURT:  Yeah, that's going to be my general

7   preference as well, subject to making sure the rights of each

8   individual defendants are protected.

9           Is anyone here for 161 West 4 Realty?

10          Okay.  So that's fine.  You can just -- do you have a

11  contact?

12          MS. NESTER:  We do.  An answer was filed.

13          THE COURT:  Oh, they answered.  So yeah, whoever filed

14  that answer, just notify them informally that you're going to

15  be submitting a proposed scheduling order as follows.  Send it

16  to them, and hopefully, either with consent or nonengagement,

17  then you could submit it for entry.  Okay?

18          Today is the pre-trial conference.  By not appearing,

19  the defendant was -- well, by being given notice, the defendant

20  had notice and an opportunity to be heard with regard to a case

21  management schedule.  I'm prepared to enter one.  Just check

22  with them and see if you can avoid disputes before submitting

23  it.  But otherwise, I'm prepared to enter it without further

24  notice.

25          MS. NESTER:  Thank you, Your Honor.

**KOSSOFF PLLC**

80

1          THE COURT:  Okay?  Thanks.  That's it for 1073.

2          On to case number 23-1074, where the defendant is 169

3    West 22 Street, Inc.

4          MS. NESTER:  Thank you, Your Honor.  This complaint

5    seeks to avoid a 150,000-dollar transfer as a preference.  The

6    summons was issued, docket number 2.  Answer deadline was May

7    4th.  Affidavit of service was filed on April 6th; that's

8    docket number 4.

9          No answer was filed.  No communications from the

10   defendant.  So the defendant is in default, and we plan to

11   proceed seeking an entry of default.

12         THE COURT:  Okay.  That's approved.  And that, I

13   think, cover -- oh, let me just make sure no one is here -- is

14   anyone here today for 169 West 22 Street?

15         No one said yes.  Okay.  We're adjourned on that case.

16         On to 23-1075.  Defendant is 333 East 46th Street

17   Apartment Corp.

18         MS. NESTER:  Thank you, Your Honor.  On April 3rd, the

19   trustee filed a complaint against defendant --

20         THE COURT:  Oh, hang on a second.  I'm getting some

21   background noise.  Put yourself on mute until you're ready to

22   speak, if you would.  Okay.  So we're here -- I'm sorry.

23         Mr. Siegel, are you here on this case?

24         MR. SIEGEL:  Yes, I am.

25         THE COURT:  Okay.  Great.  Yeah, we're getting some

**KOSSOFF PLLC**

81

1   bad feedback, which I'm going to guess is from your end. Nice

2   to see.  I'll hear from you in a second.  If you would just

3   re-mute yourself because of the sound problem.

4         And Ms. Nester, you can go ahead.

5         MS. NESTER:  Thank you, Your Honor.  This complaint

6   seeks to avoid transfers totaling not less than $23,660.64 as

7   preferences.  The answer was filed on May 3rd; it's docket

8   number 5.  Consistent with our discussion about previous cases,

9   because the answer has been filed, we would propose to submit a

10  proposed scheduling order with similar deadlines and

11  appearances in this matter as well.

12        THE COURT:  Okay.  You said 23,600 and change?

13        MS. NESTER:  Yes.

14        THE COURT:  Okay.

15        MS. NESTER:  That is if I'm reading the note

16  correctly.  Yes, Your Honor.

17        THE COURT:  Okay.

18        MS. NESTER:  I can confirm that.

19        THE COURT:  Okay.  So obviously, one hopes this

20  resolves without burning a lot of money or legal time.

21        Mr. Siegel, does that work for you, just to get a

22  simple discovery schedule in place and take it from there?

23  Hopefully you can just negotiate in the meantime.

24        MR. SIEGEL:  Yeah, that's fine.  This is a co-op

25  closing situation.  I have to get the file from the managing

**KOSSOFF PLLC**

82

1   agent.  The closing was two years ago.  But I think, in this

2   case, it was a true escrow.  It's tenant shareholder funds that

3   can be traced through the whole process.

4          THE COURT:  Okay.  That sounds great.  So let's go

5   ahead and get that order in place.  I will say, given the

6   dollar amount at issue, be a little particularly cost conscious

7   on this one.  It's true of all of them.  You have a shared

8   interest in that.  But let's try to cut through it, but

9   otherwise we'll have a schedule in place.

10          MR. SIEGEL:  Okay.  Thank you, Judge.

11          THE COURT:  All right.  Thank you.  And, Mr. Siegel,

12   as you've been hearing all day, if this is the only reason

13   you're here, you're welcome to go.  We're going to keep moving

14   on.

15          MR. SIEGEL:  Thank you, Your Honor.

16          THE COURT:  All right?  Thank you.  That's it for case

17   23-1075.

18          And the next case is 23-1076.  Banyan Tree Capital,

19   LLC is the defendant.

20          MS. NESTER:  Thank you, Your Honor.  On April 3rd, the

21   trustee filed a complaint against Banyan Tree Capital, LLC,

22   seeking to avoid transfers totaling not less than 175,000

23   dollars as preferences.  A summons was issued -- that's docket

24   number 2 -- and contained a May 4th answer deadline.  The

25   affidavit of service was filed on April 6th; that's docket

**KOSSOFF PLLC**

1   number 4.

2          But no answer has been filed, and we received no

3   communications from the defendants, so the defendant is in

4   default.  We plan to pursue the entry of default, consistent

5   with our other such similarly-situated cases.

6          THE COURT:  Okay.  Is anyone here for Banyan Tree

7   Capital today?

8          No one said yes.  Okay.  That's fine.  Proceed that

9   way.

10          MS. NESTER:  Okay.

11          THE COURT:  And we are adjourned on that case.

12          The next case up is 23-1077.  The defendant is 145

13   Henry Partners, LLC.

14          MS. NESTER:  Thank you, Your Honor.  This complaint

15   seeks to avoid transfers totaling not less than 125,000 dollars

16   as preferences.  A summons was issued, docket number 2, with an

17   answer deadline of May 4th.  The affidavit of service was filed

18   on April 6th; that's docket number 4.

19          No answer was filed, and the defendant's in default,

20   so we would plan to proceed with the entry of default.

21          THE COURT:  Okay.  Is anyone here for 145 Henry

22   Partners?

23          Hearing no takers, you can proceed on that basis.

24   We're adjourned on 1077.

25          Onto 23-1079.

**eScribers LLC**

**KOSSOFF PLLC**

84

1          MS. NESTER:  Thank you, Your Honor.  On April 3rd, the

2   trustee filed a complaint against Dean C. Penna, seeking to

3   avoid transfers totaling not less than 300,000 dollars as

4   preferences.  The summons, at docket number 2, had an answer

5   deadline of May 4th, and an affidavit of service was filed on

6   April 6th; that's docket number 4.

7          In late April, we were contacted by counsel for the

8   defendant and agreed to extend the answer deadline thirty days.

9   We've sent a draft stipulation, very similar to the other

10   adversary proceedings, memorializing that agreement, on April

11   30th, and have followed up multiple times since then but have

12   not heard back.

13          So unless the Court preferred a different approach,

14   the trustee would plan to seek entry of default if the

15   defendant fails to file an answer by that extended deadline.

16   And we would respectfully request that the pre-trial conference

17   be adjourned until July 12.

18          THE COURT:  I think that sounds right.  It sounds like

19   you're reaching out.  Just make sure you keep pinging them in

20   the meantime.

21          MS. NESTER:  Certainly, Your Honor.  Will do.

22          THE COURT:  Okay.  That sounds right.  Okay.  Oh, and

23   I'll just keep going.  Is anyone here for defendant Dean C. --

24   it's P-E-N-N-A, Penna?

25          MS. NESTER:  Correct, Your Honor.

**eScribers LLC**

**KOSSOFF PLLC**

85

1        THE COURT:  Okay.  No one says yes.  We're adjourned

2    on that case.

3        And onto 23-1080.  The defendant is Barasky.

4        MS. NESTER:  Thank you, Your Honor.  On April 3rd, the

5    trustee filed a complaint against Bruce Barasky, seeking to

6    avoid a 210,000-dollar transfer as a preference.

7        Defendant filed a motion to withdraw the reference and

8    dismiss the complaint.  That's at docket numbers 5 and 6.  The

9    motion is now docketed on the district court docket.  It was

10   served, I believe, May 18th, and with a response that would be

11   due on June 1st under Local District Court Rule 6.1(b).

12       THE COURT:  Okay.  Can and should I be doing anything

13   on this at this point or just be informed?

14       MS. NESTER:  Your Honor, if we could adjourn the pre-

15   trial conference to July 12th, and if Your Honor was inclined

16   to have us go forward with discovery before the decision was

17   reached by the district court, we would certainly be happy to

18   put a schedule in place.

19       THE COURT:  Okay.  Is anyone here for defendant

20   Barasky?

21       Okay.  Let's just adjourn.  I think in the

22   circumstances -- I don't know anything.  I have no ability to

23   assess the strength of the motion, so let's just adjourn the

24   pre-trial conference to the 12th of July, and you'll tell me

25   where things stand.  And if you want to push to get discovery

**KOSSOFF PLLC**

86

1   moving at that time, I'll listen to you.

2       MS. NESTER:  Thank you, Your Honor.  Unless you had

3   any further questions, that's all we had on that matter.

4       THE COURT:  Okay.  I don't.  And so the next case is

5   23-1081.  Defendant is Jelic, J-E-L-I-C.

6       MS. NESTER:  Thank you, Your Honor.  That complaint

7   seeks to avoid transfers totaling not less than, I believe,

8   $24,181.89 as preferences.  That's an amount I can confirm

9   later.  The summons was issued at docket number 2 with an

10  answer deadline of May 4th.  Affidavit of service was filed on

11  April 6th; that's docket number 4.

12      No answer was filed, but yesterday we were contacted

13  by counsel for the defendant seeking an adjournment.  Unless

14  the Court prefers otherwise, we would seek to execute a

15  stipulation with a thirty-day extension and adjourn the matter

16  to July 12th.

17      THE COURT:  That's approved.

18      Is anyone here for defendant Jelic?

19      No.  Okay.  That's approved.

20      MS. NESTER:  Thank you, Your Honor.

21      THE COURT:  We're adjourned on that.

22      Then the next one is 23-1083.

23      MS. NESTER:  Thank you.  That's a complaint against

24  Lula Curanovic and Djoka Curanovic -- and I do apologize for

25  the mispronunciation -- that's seeking to avoid a 25,000-dollar

**KOSSOFF PLLC**

87

1  transfer as a preference.  Summons at docket number 2.  It

2  contained an answer deadline of May 4th.  The affidavit of

3  service was filed on April 6th.  That's at docket number 4.

4      We received no answer by either defendant, and no

5  communications from either defendant, so that both defendants

6  are in default and we would plan to move forward with an entry

7  of default.

8      THE COURT:  Okay.  That's fine.

9      MS. NESTER:  Unless --

10     THE COURT:  Sorry.  We are adjourned on -- that's

11 fine.  I assume no one's here for the defendants Curanovic?

12     Okay.  We're adjourned on that case.

13     Onto 23-1086.  Defendant is Shamah, S-H-A-M-A-H.

14     MS. NESTER:  Thank you, Your Honor.  On April 5th, the

15 trustee filed this complaint seeking to avoid transfers

16 totaling not less than $630,526.46 as preferences.  The

17 summons, at docket number 2, contained an answer deadline of

18 May 4th.  The affidavit of service was filed on April 6th at

19 docket number 4.

20     No answer has been filed, and there have been no

21 communications from the defendant.  So the defendant is in

22 default, and we would plan to seek entry of default.

23     THE COURT:  That's fine.  This is -- you may not know,

24 and if you don't, that's fine.  Why is this one for so much

25 money?  Do you know what the circumstances are?

**KOSSOFF PLLC**

88

1              MS. NESTER:  I don't, Your Honor.  I apologize.

2              THE COURT:  That's fine.  Okay.  So your planned

3    course of action is fine.

4              MS. NESTER:  Thank you, Your Honor.

5              THE COURT:  We'll see where we go.  It is a

6    substantial amount of money.  And down the road, if you're

7    trying to ask me to enter a default judgment in a sum certain,

8    I'll probably have some heartburn about the dollar amount.  So

9    this may be worth a little extra effort to find these folks.

10             MS. NESTER:  Certainly, Your Honor.

11             THE COURT:  Okay.  We're adjourned on that case.

12             The next one is 23-1092, and the defendant is

13   Alexander.

14             MS. NESTER:  Thank you, Your Honor.  The trustee filed

15   its complaint against Ann H.L. Alexander, John A. Lumbard,

16   Susan Lumbard, seeking to avoid transfers totaling not less

17   than 114,500 dollars.  The summons is at docket number 2.  The

18   affidavit of service was filed on April 13th; that's docket

19   number 3.

20             Parties have agreed to extend the answer deadline to

21   June 9th.  That's recorded on docket number 6.  Unless the

22   Court has any questions, we'd respectfully request to adjourn

23   the pre-trial conference until July 12th.

24             THE COURT:  That's approved.  Is any defendant present

25   and wanting to be heard?

**KOSSOFF PLLC**

89

1          MR. MANISCALCO:  Good morning, Your Honor.  Joseph

2    Maniscalco, LaMonica Herbst & Maniscalco --

3          THE COURT:  Yep.

4          MR. MANISCALCO:  -- on behalf of the defendants.  How

5    are you, Your Honor?  Good morning.

6          THE COURT:  Good.  Nice to see you.

7          MR. MANISCALCO:  Nice to see you, Your Honor.  We

8    filed a notice of appearance.  We've entered into a stipulation

9    with counsel to extend our time to file an answer.  I'll get

10   into the case and then speak to counsel about the case.  If

11   there's a way to resolve it, we'll resolve it.  Otherwise,

12   we'll file an answer and we'll take it from there.

13         THE COURT:  That sounds perfect.  Glad to have you

14   appearing in the case.  And for now, the adjournment to the

15   12th is approved.  Okay.  That works for you, Mr. Maniscalco,

16   right?

17         MR. MANISCALCO:  Yes, it does.  Thank you very much,

18   Your Honor.

19         THE COURT:  Okay.  Thank you.  And we're adjourned on

20   case 23-1092.

21         Let's see.  We're making good progress.  I think the

22   next and final adversary proceeding on the calendar is number

23   23-1094, which is against Bloomingdale's.

24         MS. NESTER:  Correct, Your Honor.  This is the last

25   one that I will be covering today before my colleague Ron

**KOSSOFF PLLC**

90

1   Howard takes over on that Rule 2004 matters.

2        This complaint was brought against Bloomingdale's Inc.

3   and Pamela Kossoff, seeking to avoid various transfers.  The

4   summons was docketed at docket number 2, with a May 10th answer

5   deadline.  Affidavit of services were filed on April 13th;

6   that's docket numbers 3 and 4.

7        We received no answer from Bloomingdale's, which is

8   surprising, so we plan to, similar to what we discussed in

9   connection with American Express, send a letter seeking a

10  response to the complaint within seven days, but waiving their

11  rights, including the right to seek entry of default, if an

12  answer is not filed within that time.

13       THE COURT:  That sounds correct.  Do you have a

14  contact for them?

15       MS. NESTER:  I will check back at service, Your Honor.

16  I'll see what we have.  We will get it out to Rule 2004

17  counsel.  If there was any contacts we know, we'll send it out

18  by email.

19       THE COURT:  Okay.  Great.  So all of that's fine.  Do

20  you want a set a 7/12 control date on that one or --

21       MS. NESTER:  That would be great, Your Honor.  I also

22  should mention that we have agreed to extend Ms. Kossoff's

23  answer deadline to June 19th, and I believe that stipulation

24  was submitted to chambers on May 17th.  So we would also like

25  to, if the Court would be amenable, resubmit that stipulation

**KOSSOFF PLLC**

91

1   so that we can get that docketed and make that clear that --

2           THE COURT:  Yeah, that would be helpful.  Yeah.  So

3   that's just waiting approval, right?

4           MS. NESTER:  I believe so, yes, Your Honor.

5           THE COURT:  Okay.  If you retransmit, that would be

6   helpful.  Evidently something went astray, either internally or

7   in transit, but we will get on it.  And you're always welcome

8   to follow up and say what's going on with fill-in-the-blank.  I

9   think some people are scared to bug judges.  I'd rather be

10  bugged than not.  Okay.  But resubmit it.

11          MS. NESTER:  Thank you, Your Honor.  We'll do so.

12          So that is the last of my agenda this morning.  Unless

13  the Court has any other questions, I would turn this over,

14  first to Mr. Howard to speak to the Rule 2004 matters, and then

15  I believe Mr. Borriello will give a general status update for

16  the case.

17          THE COURT:  Okay.  I don't have further questions.

18  Thank you for marching me through all that, and take care.

19          MS. NESTER:  Thank you.  And to reiterate, if any

20  party would like a copy of the chart that was submitted to

21  chambers, certainly we would be happy to provide it.

22          THE COURT:  Okay.  Great.

23          Let's see.  So Mr. Howard, nice to see you.  And I

24  will let you lead me through the various matters that you're

25  going to update me on and raise issues about.

**KOSSOFF PLLC**

92

1       MR. HOWARD:  Thank you very much, Your Honor.  Ron

2   Howard, Togut, Segal & Segal, for the Chapter 7 trustee.

3       Your Honor, there are three Rule 2004 subpoena related

4   matters that I'm just going to summarize and discuss in

5   connection with the status conference scheduled for today, the

6   first being that for the order entered compelling Imperial

7   Business Solutions to comply with their subpoena and Rule 2004

8   order, which was entered on April 17th.

9       The order was served, and attempts were made to

10   contact Imperial Business Solutions from April 27th, via

11   telephone, on three different telephone numbers, and via email.

12   We received no response.

13       The lack of any response from Imperial Business

14   Solutions is sort of typical with the way they've treated all

15   attempts to get them to comply with their subpoena since the

16   date that the subpoena was served.

17       At this point, Your Honor, we're sort of evaluating

18   whether any further assistance from the Court is wise and

19   warranted.  And I think what would be best here, Your Honor, is

20   if the conference could be adjourned to, I think, maybe the

21   June 15th date, where we have other things scheduled, with

22   further leave to allow the trustee to submit a letter to the

23   Court requesting that the matter be taken off the calendar if

24   the trustee would expect to pursue the matter any further.

25       THE COURT:  Hang on a sec.  Let me just -- my clerk is

**KOSSOFF PLLC**

93

1   asking me a helpful smart thing that I can't hear.  Just a

2   second.  I'm going to mute myself.

3        Yeah.  She was just asking about the date.  You want

4   June 15th?  Because we do have a --

5        MR. HOWARD:  Yes.

6        THE COURT:  Okay.  That's fine.

7        MR. HOWARD:  Yeah, I just want to keep these folks on

8   a short leash, because if I feel --

9        THE COURT:  That's totally fine.  You had accustomed

10  us to hearing July 12th, July 12th, July 12th, throughout the

11  day.  So we wanted to make sure indeed you met June 15th.

12  That's fine.

13       MR. HOWARD:  Thank you very much, you Honor.  If you

14  want to call the next item.  I think the next item on the --

15       THE COURT:  Oh, yeah.  Well, I mean, they're all in

16  the main case, so I think it can be a combined thing.  Is this

17  the Biz Advance matter?

18       MR. HOWARD:  That's correct, Your Honor.  So this is

19  the status conference with respect to the order compelling Biz

20  Advance Now to comply with their subpoena and Rule 2004 order,

21  which was entered also on April 17th.

22       We had established communications with Biz Advance

23  Now, and documents were received on May 4th.  Counsel at that

24  time indicated that it was reviewing to see whether there were

25  any other responsive documents or emails to produce.

**KOSSOFF PLLC**

94

1          I contacted counsel last Friday, and he wrote back

2     this morning -- or actually yesterday, indicating that he would

3     be submitting a declaration and written responses, as required

4     under the 2004 order, sometime this morning.  I don't think

5     we've got it yet.

6          So again, I also request that this matter be adjourned

7     to June 15th so we can make sure that Biz Advance Now complies

8     fully with the Rule 2004 order and their subpoena.  We don't

9     want to, again, adjourn it too far out.

10          THE COURT:  That's also fine.  I didn't say this out

11     loud, but thought it.  Just make sure you file a notice of

12     continuation of conference on whatever it is that we're --

13     certainly on Biz Advance and Imperial.  And if that's where we

14     end up on Ace Funding too, that as well.  But --

15          MR. HOWARD:  That's where we're going, Your Honor.

16          THE COURT:  Okay.

17          MR. HOWARD:  And noted.  Yes, Your Honor.  And the

18     third status conference regarding the 2004 order and orders to

19     compel concerns Ace Funding.  The order to compel Ace Funding

20     to comply with their subpoena and Rule 2004 order was also

21     entered on April 17th.

22          I managed to get in contact with them the following

23     week, and they submitted documents on April 25th and April

24     26th.  I contacted them yesterday, reminding them to submit any

25     additional documents, in response to the subpoena, that hadn't

**KOSSOFF PLLC**

95

1   yet been submitted, as well as their written responses and

2   their subpoena declaration, as required under the Rule 2004

3   order.

4          We received their declaration but not their written

5   responses, so we'd like to obtain those written responses

6   before we consider closing this one out.  So we'd also like to

7   adjourn this one to June 15th with, again, leave for permitting

8   the trustee to submit a letter to take that matter off the

9   calendar if the trustee determines that no further assistance

10  from the Court is required and subject to us filing a notice of

11  a continuance.

12         THE COURT:  Okay.  That's approved too.  I assume no

13  one's here for any of the defendants who've just been

14  discussed, Ace Funding, Biz Advance, or Imperial Business

15  Solutions.  Is that correct?

16         Hearing nothing, okay.  So that's fine.  So the bottom

17  line, you're making efforts, you're engaged with two people,

18  one is not engaging, and we're going to push them all to June

19  15th.

20         MR. HOWARD:  That's correct, Your Honor.

21         THE COURT:  Okay.  And we have just -- I think we also

22  have a calendar notation, just generally, for a status

23  conference in the main case.  But it may be only for these

24  three matters.  Is there anything else you want to talk to me

25  about?

**KOSSOFF PLLC**

96

1          MR. HOWARD:  Your Honor, that concludes my

2     presentations to the Court today.

3          THE COURT:  Okay.  Let's see.  Mr. Borriello has just

4     turned his camera on, so maybe he wants to say something at the

5     end, as he foreshadowed, I think.

6          Oh, you're still muted, though.

7          MR. BORRIELLO:  Apologies, Your Honor.  Good morning

8     again.  Just for the record, Jared Borriello, on behalf of the

9     Chapter 7 trustee.

10          As I mentioned earlier, I was going to provide the

11     Court with a general status update and then some housekeeping

12     matters.

13          First, I'm happy to report that, since the last time

14     we were before you, we were working tirelessly and have

15     commenced nearly sixty adversary proceedings which seek to

16     recover, in the aggregate, over thirty million dollars for the

17     benefit of the estate and its creditors.

18          The estate has also -- sorry -- the trustee has also

19     entered into a number of tolling agreements with parties,

20     including most of Mr. Kossoff's immediate family members, that

21     will facilitate settlement discussions with those parties and

22     alleviate some of the pressure to file unnecessary proceedings

23     where we think those discussions might be successful.  And we

24     extended the deadlines out until -- the tolling agreement goes

25     to mid-September.  So we built in some time for us to continue

**KOSSOFF PLLC**

97

1  those discussions.

2          And additionally, the trustee anticipates filing

3  additional adversary proceedings related to claims that are not

4  time barred by the limitations deadline, which we anticipate

5  will seek millions of dollars in additional recoveries.  The

6  trustee's working on those complaints and anticipates filing

7  them in the coming months.

8          So that's the general status update with respect to

9  adversary proceedings.  Unless you have any questions about

10  that, I'll move on to some housekeeping matters.

11          THE COURT:  I don't.  I will just say I'm following

12  from afar, at a very broad level, because we get docketing

13  notices, so we're aware of all the activity you're doing.  And

14  my compliments; you're clearly working hard.

15          MR. BORRIELLO:  Thank you, Your Honor.  So the next

16  item is, we talked about the June 15th date on Your Honor's

17  calendar.  We noticed, when we were reviewing the calendar

18  today, that there are a couple of matters scheduled for June

19  7th, which we think --

20          THE COURT:  Oh.  Do you want to combine them?

21          MR. BORRIELLO:  -- we could combine them to the 15th,

22  and we'd file a notice of adjournment.  And those relate to

23  adversary proceedings 23-1063 and 64, which relate to Bank of

24  America, and then 1067, which relates to Tremada, and 1084,

25  which is Zweig.

**KOSSOFF PLLC**

98

1          THE COURT:  Okay.  I see 1096 and then 1100 on the

2    calendar as well.  Is that --

3          MR. BORRIELLO:  1096.  I may have missed some.  If I

4    did, we will clean them up and --

5          THE COURT:  Yeah, at any rate, it does -- yeah, I'll

6    just say basically I am fine combining as many of those as

7    possible onto June 15th.  I do want to avoid wasteful effort on

8    your part.  But make sure that the defendants can attend them.

9          MR. BORRIELLO:  Okay.

10          THE COURT:  All right?  Or else pick another date.

11    Like, I don't want to just back into an extension request.

12          And Ms. Chinoy has turned on her calendar (sic), which

13    suggests she wants to speak to something.  Is that so?

14          Oh, you're muted.

15          MS. CHINOY:  No, not specifically to that.  I had just

16    been -- I had turned it off brief -- I've had it on briefly for

17    a reason just -- I'm happy to wait until that.  We had had the

18    status conference --

19          THE COURT:  Okay.

20          MS. CHINOY:  -- on the calendar for that.  And so I'm

21    just still here but can wait until --

22          THE COURT:  Okay.  That's great.  Yeah.  If you want

23    to be heard, we'll get through Mr. Borriello, and then I'll

24    come over to you.

25          So yeah, go ahead, Mr. Borriello.

**eScribers LLC**

**KOSSOFF PLLC**

99

1        MR. BORRIELLO:  Understood.  So we will reach out to

2    the defendants who are on for the 7th, and subject to their

3    confirmation that they can appear on the 15th, we will move

4    those dates.

5        THE COURT:  Yeah, that's fine.  And if the 15th is bad

6    for somebody, but you want to clear out the 7th for your own

7    purposes, I don't mind.  Just use your judgment.  I just don't

8    want to --

9        MR. BORRIELLO:  Okay.

10       THE COURT:  -- inconvenience people and create a

11   problem.

12       MR. BORRIELLO:  Understood.  And then the last matter

13   for the status update is just the condo sale, which we had --

14       THE COURT:  Oh, yeah.

15       MR. BORRIELLO:  -- at last the last hearing or the

16   status conference.  That has closed as of May 1.  It yielded

17   net sale proceeds of approximately 133,000 dollars for the

18   estate.  The trustee is also holding the 35,000-dollar deposit

19   from the first buyer of the condo who defaulted on the purchase

20   agreement.

21       And as we previewed for you at the last status

22   conference, we anticipate that there'll be a dispute over that

23   amount, and it'll have to be resolved before Your Honor in a

24   contested proceeding.  But that's not for today.  I just wanted

25   to flag it again.  I know there are discussions ongoing, but

**KOSSOFF PLLC**

100

1    that's just to keep it on your radar that that may come before,

2    Your Honor, in the near future.

3           THE COURT:  Okay.

4           MR. BORRIELLO:  And that concludes my general status

5    update.  So if Ms. Chinoy has an issue she'd like to address,

6    I'll yield the podium to her.

7           THE COURT:  Great.

8           Yeah, go ahead, Ms. Chinoy.

9           MS. CHINOY:  No.  Morgan Chinoy here on behalf of

10   Continental Casualty Company.

11          There was no issues that I wanted to address

12   specifically.  We had simply had this status conference set on

13   the calendar for today in the event that Continental's motion

14   had not been resolved.

15          Since I realize that we have not yet submitted the

16   proposed order that was requested, I wanted to still appear

17   here today in case Your Honor had questions and also just to

18   confirm that we've been working with the trustee's counsel to

19   prepare a revised proposed order agreeable to both parties, and

20   expect to have that submitted to Your Honor very shortly.

21          THE COURT:  Okay.  Got it.  All right.  Thanks for

22   explaining that.  And I don't have questions.  I accept -- or I

23   guess you just answered the one question I could possibly have,

24   so I'll just await an order, and thank you for the update.

25          MS. CHINOY:  Great.  Thanks.

**KOSSOFF PLLC**

1      THE COURT:  Okay.  I think that covers everything we

2   needed to do today, yes?

3      MR. BORRIELLO:  Yes, Your Honor.

4      THE COURT:  Okay.  Let me thank everyone for their

5   ongoing hard work and good work.  And with that, I will see you

6   all soon.  And we are adjourned.  Take care.

7      MS. NESTER:  Thank you, Your Honor.

8      MR. BORRIELLO:  Thank you, Your Honor.

9      MR. HOWARD:  Thank you, Your Honor.

10     (Whereupon these proceedings were concluded at 11:51 AM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

102

1

2                    C E R T I F I C A T I O N

3

4   I, Sharona Shapiro, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8

9   _____

10  Sharona Shapiro (CET-492)

11  AAERT Certified Electronic Transcriber

12

13  eScribers

14  7227 North 16th Street, Suite #207

15  Phoenix, AZ 85020

16

17  Date:  May 29, 2023

18

19

20

21

22

23

24

25

**eScribers LLC**

**#**

**#207 (1)**
13:22

**$**

**$1,616,797.55 (2)**
37:19,23
**$23,660.64 (1)**
81:6
**$24,181.89 (1)**
86:8
**$51,362.15 (1)**
74:18
**$630,526.46 (1)**
87:16
**$682,210.83 (1)**
78:2

**A**

**Abbey (1)**
61:24
**ability (8)**
39:9;52:21;53:2,25;
65:20;66:11;67:6;
85:22
**able (14)**
21:22;22:19;24:9;
25:8;27:19;49:25;
50:2;57:6;64:6,11;
66:14;69:12;71:19;
77:17
**absence (2)**
69:10,13
**absorb (1)**
37:22
**accept (3)**
27:22;28:6;100:22
**acceptable (2)**
41:5;52:14
**accepting (1)**
28:18
**access (2)**
27:1;33:6
**accessing (1)**
29:13
**accommodate (1)**
24:10
**accommodation (2)**
30:7;64:12
**accomplish (1)**
20:11
**accord (1)**
35:16
**according (1)**
26:10
**accordingly (1)**
28:20
**accurate (1)**
69:7

**accustomed (1)**
93:9
**Ace (5)**
13:14;94:14,19,19;
95:14
**achievable (1)**
28:1
**achieved (1)**
75:1
**act (1)**
51:21
**acting (1)**
35:15
**action (2)**
78:18;88:3
**actions (1)**
78:25
**activity (1)**
97:13
**actual (1)**
77:17
**actually (3)**
44:5;65:22;94:2
**add (5)**
31:6,12;63:25;
64:25;65:2
**additional (7)**
22:15;27:4;61:7;
62:12;94:25;97:3,5
**additionally (1)**
97:2
**address (7)**
32:17,18,20,23,24;
100:5,11
**addressed (2)**
32:20,23
**addressee (1)**
32:19
**addressing (1)**
61:20
**adjourn (8)**
71:16;85:14,21,23;
86:15;88:22;94:9;
95:7
**adjourned (17)**
71:6;72:15,25;
78:13;80:15;83:11,
24;84:17;85:1;86:21;
87:10,12;88:11;
89:19;92:20;94:6;
101:6
**adjournment (5)**
70:16;73:25;86:13;
89:14;97:22
**adjournments (1)**
61:5
**adjourns (2)**
74:9;77:21
**administrable (1)**
28:12
**administrative (1)**
28:25
**admission (1)**

46:16
**admissions (1)**
46:2
**admitted (1)**
44:23
**adopting (1)**
33:2
**Adv (1)**
8:5
**Advance (7)**
13:11;93:17,20,22;
94:7,13;95:14
**adversarial (1)**
56:17
**adversaries (1)**
61:1
**Adversary (43)**
9:2,7,12,17,22;10:2,
7,12,17,22;11:2,7,12,
17,22;12:2,7,12,17,
22;13:2;20:3,17;
31:17;37:16;60:20,
22;61:20;63:4;65:22;
70:8,11,15;71:9;76:3,
18;78:1;84:10;89:22;
96:15;97:3,9,23
**advise (1)**
72:7
**advised (1)**
69:11
**advisors (1)**
22:14
**advocacy (1)**
61:7
**afar (1)**
97:12
**affect (2)**
56:9,12
**affidavit (14)**
73:10;74:20;76:13;
77:13;78:4;80:7;
82:25;83:17;84:5;
86:10;87:2,18;88:18;
90:5
**affirmative (1)**
38:19
**affirmatively (1)**
69:18
**Again (16)**
22:11;36:1,4;37:22;
39:12;43:19;52:16;
54:8;70:5;76:15,20;
94:6,9;95:7;96:8;
99:25
**against (17)**
37:17;44:1,5;70:12;
73:6;74:6,17;76:10;
78:16;80:19;82:21;
84:2;85:5;86:23;
88:15;89:23;90:2
**agenda (1)**
91:12
**agent (1)**

82:1
**aggregate (2)**
62:3;96:16
**ago (5)**
31:21;32:16;41:17,
17;82:1
**agony (1)**
49:2
**agree (2)**
58:3;64:22
**agreeable (1)**
100:19
**agreed (2)**
34:15;84:8;88:20;
90:22
**agreement (3)**
84:10;96:24;99:20
**agreements (1)**
96:19
**ahead (16)**
22:8;27:17;31:3,8;
32:14;35:23;52:17;
54:23;55:19;61:13;
71:8;74:15;81:4;82:5;
98:25;100:8
**aid (1)**
39:17
**AL (10)**
8:7;9:4,9,14,24;
12:14,19,24;13:4;
71:11
**ALBERT (22)**
8:3;9:2,7,12,17,22;
10:2,7,12,17,22;11:2,
7,12,17,22;12:2,7,12,
17,22;13:2
**Alexander (4)**
12:24;18:21;88:13,
15
**allegations (2)**
41:18;44:13
**allege (2)**
43:23;56:16
**alleged (1)**
57:13
**alleges (2)**
42:17,21
**alleviate (1)**
96:22
**allotted (1)**
59:2
**allow (5)**
50:14;57:24;60:18;
64:18;92:22
**almost (2)**
36:15;73:18
**although (1)**
40:11
**always (6)**
44:22;36:15;64:22;
71:25;76:25;91:7
**amenable (1)**
90:25

**amend (1)**
56:22
**amendment (4)**
56:22;57:24;64:13,
18
**America (1)**
97:24
**American (4)**
10:4;73:2,7;90:9
**Americas (1)**
17:4
**Amex (2)**
74:11;75:12
**among (3)**
38:20;58:11;65:7
**amount (10)**
24:15;32:9;37:22;
51:22;77:16;82:6;
86:8;88:6,8;99:23
**analysis (1)**
46:3
**analysts (1)**
47:4
**ANDREW (2)**
16:18;40:24
**Ann (1)**
88:15
**answered (2)**
79:13;100:23
**anticipate (6)**
23:21;26:22;62:7;
66:10;97:4;99:22
**anticipates (2)**
97:2,6
**Apartment (5)**
10:19;11:9;18:3;
77:24;80:17
**Apologies (1)**
96:7
**apologize (4)**
31:9;50:6;86:24;
88:1
**Apparently (1)**
59:2
**appear (2)**
99:3;100:16
**appearance (4)**
72:1,8,9;89:8
**appearances (4)**
20:6,8;79:4;81:11
**appearing (2)**
79:18;89:14
**appears (2)**
38:17,18
**applicable (2)**
41:19;43:13
**application (3)**
66:16,22;77:15
**applies (1)**
64:1
**apply (4)**
24:2;56:24,25;
63:14

**applying (1)**
24:5
**appreciate (2)**
37:10;66:2
**approach (4)**
20:22;51:17;78:20;
84:13
**appropriate (6)**
30:16;39:4;45:22;
46:15;48:13;57:24
**approval (5)**
62:1;64:23,24;65:5;
91:3
**approve (1)**
51:6
**approved (9)**
35:19;62:2,23;
80:12;86:17,19;
88:24;89:15;95:12
**approximately (2)**
62:3;99:17
**April (31)**
38:1,7;39:12;41:16;
73:11;74:20;76:14;
78:4,15;80:7,18;
82:20,25;83:18;84:1,
6,7,10;85:4;86:11;
87:3,14,18;88:18;
90:5;92:8,10;93:21;
94:21,23,23
**argument (1)**
51:9
**arising (1)**
20:4
**around (2)**
48:15;77:14
**arranged (1)**
33:17
**arranging (1)**
33:25
**arrived (1)**
75:7
**aside (1)**
47:19
**aspersions (1)**
52:25
**assert (1)**
43:25
**assertions (1)**
39:6
**assess (1)**
85:23
**assist (1)**
69:10
**assistance (2)**
92:18;95:9
**Associates (5)**
9:9;15:2;16:13;
21:6;37:17
**assume (5)**
25:16;33:18;41:12;
87:11;95:12
**Assuming (1)**

77:14
**assurances (1)**
26:12
**astray (1)**
91:6
**attempt (3)**
41:9;43:25;45:24
**attempts (2)**
92:9,15
**attend (1)**
98:8
**Attorneys (12)**
15:3,12;16:3,13;
17:3,12,20;18:3,12,
21;19:3,11
**authority (1)**
51:3
**available (1)**
59:16;67:25;69:19
**Ave (1)**
15:13
**Avenue (5)**
15:4;17:4;18:4,22;
19:12
**avoid (20)**
37:18;48:4;73:7;
74:17;76:11;78:1,17;
79:22;80:5;81:6;
82:22;83:15;84:3;
85:6;86:7,25;87:15;
88:16;90:3;98:7
**await (2)**
77:13;100:24
**awakened (1)**
74:14
**aware (4)**
61:10;66:16;67:3;
75:16;97:13
**away (4)**
64:4;65:1,1;69:2
**AZ (1)**
13:23

**B**

**back (9)**
30:15;37:3;48:1,12;
69:13;84:12;90:15;
94:1;98:11
**background (1)**
80:21
**backup (1)**
27:12
**bad (2)**
81:1;99:5
**balance (3)**
42:19,20;43:7;52:1;
60:14
**Bank (8)**
17:3;21:18;22:13,
13;29:2;31:11;62:17;
97:23
**Bankruptcy (8)**

8:12,23;13:8,11,14;
20:5;56:25;57:1
**Bank's (2)**
22:22;31:16
**Banyan (4)**
11:14;82:18,21;
83:6
**Barasky (4)**
12:4;85:3,5,20
**barred (1)**
97:4
**BARRIE (1)**
15:8
**base (1)**
60:21
**based (7)**
42:20,25;43:2,8;
44:4;58:16;69:5
**bases (1)**
46:4
**basic (2)**
48:25;61:2
**basically (2)**
65:6;98:6
**basis (3)**
38:6;45:1;83:23
**bearer (1)**
69:1
**beautiful (1)**
72:13
**behalf (8)**
21:9;31:10;40:23;
65:14;71:22;89:4;
96:8;100:9
**benefit (9)**
33:2;43:24;44:5,6,
9,16;45:1,2;96:17
**benign (1)**
61:10
**BENSINGER (2)**
15:11;63:3
**Besen (1)**
17:12
**best (7)**
40:14;41:11,12;
48:11;66:11;67:8;
92:19
**better (4)**
44:14;53:24;54:1;
77:2
**beyond (2)**
64:14;65:1
**big (2)**
57:20;77:5
**billing (1)**
27:3
**bit (4)**
32:10;50:3,8;51:5
**Biz (7)**
13:11;93:17,19,22;
94:7,13;95:14
**BLOOMINGDALE'S (5)**
8:7;13:4;89:23;

90:2,7
**blow (1)**
51:5
**BOLTON (5)**
16:2,9;70:12,21,21
**BOND (2)**
17:19;71:21
**Borriello (74)**
20:17;21:8,8,14,17;
22:9,10,11;23:5,10,
13,20,23;24:3,5,9;
25:4,9;28:5,16,17,23;
29:8,19,25;30:5,18;
31:12;32:24;34:10,
13;35:18;60:19;
61:16,19,19,22;62:6,
11;63:1,17,18;68:1,9,
10,15,21,25;69:6,25;
70:5,6,11;71:2,9;
72:17,23;91:15;96:3,
7,8;97:15,21;98:3,9,
23,25;99:1,9,12,15;
100:4;101:3,8
**Boswell (6)**
15:12;62:14;63:4,7,
14,21
**both (9)**
22:14,22;26:10;
35:11;42:3;45:2;
46:12;87:5;100:19
**bottom (2)**
51:24;95:16
**Bowling (1)**
8:13
**BRENDAN (1)**
17:16
**brief (3)**
40:18;49:3;98:16
**briefing (7)**
49:8;50:5,15;51:8,
17,24;52:3
**briefings (1)**
26:5
**briefly (1)**
98:16
**bring (1)**
62:3
**broad (3)**
24:20;54:7;97:12
**broader (1)**
58:5
**Broadway (1)**
18:13
**broken (1)**
34:23
**brought (2)**
37:17;90:2
**BRUCE (3)**
17:8;31:9;85:5
**brush (1)**
24:20
**bug (1)**
91:9

**bugged (1)**
91:10
**building (1)**
33:3
**built (3)**
24:6;63:19;96:25
**built-in (1)**
68:23
**bunching (1)**
61:14
**bundle (1)**
69:20
**bundling (1)**
60:12
**burden (3)**
47:10;48:7;62:11
**burdensome (1)**
51:15
**burning (1)**
81:20
**Business (6)**
13:8;66:5;92:7,10,
13;95:14
**buyer (1)**
99:19
**bystander (1)**
63:25

**C**

**calendar (22)**
20:3;21:1;26:1;
58:25;59:9;60:6,14;
61:2;62:9;68:13;
69:14;70:8;89:22;
92:23;95:9,22;97:17,
17;98:2,12,20;100:13
**call (4)**
35:5;43:4;45:23;
93:14
**called (3)**
42:17,20,23
**came (2)**
41:19;58:17
**camera (1)**
96:4
**can (68)**
20:11,12,13,21;
21:12,15,18,23;22:21;
23:5;24:23;26:19;
27:12;29:4,5;30:6,25;
32:7,22;33:6;34:1,1,
5;35:7,11,19;36:22;
37:21;40:11;41:5;
44:17,24;46:18;
50:10;51:9,20;52:13;
58:11,13;60:21;
67:18,25;68:1;72:7;
75:19,20,25,25;77:2,
5,7,12;78:14;79:10,
22;81:4,18,23;82:3;
83:23;85:12;86:8;
91:1;93:16;94:7;98:8,

21;99:3

**cancel (1)**
68:1

**canceled (1)**
25:17

**CAPACITY (23)**
8:3;9:3,8,13,18,23;
10:3,8,13,18,23;11:3,
8,13,18,23;12:3,8,13,
18,23;13:3;16:3

**Capital (4)**
11:14;82:18,21;
83:7

**capture (1)**
37:3

**care (5)**
37:11;59:17;75:13;
91:18;101:6

**carry (2)**
46:8;52:5

**case (80)**
9:10;20:4;22:21,25;
26:23;34:16,22;35:4,
11;36:17,22;37:5;
38:13,23;39:19;
40:18;41:2,14;42:4,4;
45:18,24;46:8;48:6,
12,20,22;49:24;51:2,
20;52:11;53:24;54:1,
8,13;55:9;57:25;60:6,
10,10,21;61:2;62:8,
19,21,23;63:8,22;
65:8,12;67:22;70:3,3,
7;72:10,21;73:2;74:5;
77:22;79:20;80:2,15,
23;82:2,16,18;83:11,
12;85:2;86:4;87:12;
88:11;89:10,10,14,20;
91:16;93:16;95:23;
100:17

**cases (14)**
24:14;40:9;57:14;
58:24;69:5,20;71:15;
74:3;76:24;77:5;
78:10;79:2;81:8;83:5

**case's (1)**
76:8

**CASHMAN (2)**
16:12;40:23

**cast (1)**
52:24

**Casualty (2)**
19:3;100:10

**cause (6)**
30:17;34:3;57:25;
64:14;65:8;77:7

**Center (1)**
17:21

**certain (5)**
20:17;26:12;29:13;
77:16;88:7

**certainly (16)**
39:7,15;40:4;43:16,

18;48:7;49:21;56:7;
58:14;69:11;73:21;
84:21;85:17;88:10;
91:21;94:13

**challenging (2)**
23:24;30:9

**Chalron (1)**
61:24

**chambers (6)**
33:20,24;51:9;
66:20;90:24;91:21

**change (3)**
39:7;69:14;81:12

**CHAPTER (31)**
8:4;9:3,8,13,18,23;
10:3,8,13,18,23;11:3,
8,13,18,23;12:3,8,13,
18,23;13:3;20:16;
22:11;28:17;37:13;
49:18;60:17;73:5;
92:2;96:9

**chart (2)**
61:1;91:20

**check (2)**
79:21;90:15

**check-in (1)**
67:25

**checks (1)**
43:9

**CHINOY (9)**
19:7;98:12,15,20;
100:5,8,9,9,25

**choose (1)**
45:16

**CHRISTOPHER (1)**
19:16

**circuit (1)**
44:4

**circulated (1)**
22:22

**circumstance (1)**
30:9

**circumstances (5)**
27:19;32:9;65:4;
85:22;87:25

**City (1)**
16:7

**civil (1)**
27:13

**claim (5)**
27:1;29:5;43:14,20;
57:2

**claims (9)**
42:2;43:5,17;44:2,
4,6,6,10;97:3

**clarification (1)**
63:13

**clarify (1)**
68:10

**class (1)**
72:4

**clean (1)**
98:4

**cleaner (1)**
77:6

**clear (5)**
50:19;66:7,17;91:1;
99:6

**clearly (1)**
40:17;58:6;97:14

**clerk (1)**
92:25

**clerk's (2)**
77:12;78:8

**client (4)**
34:19;48:21,21;
65:20

**clients (3)**
42:23;67:8,23

**clients' (1)**
68:22

**client's (1)**
43:8

**close (11)**
23:15,16;36:7,7,15;
47:8;50:15;54:9,9;
55:2,4

**closed (1)**
99:16

**closing (3)**
81:25;82:1;95:6

**cocounsel (1)**
67:2

**co-counsel (1)**
40:25

**codebtors (1)**
44:7

**Colgate (7)**
9:24;17:20;71:10,
13,20,22;72:3

**collapses (1)**
45:8

**colleague (4)**
20:16;40:24;60:18;
89:25

**combine (2)**
97:20,21

**combined (1)**
93:16

**combining (1)**
98:6

**combo (1)**
51:8

**comfort (1)**
59:7

**coming (2)**
20:9;97:7

**commenced (1)**
96:15

**commencement (1)**
51:12

**common (2)**
44:24,25

**commonly-controlled (1)**
44:25

**communicate (4)**

29:22;57:6;58:13;
67:6

**communication (1)**
61:11

**communications (9)**
54:21;74:22;76:16;
78:6;80:9;83:3;87:5,
21;93:22

**Company (5)**
10:4;19:3;37:18;
73:7;100:10

**comparable (1)**
52:11

**compel (2)**
94:19,19

**compelling (5)**
13:7,10,13;92:6;
93:19

**complaint (34)**
31:17;37:16;41:19;
42:21;43:1,12;44:13;
46:1;47:6;48:6;56:17,
20;57:22;73:6,11,13;
74:17;76:10;78:1,16;
80:4,19;81:5;82:21;
83:14;84:2;85:5,8;
86:6,23;87:15;88:15;
90:2,10

**complaints (1)**
97:6

**complete (2)**
42:9;69:6

**completed (2)**
48:9;59:13

**complication (2)**
46:20;52:8

**complies (1)**
94:7

**compliments (1)**
97:14

**comply (9)**
13:8,11,14;65:20;
66:11;92:7,15;93:20;
94:20

**comports (1)**
71:23

**comprehensive (2)**
28:9,24

**computer (1)**
53:20

**concentrating (1)**
45:19

**concerning (2)**
31:22;44:13

**concerns (4)**
53:20;65:19;68:24;
94:19

**conclude (2)**
72:2;76:3

**concluded (1)**
101:10

**concludes (3)**
37:5;96:1;100:4

**conclusion (4)**
35:12;41:20;44:24;
47:22

**condition (2)**
63:9;66:3

**conditions (1)**
66:10

**condo (2)**
99:13,19

**conducted (1)**
34:14

**confer (2)**
39:19;50:10

**conference (61)**
9:5,10,15,20,25;
10:5,10,15,20,25;
11:5,10,15,20,25;
12:5,10,15,20,25;
13:5,6,7,10,13;25:17;
36:12;38:7,9,14;39:5,
12,12;41:15,24;56:3;
58:7;67:21;68:13;
69:17;70:24;71:12,
17;72:18,19;73:23;
79:18;84:16;85:15,
24;88:23;92:5,20;
93:19;94:12,18;
95:23;98:18;99:16,
22;100:12

**conferences (1)**
25:25

**conferred (1)**
34:19

**confidential (1)**
71:14

**confirm (3)**
81:18;86:8;100:18

**confirmation (1)**
99:3

**conflicts (2)**
72:1,1

**congratulations (1)**
62:24

**connection (6)**
31:15;37:19;39:2;
71:16;90:9;92:5

**conscious (1)**
82:6

**consensual (1)**
24:16

**consensually (1)**
41:10;48:22

**consent (2)**
72:8;79:16

**consider (2)**
36:14;95:6

**considered (1)**
72:2

**considering (1)**
41:18

**Consistent (4)**
38:16,22;81:8;83:4

**conspire (1)**

65:7
**constituted (1)**
45:2
**constitutes (1)**
31:15
**constructive (2)**
30:4;76:23
**contact (13)**
30:6;33:22,24,24;
34:1,1;51:9;74:25;
75:20;79:11;90:14;
92:10;94:22
**contacted (4)**
84:7;86:12;94:1,24
**contacting (1)**
66:3
**contacts (1)**
90:17
**contained (6)**
32:25;39:8,23;
82:24;87:2,17
**contemplated (7)**
24:1,5;40:13;45:21;
46:11,13;47:20
**contemplating (1)**
51:6
**contested (1)**
99:24
**Continental (2)**
19:3;100:10
**Continental's (1)**
100:13
**continuance (1)**
95:11
**continuation (2)**
70:24;94:12
**continue (5)**
22:18;40:8;62:19;
66:10;96:25
**continued (1)**
22:13
**continues (1)**
64:19
**control (4)**
40:11;64:15;65:2;
90:20
**convey (1)**
67:12
**conveying (1)**
69:6
**co-op (1)**
81:24
**cooperation (1)**
27:10
**coordinating (1)**
29:2
**copies (1)**
56:2
**copy (6)**
26:25;29:5,14;61:8;
63:5;91:20
**Corp (3)**
11:9;18:3;80:17

**correctly (2)**
32:17;81:16
**cost (1)**
82:6
**counsel (44)**
20:16;22:17,23,23;
26:11,19,20;29:4;
31:3;32:17,17,20;
37:13;38:1,23,25;
39:24;40:6,19;49:18;
50:3,9;52:23,23,25;
53:4;57:6,15;60:13,
16;61:3;63:6,12,13;
71:13;73:5;84:7;
86:13;89:9,10;90:17;
93:23;94:1;100:18
**Country (1)**
16:5
**counts (1)**
43:23
**couple (6)**
20:4;24:11;32:16;
49:14;58:5;97:18
**course (8)**
28:21;43:9;44:11,
18;45:6;56:23;67:1;
88:3
**Court (270)**
8:12;20:2,20,23;
21:12,16,21;22:2,7;
23:4,6,11,14,18,22;
24:1,4,8,11;25:5,13,
18,21,23;26:3,7,15,
17;27:2,5,7,17,21,25;
28:3,12,21;29:7,17,
20;30:1,8,12,14,24;
31:3,7;32:1,3,5,8,13;
33:1,11,20;34:3,25;
35:2,6,23;36:1,4,6,13,
25;37:11,21,24;38:9;
39:11,19,21,25;40:2;
42:8,14;44:3,17,19;
45:3,7,12,15;46:6;
47:13,17,19,24;48:8,
11,24;49:4,7,16;50:5,
7,13,17;52:16;53:7,9,
11;55:1,11,15,17,19;
57:3,5,9;58:4,23;59:4,
6,12,16,20,23;60:1,5,
8,22,24;61:18,21;
62:2,5,10,11,24;
63:15,24;64:9,17,20,
23,24;65:5,12,17,23,
25;66:13,16,17,19;
67:3,7,11,13,15;68:6,
8,14,16,22;69:3,8,16,
23;70:1,10,18,23;
71:4,20,24;72:12,22,
25;73:16,22;74:1,7,
25;75:3,5,9,25;76:4,5,
7,20,21,22;77:9,15,
19;78:9,11,13,20;
79:6,13;80:1,12,20,

25;81:12,14,17,19;
82:4,11,16;83:6,11,
21;84:13,18,22;85:1,
9,11,12,17,19;86:4,
14,17,21;87:8,10,23;
88:2,5,11,22,24;89:3,
6,13,19;90:13,19,25;
91:2,5,13,17,22;
92:18,23,25;93:6,9,
15;94:10,16;95:10,12,
21;96:2,3,11;97:11,
20;98:1,5,10,19,22;
99:5,10,14;100:3,7,
21;101:1,4
**courts (1)**
72:7
**Court's (2)**
38:22;62:9
**cover (4)**
20:24;21:15;60:19;
80:13
**coverage (1)**
69:5
**covered (3)**
29:8;58:21;71:10
**covering (4)**
70:5,7;71:3;89:25
**covers (5)**
30:10;58:18;68:8;
69:24;101:1
**COVID (1)**
66:5
**CPAs (1)**
19:11
**crazily (1)**
51:17
**create (1)**
99:10
**creditor (3)**
56:16,19;57:13
**creditors (1)**
96:17
**crosstalk (1)**
53:16
**cumbersome (1)**
54:22
**Curanovic (4)**
12:14;86:24,24;
87:11
**currently (1)**
64:13
**cushion (2)**
33:3;51:5
**custody (1)**
46:18
**cut (3)**
23:7;50:18;82:8
**cuts (1)**
21:1
**cycle (1)**
49:8

**D**

**damages (1)**
77:1
**date (15)**
22:16;51:9,12;56:3;
57:1;64:4;66:24;
67:22;68:17;90:20;
92:16,21;93:3;97:16;
98:10
**dates (34)**
24:1;35:25;38:24;
39:22,23;48:9;50:11;
52:8,13;54:7,11,14,
15,16,17,19,25;55:7,
8,10,12,25;56:8,9,14;
58:5,8;62:12,22;
63:13,16;67:19;
77:17;99:4
**DAVID (4)**
8:22;16:2,9;70:21
**day (4)**
22:1;59:14;82:12;
93:11
**days (9)**
31:13,21;32:16;
41:17;46:23,24;
73:14;84:8;90:10
**days' (1)**
78:23
**DC (1)**
19:5
**deadline (19)**
38:9,25;73:10;
74:19;76:13;78:4;
80:6;82:24;83:17;
84:5,8,15;86:10;87:2,
17;88:20;90:5,23;
97:4
**deadlines (13)**
23:9;24:23,23;25:9;
36:22;39:20;41:4;
53:4;63:7;64:23;79:4;
81:10;96:24
**deal (2)**
41:6;46:20
**Dean (2)**
84:2,23
**debtor (5)**
38:21;42:18,22;
43:10;44:14
**December (4)**
23:17;36:8;54:10;
55:4
**decided (1)**
26:8
**decision (2)**
25:16;85:16
**declaration (3)**
94:3;95:2,4
**default (25)**
73:15,17;74:23,24;

75:16,18;76:17,19;
77:12,15;78:7,8;
80:10,11;83:4,4,19,
20;84:14;87:6,7,22,
22;88:7;90:11
**defaulted (1)**
99:19
**defeat (1)**
43:17
**defendant (48)**
21:9,11,14;24:2;
50:21;58:25;63:3,8;
70:19,20;73:2,13;
74:23,23;75:1,11;
76:16,16;77:23;78:7,
7,21;79:19,19;80:2,
10,10,16,19;82:19;
83:3,12;84:8,15,23;
85:3,7,19;86:5,13,18;
87:4,5,13,21,21;
88:12,24
**Defendants (20)**
8:8;21:5;24:6;
40:23;58:20;60:11;
61:23;62:13;65:12,
16;67:15;79:2,8;83:3;
87:5,11;89:4;95:13;
98:8;99:2
**defendants' (1)**
21:1
**defendant's (1)**
83:19
**defense (2)**
43:8;66:15
**defenses (5)**
28:22;38:19;43:2;
46:2;56:11
**defined (1)**
36:22
**definitely (1)**
35:14
**degree (1)**
24:25
**delay (2)**
64:15;66:11
**delaying (1)**
40:14
**delays (1)**
36:16
**delicto (1)**
43:15
**delivery (1)**
33:8
**demand (1)**
66:15
**demands (2)**
31:24;66:12
**denials (1)**
46:3
**denied (1)**
38:8
**depending (1)**
55:8

**depose (3)**
47:2,2,4
**deposit (1)**
99:18
**deposition (4)**
33:13,16,25;34:5
**depositions (4)**
47:1,12;50:13;
51:14
**deprive (1)**
39:8
**derail (1)**
57:25
**describe (3)**
23:7,11;40:12
**described (10)**
25:6,9;30:18,19;
34:13;35:18;51:16;
61:14;64:3;70:14
**describing (1)**
50:24
**deserve (1)**
40:9
**desire (2)**
52:1,2
**despite (2)**
41:11;53:4
**destroyed (1)**
66:5
**detail (1)**
46:1
**details (1)**
41:1
**determination (4)**
23:25;45:1;47:9;
49:4
**determines (1)**
95:9
**determining (1)**
46:2
**development (1)**
58:19
**deviation (1)**
30:17
**devoting (1)**
48:22
**dichotomy (1)**
45:4
**different (5)**
78:20;79:2,2;84:13;
92:11
**differently (1)**
22:25
**difficult (3)**
53:5;63:9;67:9
**difficulty (1)**
66:3
**DIN (1)**
32:19
**direct (5)**
39:19;42:17;43:6,7,
11
**direct/ (1)**

45:3
**directly (3)**
33:17;41:3;42:18
**directs (1)**
43:19
**disclosed (1)**
65:21
**disclosure (1)**
68:17
**disclosures (7)**
23:15;24:7;36:6;
50:12;54:8;55:2;
63:20
**discovery (78)**
23:15,16,17,17,19;
24:17;26:23;27:8,10,
12;28:7,18;30:20;
31:22;36:7,8,15,21,
21;38:5,10,14;39:5,5,
15,20;40:9,15;41:14,
23,25;42:6;46:7,8,12,
13,16;49:21,23;50:7,
8,10,12,13,15;51:3,6,
10,12,14;52:2,4,11;
54:7,9,10,19;55:3,4,4,
23;58:18;63:10;64:6;
65:20;66:15;78:23;
79:4,5;81:22;85:16,
25
**discuss (3)**
55:8;62:20;92:4
**discussed (3)**
52:12;90:8;95:14
**discussion (9)**
35:20;37:3;52:7;
56:13;58:17;72:19;
77:22;78:9;81:8
**discussions (14)**
22:14,16;34:13,16,
23;39:21;41:2;62:16;
65:3;70:13;96:21,23;
97:1;99:25
**dismiss (1)**
85:8
**disposes (1)**
48:10
**dispositive (2)**
39:4;42:2
**dispute (1)**
99:22
**disputes (1)**
79:22
**dissatisfied (1)**
65:6
**district (3)**
85:9,11,17
**Djoka (1)**
86:24
**doable (1)**
30:8
**docket (40)**
38:2,3,12,17,17,18;

60:23;61:2;73:9,11;
74:3,19,21;76:12,14;
78:3,5,18;80:6,8;
81:7;82:23,25;83:16,
18;84:4,6;85:8,9;
86:9,11;87:1,3,17,19;
88:17,18,21;90:4,6
**docketed (3)**
85:9;90:4;91:1
**docketing (1)**
97:12
**Doctrine (1)**
43:15
**document (8)**
24:24;26:22;27:19,
25;29:6;31:24;46:13;
61:10
**documentation (2)**
26:12,13
**documents (18)**
29:11,13;31:14,23,
25;32:2,12,15;39:9;
46:19;49:25;56:2;
63:11,22;93:23,25;
94:23,25
**dollar (3)**
37:21;82:6;88:8
**dollars (11)**
42:15;43:11;62:3;
73:8;82:23;83:15;
84:3;88:17;96:16;
97:5;99:17
**done (6)**
35:13;36:23;40:7;
60:2;64:6;75:14
**down (8)**
26:2,4;34:23;35:25;
67:21;69:16;73:22;
88:6
**download (1)**
53:21
**draft (2)**
39:23;84:9
**drafted (1)**
64:13
**drag (1)**
24:17
**DROGIN (1)**
18:11
**drop (2)**
35:5;44:10
**dropping (1)**
37:10
**drops (1)**
48:6
**due (2)**
43:9;85:11

**E**

**earlier (6)**
45:25;54:15,19;
55:7;70:1;96:10

**earliest (1)**
66:18
**early (2)**
47:22;62:1
**easier (1)**
33:6
**easily (1)**
58:14
**East (3)**
11:9;18:3;80:16
**echoes (1)**
39:11
**economic (1)**
44:9
**educated (1)**
49:4
**effect (1)**
44:4
**efficiency (2)**
20:8;28:25
**effort (5)**
57:20;63:12;73:18;
88:9;98:7
**efforts (3)**
45:19;65:8;95:17
**Eighth (1)**
15:13
**either (12)**
24:14;33:15;34:21;
43:14;56:7;62:1;
64:25;65:6;79:16;
87:4,5;91:6
**electronic (2)**
29:24,25
**ELLMAN (2)**
17:2;31:10
**else (7)**
24:17;34:11;46:15;
59:8;70:25;95:24;
98:10
**email (6)**
23:5;57:15,22;
75:20;90:18;92:11
**emails (1)**
93:25
**emasculate (1)**
57:1
**encourage (1)**
53:17
**end (15)**
35:10;39:4,15;
41:16;47:22;49:8,8;
51:3;62:1;72:19,21;
75:12;81:1;94:14;
96:5
**engage (4)**
22:14;53:25;77:3,7
**engaged (3)**
62:16;70:13;95:17
**engaging (1)**
95:18
**enlarge (1)**
66:9

**enough (3)**
33:8;48:14;64:4
**enrichment (3)**
43:13,17,20
**ensure (1)**
72:10
**enter (6)**
34:5;70:17;71:19;
79:21,23;88:7
**entered (8)**
35:21;62:21;89:8;
92:6,8;93:21;94:21;
96:19
**entering (3)**
34:16,22;68:12
**Enterprises (1)**
61:25
**entertain (1)**
39:14
**entities (2)**
44:24,25
**entitled (1)**
27:11
**entity (1)**
44:15
**entry (14)**
73:15;74:24;76:18;
77:12,13;78:8;79:17;
80:11;83:4,20;84:14;
87:6,22;90:11
**envision (1)**
77:10
**equivalent (1)**
43:25
**Ernest (1)**
61:24
**error (2)**
57:12,21
**eScribers (1)**
13:21
**escrow (1)**
82:2
**ESQ (13)**
15:8,17;16:9,18,19;
17:8,16,25;18:8,17,
25;19:7,16
**established (1)**
93:22
**estate (10)**
16:4;22:17,23;62:4,
14;70:9,14;96:17,18;
99:18
**ET (10)**
8:7;9:4,9,14,24;
12:14,19,24;13:4;
71:11
**evaluate (1)**
50:1
**evaluating (4)**
42:12;44:12;45:11;
92:17
**even (3)**
24:7;63:19;72:9

**event (1)**
100:13
**everybody (3)**
56:1;60:9;64:2
**everyone (6)**
20:2;27:22;30:19;
53:17;67:24;101:4
**everyone's (3)**
26:19;30:21;54:2
**everything's (1)**
34:8
**Evidently (1)**
91:6
**exact (1)**
42:19
**exactly (4)**
32:23;33:3;55:11;
73:16
**exchange (2)**
22:15,18
**excuse (2)**
43:10;51:14
**excused (1)**
59:21
**execute (1)**
86:14
**executor (1)**
16:4
**existence (2)**
43:16,19
**exists (1)**
29:23
**expect (4)**
71:19,25;92:24;
100:20
**expectations (1)**
36:22
**expense (1)**
48:5
**expert (10)**
23:17,19,24;33:14;
34:20;47:9,11;50:13;
55:4;79:4
**experts (5)**
23:25;36:8;47:12,
23;54:10
**explain (1)**
50:19
**explained (1)**
49:11
**explaining (2)**
45:14;100:22
**explanation (1)**
40:20
**explicitly (1)**
57:18
**Express (4)**
10:4;73:3,7;90:9
**extend (4)**
84:8;88:20;89:9;
90:22
**extended (2)**
84:15;96:24

**extension (2)**
86:15;98:11
**extent (3)**
29:10;31:23;33:12,
15;53:17;55:21
**extra (1)**
88:9
**extremely (1)**
66:4
**eye (3)**
32:6;46:1;68:3
**eyeball (1)**
40:16

## F

**face (2)**
42:21;44:12
**facilitate (3)**
53:18;65:2;96:21
**facility (4)**
30:6;31:1;33:21;
59:1
**facing (1)**
48:5
**fact (18)**
23:15,16;34:15,22;
36:7;38:19;47:1,8,22;
50:12,20;51:14;54:9;
55:3;56:9;72:3,10;
79:4
**factual (1)**
61:7
**fail (1)**
67:8
**failed (1)**
53:5
**fails (1)**
84:15
**failure (1)**
56:15
**fair (2)**
45:13;54:17
**fairly (1)**
23:8
**faith (5)**
34:14;38:20;53:23;
66:11;69:6
**family (5)**
37:20;47:3;67:8;
70:15;96:20
**far (6)**
30:15;34:7;64:4;
67:23;69:12;94:9
**fashion (1)**
32:21
**fault (1)**
53:16
**fear (1)**
32:16
**feed (1)**
53:14
**feedback (1)**

81:1
**feel (2)**
55:21;93:8
**fees (1)**
63:10
**few (1)**
20:19
**Fifth (1)**
18:4
**figure (1)**
29:21
**file (20)**
31:16,16;40:14;
42:1;45:15,16;48:13,
14;49:1,11;58:20;
73:25;76:1;81:25;
84:15;89:9,12;94:11;
96:22;97:22
**filed (47)**
38:16;41:16;48:12;
51:2;61:4;62:7;73:6,
11,12;74:17,20,22;
76:10,13,15;78:4,6,
16,18,21;79:12,13;
80:7,9,19;81:7,9;
82:21,25;83:2,17,19;
84:2,5;85:5,7;86:10,
12;87:3,15,18,20;
88:14,18;89:8;90:5,
12
**files (3)**
29:2,14,15
**filing (9)**
27:1;57:1,17,19;
58:12;61:25;95:10;
97:2,6
**fill-in-the-blank (1)**
91:8
**final (2)**
70:16;89:22
**finalize (1)**
67:19
**finalizing (1)**
54:18
**Finally (1)**
44:12
**financial (4)**
22:14;29:12;63:9;
66:4
**find (2)**
75:20;88:9
**finding (1)**
75:15
**fine (38)**
21:17;24:21;25:5,
14;28:18;40:4;54:11,
12,13;59:6;61:14;
65:10;67:7;69:8,19;
70:18;71:24;75:9;
76:7;77:19;78:10;
79:10;81:24;83:8;
87:8,11,23,24;88:2,3;
90:19;93:6,9,12;

94:10;95:16;98:6;
99:5
**finish (5)**
30:12,14,15;67:18;
68:18
**finished (1)**
68:19
**firm (2)**
31:10;53:20
**firm's (1)**
53:21
**first (18)**
20:11;24:13;25:7,
15;26:21;32:18;35:8;
45:18;48:16:10,25;
49:20;57:16;62:24;
71:12;91:14;92:6;
96:13;99:19
**fix (1)**
77:1
**fixable (1)**
58:2
**flag (3)**
30:5;62:6;99:25
**flaw (1)**
56:5
**flexibility (1)**
63:19
**floated (2)**
45:4;55:24
**Floor (3)**
17:5,22;18:14
**flow (1)**
77:2
**fly (1)**
55:25
**focus (1)**
35:13
**folks (5)**
32:10;33:21;88:9;
93:7
**follow (2)**
47:23;91:8
**followed (3)**
38:12;47:1;84:11
**following (3)**
54:5;94:22;97:11
**follows (1)**
79:15
**footing (1)**
35:11
**foreshadowed (1)**
96:5
**forever (1)**
24:17
**forget (1)**
42:19
**form (6)**
23:14;24:21;27:25;
28:20;29:24,25
**formal (5)**
27:9,12;28:7;31:24;
72:7

**formally (2)**
42:9;75:18
**format (2)**
28:19;33:19
**forth (4)**
24:25;64:23;73:9;
76:12
**forty (2)**
43:3,4
**forty-five (1)**
46:24
**forward (18)**
22:21;26:8;38:5;
41:6;48:8;49:21,22;
50:10,14;62:19;
63:23;69:12;74:24;
77:18;78:8;79:3;
85:16;87:6
**Fourth (1)**
43:22
**fraudulent (1)**
56:24
**free (4)**
20:12;60:2;70:2;
71:7
**frequently (1)**
69:21
**Friday (2)**
71:12;94:1
**fully (3)**
34:9;49:3;94:8
**Funding (5)**
13:14;94:14,19,19;
95:14
**funds (1)**
82:2
**further (15)**
42:4;46:3;54:21;
73:23;76:5,21;78:12,
13;79:23;86:3;91:17;
92:18,22,24;95:9
**future (3)**
31:22;66:22;100:2

## G

**Garden (1)**
16:7
**gear (1)**
73:19
**general (10)**
24:20;40:8;49:20;
60:21;72:21;79:6;
91:15;96:11;97:8;
100:4
**Generally (3)**
25:11;39:13;95:22
**generated (1)**
64:22
**given (11)**
23:3;26:12;27:19;
29:13,14;39:6;46:17;
52:5;62:18;79:19;

82:5
**gives (1)**
46:4
**glad (2)**
35:15;89:13
**glitch (1)**
74:13
**global (1)**
70:13
**goal (1)**
78:25
**goes (1)**
96:24
**GOLDBERG (1)**
19:10
**Good (28)**
20:2;21:23;22:4,10;
24:7,14;30:20;34:6,
14;36:23;38:20;
40:22;42:13;47:14;
53:23;54:1;59:12,14,
14,14;63:2;66:1;89:1,
5,6,21;96:7;101:5
**GOODMAN (18)**
17:8;30:23;31:2,5,
9,9;32:2,4,22;33:5,6;
34:11,12;35:1,3;37:9,
11,12
**governs (1)**
50:22
**granted (1)**
61:5
**granular (1)**
24:23
**grateful (1)**
33:21
**Great (19)**
21:21;22:2;29:7;
32:1;35:9;40:13;57:9;
60:24;61:18;62:5;
66:19;80:25;82:4;
90:19,21;91:22;
98:22;100:7,25
**greater (1)**
46:1
**greedy (1)**
55:12
**Green (1)**
8:13
**grounds (1)**
41:21
**guarantors (1)**
44:7
**guess (10)**
26:19;37:1;40:3;
50:22;58:11;61:15;
63:15;75:11;81:1;
100:23

## H

**Hampton (8)**
15:3;16:14;37:17;

38:23;40:24;43:23;
44:1;50:23
**Hampton's (1)**
38:1
**hand (1)**
40:18
**handling (3)**
20:17;21:17,19
**hang (7)**
27:7;30:14;53:11;
57:5;71:4;80:20;
92:25
**happy (8)**
23:2;32:11;39:25;
61:22;85:17;91:21;
96:13;98:17
**hard (5)**
29:2,14;54:1;97:14;
101:5
**harder (1)**
53:15
**hate (2)**
69:1;77:16
**head (3)**
25:24;46:9;67:17
**health (1)**
59:14
**hear (14)**
21:22;22:3;27:15;
28:3;40:19;49:16;
58:9;64:2;66:22,25;
69:17;72:20;81:2;
93:1
**heard (12)**
34:9;35:17;54:6;
62:25;65:13;67:16,
23;75:12;79:20;
84:12;88:25;98:23
**hearing (12)**
25:8;26:6,7;35:21;
37:2;62:9;73:25;
82:12;83:23;93:10;
95:16;99:15
**heartburn (1)**
88:8
**held (2)**
38:7;71:12
**Hello (3)**
20:6;21:23;75:21
**help (3)**
53:3;68:18;72:9
**helped (1)**
66:23
**helpful (7)**
32:3;34:2;53:3;
61:11;91:2,6;93:1
**Henry (3)**
11:19;83:13,21
**HERBST (2)**
18:20;89:2
**Here's (3)**
50:17;57:9;75:22
**hit (2)**

28:9;60:23
**HL (1)**
88:15
**hold (2)**
40:8;50:16
**holder (1)**
43:9
**holding (1)**
99:18
**Holdings (2)**
10:19;77:24
**HON (1)**
8:22
**Honor (146)**
20:15;21:8;22:1,10,
12,21;26:5,9;29:10;
31:2,5,9;32:22;33:10;
34:12,15;35:4;36:10,
24;37:9,15,25;40:22;
41:1,7,8,13,22;42:1,
11,14;43:12,22;44:18,
24;45:10,14,17;46:9,
22;47:21;48:1,10,18,
25;49:3,10,20;50:6;
54:24;55:6,14,16;
58:3,22;59:11,15,18,
21,25;60:16;61:17,
19;62:7,22;63:2;
64:10;65:10,14;
67:10;68:5,7,10,11,
25;69:11,22,25;
70:21;71:11,21;
72:11,17;73:4,21,24;
74:16;75:2,6;76:2,9;
77:8,25;78:11,15;
79:25;80:4,18;81:5,
16;82:15,20;83:14;
84:1,21,25;85:4,14,
15;86:2,6,20;87:14;
88:1,4,10,14;89:1,5,7,
18,24;90:15,21;91:4,
11;92:1,3,17,19;
93:13,18;94:15,17;
95:20;96:1,7;97:15;
99:23;100:2,17,20;
101:3,7,8,9
**Honor's (5)**
23:13;33:5;55:9;
69:14;97:16
**hope (2)**
63:20;67:4
**hopefully (3)**
66:19;79:16;81:23
**hopes (1)**
81:19
**hoping (1)**
24:19
**hour (1)**
59:3
**housekeeping (2)**
96:11;97:10
**Howard (15)**
20:18;90:1;91:14,

23;92:1,2;93:5,7,13,
18;94:15,17;95:20;
96:1;101:9

## I

**idea (1)**
66:1
**identical (1)**
31:13
**identifying (2)**
57:21;61:2
**identity (1)**
61:3
**ill (2)**
65:21;66:2
**immediate (1)**
96:20
**impaired (1)**
67:5
**Imperial (6)**
13:8;92:6,10,13;
94:13;95:14
**implementing (1)**
24:18
**importance (1)**
49:23
**important (1)**
42:3
**importantly (1)**
58:17
**impose (4)**
24:23;25:2;51:19;
63:16
**imposed (1)**
27:9
**impossible (1)**
51:19
**inappropriate (1)**
35:15
**INC (6)**
8:7;11:4;13:4,11;
80:3;90:2
**incantations (1)**
56:19
**incentivize (1)**
35:13
**inclined (1)**
85:15
**include (4)**
21:2,4;27:9;65:23
**included (2)**
41:3;56:13
**includes (1)**
38:19
**including (12)**
23:17;36:8;37:2;
40:20;47:4,18;54:10;
55:4;61:24;73:14;
90:11;96:20
**incoming (1)**
32:6
**inconvenience (1)**

99:10
**incur (1)**
63:10
**indeed (1)**
93:11
**indicate (1)**
41:2
**indicated (4)**
38:25;39:24;41:24;
93:24
**indicating (1)**
94:2
**indirect (5)**
42:20,23;43:18,21;
45:4
**individual (5)**
74:3,4;75:11,21;
79:8
**INDIVIDUALLY (22)**
8:3;9:3,8,13,18,23;
10:3,8,13,18,23;11:3,
8,13,18,23;12:3,8,13,
18,23;13:3
**induced (1)**
77:2
**inefficient (2)**
39:14,17
**info (1)**
75:20
**inform (2)**
65:22;66:17
**informal (1)**
75:15
**informally (2)**
27:11;79:14
**information (9)**
22:15,18;28:15;
29:12,23;30:22;39:9;
47:5;61:2
**informed (2)**
38:6;85:13
**initial (9)**
23:14;24:7;36:6;
43:25;50:12;54:8;
55:1;64:4;68:17
**inquest (1)**
76:25
**inserting (1)**
24:23
**insolvency (3)**
23:20,25;47:11
**instead (1)**
45:16
**institution (2)**
20:12;74:12
**instructed (1)**
32:23
**instructions (2)**
38:16,22
**intend (5)**
34:18;35:14;47:2,2;
63:16
**intended (2)**

41:25;49:2

**intends (1)**
66:12
**intensive (1)**
38:19
**intention (2)**
35:9;66:8
**intentional (1)**
55:23
**intentions (2)**
41:11,12
**interest (2)**
20:11;82:8
**interested (1)**
26:18;48:21
**INTERIM (22)**
8:4;9:3,8,13,18,23;
10:3,8,13,18,23;11:3,
8,13,18,23;12:3,8,13,
18,23;13:3
**internally (2)**
46:11;91:6
**interpret (1)**
27:22
**interrogatories (6)**
24:24;33:15;46:14;
52:21;53:2,8
**interrupt (1)**
64:21
**interrupts (1)**
36:16
**intervals (2)**
41:5;55:7
**into (14)**
29:17;33:25;34:22;
41:1,13,25;45:7,24;
63:19;73:19;89:8,10;
96:19;98:11
**invoking (1)**
72:8
**involve (3)**
23:19;29:11;70:14
**involving (1)**
22:14
**IRS (4)**
27:1;29:5;56:19;
57:13
**issue (9)**
29:10;43:5;44:21;
46:21;48:19;65:18;
72:8;82:6;100:5
**issued (9)**
43:9;73:9;74:18;
76:12;78:3;80:6;
82:23;83:16;86:9
**issues (11)**
30:16;34:7;42:6,7,
7;48:8;51:13;69:2;
77:1;91:25;100:11
**item (4)**
37:15;93:14,14;
97:16
**items (2)**

27:4;32:25
**Ives (1)**
19:11

**J**

**January (1)**
47:23
**Jared (7)**
20:16;21:8;22:11;
28:16;61:19;70:5;
96:8
**Jelic (4)**
12:9;18:12;86:5,18
**J-E-L-I-C (1)**
86:5
**Jerusalem (1)**
18:22
**job (1)**
40:7
**John (3)**
15:12;63:4;88:15
**join (1)**
56:7
**joined (1)**
40:24
**JONES (2)**
8:22;20:2
**JOSEPH (2)**
18:25;89:1
**JPay (6)**
52:22,25;53:1,18;
57:7;58:15
**JUDGE (7)**
8:23;20:2;43:6;
44:12;60:4,7;82:10
**judges (1)**
91:9
**judgment (14)**
36:14;39:1,15,16;
41:20,21;42:9;43:1;
48:3;51:25;56:5;
77:15;88:7;99:7
**July (21)**
25:17,20,22;26:1,6;
49:9;62:9;67:21;
69:13,17;71:17;
72:12;73:22;84:17;
85:15,24;86:16;
88:23;93:10,10,10
**jump (1)**
44:17
**June (16)**
23:15;36:6;54:9;
55:2;85:11;88:21;
90:23;92:21;93:4,11;
94:7;95:7,18;97:16,
18;98:7
**JURELLER (1)**
17:11
**jurisprudence (2)**
43:14;44:3
**justified (1)**

39:14

**K**

**keep (14)**
25:5;32:6;35:9;
65:5;66:20;68:3;74:8;
77:5;78:25;82:13;
84:19,23;93:7;100:1
**keyed (1)**
38:24
**kick (2)**
64:7;73:19
**kind (5)**
33:3;51:18;55:22;
58:6;79:3
**KING (2)**
17:19;71:22
**KLESTADT (1)**
17:11
**knowledge (2)**
41:3;75:6
**known (1)**
61:3
**knows (1)**
32:17
**Kossoff (106)**
9:19;16:3,4;20:5,9,
24,25;21:6,9,11,22,
25;22:6,18;23:1;24:2,
12;25:7,10,11,15,20,
22;26:2,4,9,16,21,24;
27:3,6,7,16,18,24;
28:2,6,8,11;29:9;
30:11,13,16;31:13,18,
23;32:5,7,11,13;33:9,
10,12;34:4;35:22,24,
25;36:3,5,9,24;37:18;
38:21;41:3;42:22,23;
44:14;45:7;46:12;
47:2;50:21;52:10,15,
17,18;53:8,10,11,13;
54:7,12,16,17;55:16,
18,19,20;57:3,4,5,8,
18;58:3,22,24;59:1,5,
9,12,15,18;60:7;
62:14;70:9,12;90:3
**Kossoff's (11)**
22:23;29:1;30:10;
37:20;38:17;46:17;
47:3;52:9;53:25;
90:22;96:20
**KRAMER (3)**
15:2,8;40:25
**KRAUSE (2)**
17:2;31:10
**KRINSKY (1)**
18:11

**L**

**labeling (1)**
32:13

**labor (1)**
33:7
**lack (2)**
44:14;92:13
**LAMONICA (2)**
18:20;89:2
**language (2)**
64:15,21
**last (15)**
22:12;28:5;31:13;
34:12;41:24;44:21;
71:12;89:24;91:12;
94:1;96:13;99:12,15,
15,21
**late (2)**
69:13;84:7
**later (5)**
54:14;55:9;66:17;
73:17;86:9
**latest (2)**
34:19;62:2
**law (4)**
31:10;41:19;43:8,
13
**lawyers (1)**
67:23
**Le (1)**
21:20
**lead (2)**
24:7;91:24
**leading (1)**
20:14
**lease (3)**
37:19;43:16,20
**leash (1)**
93:8
**least (6)**
22:24;23:20;47:12;
53:14;63:20;68:17
**leave (4)**
35:5;66:9;92:22;
95:7
**leaving (1)**
24:15
**led (1)**
46:3
**Lee (1)**
61:25
**leeway (1)**
51:22
**legal (3)**
30:25;32:19;81:20
**leisurely (2)**
51:17,17
**length (1)**
62:18
**less (10)**
37:19;73:8;78:2;
81:6;82:22;83:15;
84:3;86:7;87:16;
88:16
**letter (14)**
26:10,21,24;27:20,

23;28:6,10,19;30:20;
31:24;73:13;90:9;
92:22;95:8
**level (1)**
97:12
**LEVY (28)**
16:19;40:22,22;
42:11;44:18,23;45:6,
10,13,17;46:6,9;
47:16,18,20;48:1,18;
49:10;50:24;51:16;
54:23,24;55:6,14;
59:21,23,25;60:4
**liability (2)**
44:1;56:12
**lie (1)**
44:5
**lieu (1)**
28:7
**lifestyle (1)**
52:2
**likelihood (1)**
40:13
**likely (4)**
23:25;62:8;69:2;
73:20
**limitations (4)**
23:3;29:13;56:23;
97:4
**limited (3)**
48:19;52:22;66:4
**Lincoln (1)**
17:21
**line (11)**
20:9;24:18;32:18;
40:25;50:3;51:7,24;
59:2;68:18;70:13;
95:17
**lines (2)**
38:11;39:13
**list (1)**
60:15
**listen (2)**
51:15;86:1
**litigated (1)**
48:23
**litigating (1)**
49:23
**litigation (1)**
35:11
**little (10)**
22:3;32:10;33:1,3;
50:3,8;51:5;53:16;
82:6;88:9
**LLC (17)**
9:4;9:10:19,24;
11:14,19;13:8,14,21;
16:13;21:5;31:11;
62:15;78:16;82:19,
21;83:13
**LLP (9)**
15:11;16:12;17:2,
11;18:11,20;19:2,10;

63:3

**loan (1)**
31:16

**loans (1)**
31:16

**Local (1)**
85:11

**lock (2)**
52:7,13

**locked (1)**
54:16

**lockstep (1)**
79:3

**logistics (1)**
33:22

**long (4)**
30:20;31:19;41:9;
60:15

**look (9)**
27:7;30:9;33:1;
39:22;46:7;47:13;
54:1,14;59:6

**looked (3)**
26:1;46:1;56:18

**looking (3)**
21:1;47:21;76:22

**looks (1)**
64:9

**loop (1)**
47:14

**losing (1)**
50:20

**lost (1)**
30:24

**lot (8)**
25:25;41:17;53:24;
54:1;67:1,22;77:20;
81:20

**loud (1)**
94:11

**loudly (1)**
22:3

**love (1)**
72:2

**luck (1)**
59:14

**Lula (1)**
86:24

**Lumbard (2)**
88:15,16

**LYON (1)**
19:16

## M

**Madison (1)**
15:4

**magic (1)**
71:5

**mail (4)**
30:24,25;32:6,19

**mailbox (1)**
75:7

**mailed (2)**
31:13,20

**main (3)**
20:4;93:16;95:23

**makes (8)**
20:21;53:5,14;
61:15;66:23;67:1,20;
68:15

**making (6)**
30:20;36:11;75:15;
79:7;89:21;95:17

**manageable (1)**
34:8

**managed (1)**
94:22

**Management (23)**
15:3;16:14;34:16,
22;37:17;38:14,23;
39:20;40:24;41:2;
42:4;46:20;48:8,19;
50:23;51:2;53:24;
55:9;62:8,21,23;65:8;
79:21

**managing (2)**
77:20;81:25

**MANISCALCO (9)**
18:20,25;89:1,2,2,4,
7,15,17

**manner (2)**
28:24;46:10

**many (5)**
56:18;57:13,13;
78:25;98:6

**March (4)**
26:11;73:6;74:16;
76:9

**marching (1)**
91:18

**margin (1)**
32:10

**MARKOWITZ (1)**
18:17

**materials (2)**
47:1;49:25

**mathematics (1)**
42:20

**matter (27)**
21:2,18;24:20;
34:10;37:1,8;38:8;
41:8,10;43:8;44:10;
48:23;49:1,3;50:1;
66:15;70:2;74:5;
81:11;86:3,15;92:23,
24;93:17;94:6;95:8;
99:12

**matters (14)**
20:10,19,24;21:4;
58:14;59:13;90:1;
91:14,24;92:4;95:24;
96:12;97:10,18

**matter's (1)**
60:2

**maximize (1)**

51:12

**May (57)**
8:16;23:24;25:7;
30:6;31:2;37:3;38:9,
13,15,24,24;40:11;
42:1,5;46:19;47:3;
48:1;49:5,5,22;53:19,
19,20,21;55:10;
56:11;57:12;59:21;
60:11;64:11;72:20;
73:9;74:7,8,19;75:22;
76:13;78:4,18;80:6;
81:7;82:24;83:17;
84:5;85:10;86:10;
87:2,18,23;88:9;90:4,
24;93:23;95:23;98:3;
99:16;100:1

**maybe (10)**
21:6,12;35:20;
49:14;59:7;67:21;
75:11,16;92:20;96:4

**MCGRAIL (2)**
15:11;63:3

**mean (14)**
26:17;33:2,12;
34:23;36:13;44:20;
47:25;49:7;51:17;
55:22;56:10;63:21;
73:16;93:15

**meaning (1)**
20:24

**meaningfully (1)**
66:14

**means (3)**
66:4;67:24;75:1

**meantime (3)**
66:24;81:23;84:20

**mediation (7)**
38:2,4,8;39:3,5;
41:15;45:25

**medical (1)**
66:10

**meet (1)**
50:10

**meeting (2)**
40:3,4

**members (3)**
47:3;70:15;96:20

**memorialize (1)**
74:10

**memorializing (1)**
84:10

**mention (2)**
57:7;90:22

**mentioned (2)**
37:15;96:10

**mere (1)**
63:25

**mess (2)**
30:1;45:8

**met (2)**
73:17;93:11

**MICHAEL (5)**

15:2,8;17:12;18:8;
40:25

**mid-June (2)**
49:1,12

**mid-September (1)**
96:25

**might (10)**
33:23;40:14,15,17;
49:8;51:18;56:6;
68:17;75:23;96:23

**million (3)**
42:15;77:1;96:16

**millions (1)**
97:5

**mind (5)**
25:5;35:13;46:23;
77:6;99:7

**mindful (1)**
69:20;70:19;71:25

**minds (2)**
40:3,4

**mine (1)**
60:2

**minimum (1)**
47:14

**Minta (4)**
20:15;37:13;49:18;
60:16

**Mintz (1)**
61:24

**minute (1)**
39:22

**misheard (1)**
25:21

**mispronunciation (1)**
86:25

**missed (1)**
98:3

**missing (1)**
56:20

**Mitchell (1)**
20:24

**modifiable (1)**
64:24

**modified (1)**
64:16

**moment (2)**
41:22;66:18

**monetary (1)**
43:4

**money (8)**
44:6,8;45:4;57:10;
67:25;81:20;87:25;
88:6

**monies (1)**
42:18

**month (1)**
63:20

**months (4)**
45:18;51:20,21;
97:7

**more (11)**
24:23;27:17,25;

28:7;33:11;48:15,21;
49:5,5;51:18;69:21

**MORGAN (2)**
19:7;100:9

**morning (10)**
20:2;22:10;40:22;
63:2;89:1,5;91:12;
94:2,4;96:7

**Most (5)**
37:20;45:18;58:17;
73:20;96:20

**mostly (1)**
20:3

**motion (50)**
25:16;26:5,8;36:11,
12;39:16;40:13;
41:21;42:1,8,9;43:1;
44:20,22;45:14,15,23;
46:4;47:18,19;48:2,3,
9,14,14;49:1,12,22;
50:14;51:1,3;56:7,8,
14;57:11,16,17,19;
58:1,12,20;61:25;
73:17;75:17,18;76:1;
85:7,9,23;100:13

**motion- (1)**
44:20

**motions (5)**
36:14;39:4,15;
41:20;60:19

**move (21)**
20:13;22:21;38:5;
39:1;40:9,11;41:6;
48:13;49:21;50:10,
14;51:23;62:19;
63:22;74:24;77:17;
78:7,14;87:6;97:10;
99:3

**moving (6)**
41:14,25;49:24;
79:2;82:13;86:1

**much (12)**
22:2,7;46:1;49:5;
55:12;64:1;70:22;
77:4;87:24;89:17;
92:1;93:13

**multiple (1)**
84:11

**mute (2)**
80:21;93:2

**muted (3)**
20:14;96:6;98:14

**myself (1)**
93:2

## N

**name (3)**
31:7;32:19;61:2

**names (1)**
21:2

**narrowed (1)**
52:1

**narrowing (2)**
42:5;51:13

**National (3)**
17:3;21:18;31:11

**near (1)**
100:2

**nearly (1)**
96:15

**necessary (4)**
38:5;39:6;57:24;
69:21

**necessitate (1)**
56:21

**need (16)**
20:7;33:24,25;34:3;
39:10;46:7;49:25;
51:22;52:6;58:23;
59:17;63:22;66:6;
70:25;71:5;74:3

**needed (1)**
101:2

**needing (1)**
76:25

**needs (5)**
20:13;24:16;31:1;
52:9;58:19

**negative (1)**
67:17

**negotiate (1)**
81:23

**negotiations (1)**
68:19

**neither (2)**
52:23;77:9

**nervous (1)**
76:24

**Nester (76)**
20:14,15,15,21;
21:19;37:13,13,23,25;
39:23;40:7;42:15;
49:18,18;50:6,8;
59:11;60:16,16;
61:13,17;72:20;73:1,
4,4,21,24;74:5,16;
75:2,4,6,24;76:2,5,9,
21;77:8,11,25;78:11,
15;79:12,25;80:4,18;
81:4,5,13,15,18;
82:20;83:10,14;84:1,
21,25;85:4,14;86:2,6,
20,23;87:9,14;88:1,4,
10,14;89:24;90:15,
21;91:4,11,19;101:7

**Nester's (1)**
41:7

**net (1)**
99:17

**Nevertheless (1)**
72:6

**New (13)**
8:14,14;9:4;15:6,
15;16:16;17:6,14;
18:6,15;19:14;21:5;

**31:11**

**newer (1)**
60:22

**news (1)**
59:12

**next (23)**
37:15;60:6,10;62:1;
70:4,7,7;71:3,9;73:2;
74:5;75:19;76:8;
77:10;82:18;83:12;
86:4,22;88:12;89:22;
93:14,14;97:15

**nice (6)**
40:7;60:8;81:1;
89:6,7;91:23

**nobody's (1)**
67:17

**Nohavicka (1)**
65:15

**noise (1)**
80:21

**none (1)**
61:7

**nonengagement (1)**
79:16

**nor (2)**
52:23;77:9

**normal (2)**
32:9;49:8

**North (1)**
13:22

**notation (1)**
95:22

**note (3)**
38:19;66:21;81:15

**noted (1)**
94:17

**notes (2)**
61:7;66:20

**notice (14)**
35:20;69:15;70:23,
24;73:25,25;78:23;
79:19,20,24;89:8;
94:11;95:10;97:22

**noticed (1)**
97:17

**notices (1)**
97:13

**noticing (1)**
74:2

**notify (1)**
79:14

**Notwithstanding (1)**
34:14

**number (49)**
20:5;32:20;37:5,16;
38:2,3,12,17,18;
41:21;42:14,19;43:6;
45:17;61:3;65:12;
70:8;73:9,11;74:5,19,
21;76:12,14;78:3,5,
19;80:2,6,8;81:8;
82:24;83:1,16,18;

**84:4,6;86:9,11;87:1,3,**
17,19;88:17,19,21;
89:22;90:4;96:19

**numbers (5)**
21:6;48:19;85:8;
90:6;92:11

**numerosity (1)**
69:5

**numerous (1)**
63:11

**NW (3)**
19:4

**NY (11)**
15:6,15;16:7,16;
17:6,14,23;18:6,15,
23;19:14

**Nyeba (2)**
74:6,17

## O

**object (1)**
28:19

**obliged (1)**
27:13

**obtain (2)**
39:9;95:5

**obviously (5)**
41:5;42:1;48:21;
49:14;81:19

**occasional (1)**
61:7

**October (6)**
23:16;36:7;48:12;
54:9;55:3,3

**off (21)**
21:1;22:24;23:2,7,
13;25:23;28:24;35:5;
37:10;38:24;46:9;
50:18;51:7;57:16;
59:2;61:16;72:13,24;
92:23;95:8;98:16

**Old (2)**
16:5;51:20

**Once (1)**
60:2

**One (40)**
8:13;17:21;24:6;
25:11;27:17;28:5,8,
24;29:10;30:11;31:6;
33:11;34:12;42:14;
44:19;45:1,18;55:18;
56:14;64:11;70:16,
25;71:3;79:3,21;
80:13,15;81:19;82:7;
83:8;85:1;86:22;
87:24;88:12;89:25;
90:20;95:6,7,18;
100:23

**one's (2)**
87:11;95:13

**ongoing (5)**
31:15;34:13,17;

**99:25;101:5**

**online (2)**
27:1,1

**only (8)**
29:14;52:19;56:24;
59:2;71:6;77:4;82:12;
95:23

**onto (5)**
73:1;83:25;85:3;
87:13;98:7

**open (3)**
20:8;24:22;25:1

operations@escribersnet (1)
13:25

**opinion (1)**
40:8

**opportunity (3)**
64:5;68:23;79:20

**opposed (2)**
38:2;48:23

**opposing (1)**
61:3

**opposite (1)**
75:11

**order (64)**
13:7,9,10,11,13,15;
22:21,22;23:3,8;
24:21;26:4;34:3,5,6,
16,22;35:20;36:23;
37:2;38:12,14,14,23;
39:20;48:4;51:8;54:6;
55:9,23;58:16;62:21;
63:5;64:12,14,19,23;
65:20,23;66:6;67:19;
68:12;70:17;71:19;
73:1;74:14;78:23;
79:15;81:10;82:5;
92:6,8,9;93:19,20;
94:4,8,18,19,20;95:3;
100:16,19,24

**ordered (1)**
36:10

**orders (2)**
62:23;94:18

**others (3)**
44:20;46:8;60:11

**otherwise (7)**
31:24;43:15;66:25;
79:23;82:9;86:14;
89:11

**ought (1)**
50:19

**out (30)**
20:4;26:10,25;
29:21;30:3;32:6;
33:14;34:18;39:25;
44:10,15;46:8,14;
47:6;48:6;51:12,24;
56:6;71:17,18;77:20;
84:19;90:16,17;94:9,
10;95:6;96:24;99:1,6

**outreach (1)**
74:14

**outset (1)**
46:12

**over (9)**
35:4;57:14;58:1;
63:20;90:1;91:13;
96:16;98:24;99:22

**overlap (1)**
44:13

**overload (1)**
48:20

**overview (1)**
41:7

**own (5)**
40:7,10;53:16;
56:12;99:6

## P

**page (1)**
38:11

**pages (1)**
29:16

**paid (1)**
42:18

**Pamela (2)**
16:3;90:3

**pandemic (1)**
66:5

**Pardalis (1)**
65:15

**Pardon (1)**
36:3

**pari (1)**
43:15

**part (4)**
48:5;51:9;66:1;
98:8

**partial (1)**
42:8

**particular (2)**
41:4;46:19

**particularity (1)**
25:1

**particularly (3)**
48:12;51:13;82:6

**parties (26)**
23:2,24;34:22;
35:18,20;38:13;39:6,
19;41:8;47:3;48:7;
49:3;50:22;54:5;55:8,
24;58:11;59:16;
60:5;62:17,20;72:7;
88:20;96:19,21;
100:19

**Partners (3)**
11:19;83:13,22

**party (8)**
33:15;36:18;44:5,9;
56:1;59:9;61:8;91:20

**party's (3)**
36:19;64:15;65:1

**pass (2)**
21:19;72:20

**passage (1)**
52:5
**passed (2)**
51:21;62:18
**passive (1)**
63:25
**past (2)**
25:19;29:1
**pave (1)**
66:23
**payment (2)**
43:10;45:4
**payments (1)**
44:15
**PC (2)**
16:2;18:2
**penciled (1)**
47:21
**Penna (3)**
11:24;84:2,24
**P-E-N-N-A (1)**
84:24
**people (19)**
24:15,22;27:10;
35:9,10,13;40:11;
48:20;51:19;53:21;
61:10;67:22;68:1;
72:24;77:2,7;91:9;
95:17;99:10
**percent (2)**
43:3,4
**Perevoski (4)**
9:14;21:6;60:11;
61:24
**perfect (1)**
89:13
**Perhaps (3)**
64:11,15;75:7
**period (1)**
49:13
**permission (1)**
60:2
**permit (1)**
55:10
**permitting (1)**
95:7
**person (3)**
33:24;75:15,21
**personal (1)**
37:20
**persons (1)**
43:23
**persuaded (1)**
50:24
**Peter (1)**
62:15
**phase (2)**
41:9,25
**Phoenix (1)**
13:23
**phone (2)**
53:13;72:24
**Phyllis (5)**

16:4;22:18,23;
62:14;70:9
**physically (1)**
44:8
**pick (2)**
54:19;98:10
**picturing (1)**
23:8
**piecemeal (1)**
30:21
**pinging (1)**
84:19
**place (11)**
36:21;52:4;58:18;
64:1;65:6;66:7,25;
81:22;82:5,9;85:18
**placeholder (1)**
68:13
**Plaintiff (1)**
8:5
**plan (12)**
73:12;74:24;75:10;
76:17;78:7;80:10;
83:4,20;84:14;87:6,
22;90:8
**planned (1)**
88:2
**play (1)**
71:18
**played (1)**
20:25
**pleadings (11)**
39:1,16;41:21;42:9;
43:2;48:4;51:1;56:5,
6,22,23
**please (8)**
22:8;23:11;51:24;
54:24;61:8;74:1,4;
75:22
**PLLC (5)**
17:19;19:11;20:5;
21:9;45:7
**podium (1)**
100:6
**point (22)**
26:18;29:22;34:12;
35:4;36:11,16;41:13;
42:2,13;45:13,21;
47:7;49:5;55:13;
57:24;58:5,17;59:22;
64:9;66:4;85:13;
92:17
**pointed (1)**
56:6
**pointless (1)**
57:10
**portal (1)**
23:14
**pose (1)**
48:18
**position (3)**
45:11,20;71:14
**possibilities (1)**

47:6
**possibility (2)**
48:5;76:25
**possible (9)**
36:12;53:17;60:12;
66:8,8,18;72:4;79:1;
98:7
**possibly (2)**
46:24;100:23
**potential (2)**
45:14;65:19
**potentially (2)**
29:15;42:6
**power (1)**
40:11
**practice (6)**
47:18,19;48:3;56:8,
14;60:1
**pre- (1)**
85:14
**precluded (2)**
57:18;58:13
**precludes (1)**
36:10
**precluding (1)**
57:17
**predicate (1)**
56:19
**preemptively (1)**
52:13
**prefer (1)**
78:20
**preference (8)**
36:14;74:18;76:11;
78:17;79:7;80:5;85:6;
87:1
**preferences (8)**
73:8;78:2;81:7;
82:23;83:16;84:4;
86:8;87:16
**preferred (1)**
84:13
**prefers (1)**
86:14
**prejudice (1)**
36:18
**prejudiced (1)**
58:10
**preliminary (1)**
41:2
**premature (2)**
36:15;38:4
**prepare (1)**
100:19
**prepared (8)**
47:5;48:25;49:11,
12;54:3;77:11;79:21,
23
**preparing (1)**
45:20
**present (2)**
33:18;88:24
**presentations (1)**

96:2
**presentment (1)**
78:23
**preserve (1)**
28:21
**pressure (1)**
96:22
**Pre-trial (26)**
9:10,15,20,25;10:5,
10,15,20,25;11:5,10,
15,20,25;12:5,10,15,
20,25;13:5;71:17;
72:18;79:18;84:16;
85:24;88:23
**pretty (6)**
34:9;50:19;55:12;
58:6;77:14,16
**previewed (1)**
99:21
**previous (2)**
76:18;81:8
**previously (5)**
22:22;24:14;30:22;
31:14;70:14
**price (1)**
51:22
**primarily (1)**
36:20
**principled (1)**
40:10
**print (2)**
29:14;30:1
**printout (1)**
21:1
**prior (4)**
28:14;38:14;54:8;
78:10
**prison (1)**
33:17
**probably (8)**
26:25;34:4;53:3;
56:21;64:21;67:20;
68:17;88:8
**problem (6)**
21:25;29:6;52:19;
60:1;81:3;99:11
**problems (1)**
68:23
**Proc (1)**
8:5
**procedure (2)**
21:24;72:7
**proceed (14)**
30:19;37:7;41:13;
46:4;48:3;60:14;
68:11;75:19,25;
76:17;80:11;83:8,20,
23
**proceeding (34)**
9:2,7,12,17,22;10:2,
7,12,17,22;11:2,7,12,
17,22;12:2,7,12,17,
22;13:2;37:16;56:1;

61:20;62:18;63:4;
70:11,16;71:9;76:3,
18;78:1;89:22;99:24
**proceedings (14)**
20:4,18;42:4;56:17;
60:20,22;72:24;
84:10;96:15,22;97:3,
9,23;101:10
**proceeds (1)**
99:17
**process (11)**
20:7;24:17;42:11;
45:20,24;46:22;48:9;
64:6;71:18,18;82:3
**produce (3)**
29:12;31:25;93:25
**produced (1)**
31:14;33:17;34:4
**productive (2)**
24:22;38:5
**progress (1)**
89:21
**prolong (1)**
49:2
**prompt (1)**
38:11
**prompted (1)**
46:25
**promptly (1)**
48:14
**proof (2)**
29:5;64:14
**properly (1)**
21:3
**proposal (1)**
63:1
**propose (6)**
38:13;48:4;50:4;
60:18;78:22;81:9
**proposed (16)**
34:6;35:18,19;
38:23;39:23;50:9;
51:8;54:6,18;62:22;
67:19;78:22;79:15;
81:10;100:16,19
**proposing (4)**
22:20;62:20;68:12;
70:16
**propound (2)**
46:23;53:8
**prospects (1)**
51:13
**protected (1)**
79:8
**prove (1)**
73:18
**provide (8)**
30:6;34:1;61:1,8,9;
71:13;91:21;96:10
**provided (4)**
32:24;61:6;63:21;
73:15
**PRYOR (2)**

16:12;40:23
**purchase (1)**
  99:19
**purpose (1)**
  58:7
**purposeful (1)**
  55:22
**purposes (4)**
  23:20;28:25;62:8;
  99:7
**pursue (2)**
  83:4;92:24
**push (4)**
  51:12;69:12;85:25;
  95:18
**pushback (1)**
  48:11
**pushed (1)**
  63:19
**put (19)**
  30:25;33:7;35:10;
  45:24;47:21;52:4;
  56:15;65:19;66:24;
  67:21;68:12;69:14,
  16;73:22;75:16;
  77:12,17;80:21;85:18
**putting (2)**
  36:20;62:8

## Q

**quick (2)**
  36:9;69:18
**quickly (8)**
  27:15;35:10;46:19;
  59:8;64:6;77:12,14,
  18
**quite (2)**
  66:7,8
**quoting (1)**
  40:7

## R

**radar (1)**
  100:1
**raise (7)**
  29:10;34:11;52:8;
  57:22;68:23;69:18;
  91:25
**raised (2)**
  29:9;30:16
**raising (2)**
  30:17;53:12
**rate (1)**
  98:5
**rather (4)**
  28:24;39:8;65:23;
  91:9
**re (3)**
  13:7,10,13
**reach (5)**
  22:19;24:15;35:11;

63:21;99:1
**reached (2)**
  61:23;85:17
**reaches (1)**
  43:18
**reaching (2)**
  34:18;84:19
**reaction (1)**
  57:10
**readily (1)**
  58:2
**reading (2)**
  21:3;81:15
**ready (4)**
  36:2,2;37:7;80:21
**realize (1)**
  100:15
**really (4)**
  26:17;33:13;36:19;
  50:21
**Realty (4)**
  10:24;62:15;78:16;
  79:9
**reargument (2)**
  25:16;26:5
**reason (4)**
  57:23;67:25;82:12;
  98:17
**reasonable (2)**
  24:15;35:12
**reasonably (1)**
  38:11
**reasons (4)**
  24:6;39:2,18;45:17
**recall (1)**
  37:25
**receive (1)**
  63:5
**received (14)**
  26:14;31:18;32:16;
  44:5,8,8;55:24;76:15;
  83:2;87:4;90:7;92:12;
  93:23;95:4
**receiving (1)**
  31:19
**recently (2)**
  37:20,25
**receptive (1)**
  51:18
**recognize (2)**
  41:23;50:20
**record (9)**
  28:17;33:19;35:21;
  53:13;58:9;65:19;
  66:7;72:6;96:8
**recorded (1)**
  88:21
**recover (1)**
  96:16
**recoveries (1)**
  97:5
**reduce (1)**
  48:7

**refer (2)**
  37:3;38:8
**reference (2)**
  38:13;85:7
**referenced (2)**
  38:10;50:3
**referencing (1)**
  35:20
**regard (1)**
  79:20
**regarding (1)**
  94:18
**regards (1)**
  50:11
**regrettably (1)**
  41:10
**reiterate (1)**
  91:19
**relate (3)**
  43:17;97:22,23
**related (3)**
  38:20;92:3;97:3
**relates (1)**
  97:24
**relating (1)**
  63:10
**relatively (1)**
  77:12
**relax (1)**
  64:22
**relevant (2)**
  41:19;42:3
**remainder (1)**
  20:13
**remaining (2)**
  62:13,14
**remind (3)**
  33:16;42:14;55:25
**reminding (1)**
  94:24
**re-mute (1)**
  81:3
**render (1)**
  44:15
**reorder (1)**
  30:13
**repeat (3)**
  52:16;54:24;78:9
**repeated (1)**
  26:12
**repeatedly (1)**
  48:23
**replied (1)**
  27:14
**reply (1)**
  49:15
**report (3)**
  61:22;68:2;96:13
**represent (2)**
  63:3;65:15
**request (14)**
  27:22;28:14,20;
  35:5;36:11,19;38:1,3,

7;39:18;84:16;88:22;
  94:6;98:11
**requested (2)**
  30:22;100:16
**requesting (2)**
  29:11;92:23
**requests (15)**
  24:24;27:10,13,20,
  25;28:6,7,10,19,25;
  29:1;30:20;46:13,15,
  24
**require (2)**
  33:13;53:18
**required (4)**
  42:6;94:3;95:2,10
**requirement (1)**
  65:5
**requiring (2)**
  40:16;54:2
**research (1)**
  46:3
**resend (2)**
  30:25;32:11
**resent (1)**
  33:7
**reserve (2)**
  40:15;47:11
**reserving (1)**
  73:14
**residence (1)**
  37:20
**resolution (8)**
  22:19;24:16;36:17;
  39:17;49:24;63:21;
  67:5;69:10
**resolutions (1)**
  77:6
**resolve (6)**
  34:21,21;41:10;
  43:3;89:11,11
**resolved (3)**
  35:3;99:23;100:14
**resolves (4)**
  36:25;43:20;77:21;
  81:20
**resolving (1)**
  48:22
**resources (2)**
  45:19;48:22
**respect (9)**
  29:1;56:4,14,15;
  62:25;64:3;70:15;
  93:19;97:8
**respectfully (3)**
  39:18;84:16;88:22
**respond (4)**
  28:20;40:16;52:21;
  55:25
**responding (1)**
  53:2
**response (10)**
  35:8;38:25;49:13;
  61:4;73:13;85:10;

90:10;92:12,13;94:25
**responses (7)**
  24:25;46:24;49:20;
  94:3;95:1,5,5
**responsive (2)**
  28:22;93:25
**resubmit (2)**
  90:25;91:10
**results (1)**
  51:23
**retaining (1)**
  47:9
**reticence (1)**
  40:10
**reticent (1)**
  53:22
**retransmit (1)**
  91:5
**returned (1)**
  32:21
**reviewing (3)**
  41:18;93:24;97:17
**revised (1)**
  100:19
**RICHARD (2)**
  16:19;40:22
**RICHMOND (2)**
  16:18;40:25
**right (53)**
  21:7,16;23:22;24:8,
  18;26:9;28:1,19;
  29:23;34:25;36:13,
  19,25;37:5;40:15;
  42:1,12;45:7;47:11,
  13,15,24;50:17;54:3;
  55:11,15;57:5,21;
  58:24,24;59:8,14,19;
  63:16;69:24;72:15,
  22;73:15,16;75:9,10,
  18;76:8,20;82:11,16;
  84:18,22;89:16;
  90:11;91:3;98:10;
  100:21
**rights (3)**
  73:14;79:7;90:11
**ripe (1)**
  30:3
**risking (1)**
  45:8
**Road (2)**
  16:5;88:6
**roadmap (1)**
  36:20
**robust (1)**
  22:4
**Roc (5)**
  21:3;38:1,23;43:23;
  44:1
**Roc- (1)**
  21:19
**Roc/Hampton's (1)**
  38:18
**Roc-Le (14)**

9:9;16:13;21:5,13;
37:8,17;40:6,12,20,
23;50:22;52:23;53:1;
56:10
**role (4)**
20:25;24:2;72:18,
19
**rolling (2)**
59:24;60:1
**Ron (3)**
20:18;89:25;92:1
**Ronny (1)**
61:24
**roped (1)**
33:25
**Rosenblatt (3)**
10:14;76:10;77:22
**roughly (4)**
41:17;42:16;43:4;
47:20
**round (1)**
34:19;46:25;54:21
**Rule (19)**
13:8,11,14;36:12;
40:15;44:19,20,21;
56:25;85:11;90:1,16;
91:14;92:3,7;93:20;
94:8,20;95:2
**rules (1)**
27:13
**ruling (2)**
46:14;47:6
**run (1)**
48:10
**running (1)**
77:5

**S**

**sale (2)**
99:13,17
**salutations (1)**
22:1
**same (6)**
50:11;52:4;62:17,
22;67:5;79:1
**sandbagged (1)**
55:21
**SARA (2)**
17:25;71:21
**save (1)**
75:23
**saw (1)**
67:17
**saying (10)**
31:12;34:21;40:7;
45:4;55:6;64:2;66:25;
68:11;70:1;74:8
**scared (1)**
91:9
**schedule (30)**
24:10;27:8;33:2;
35:18;36:21;38:10;

40:9;47:21;48:2;
49:23;50:5,7,8,15;
51:6,8,10,25;52:11;
54:19;58:8,18;63:19;
64:1;78:24;79:1,21;
81:22;82:9;85:18
**scheduled (4)**
38:15;92:5,21;
97:18
**schedules (2)**
26:18;51:19
**Scheduling (22)**
9:5;22:20;23:8;
26:5;30:18;51:8;52:9;
54:6;58:14;62:21;
63:1,5;64:12,14,19;
68:12;69:1;70:17;
71:19;78:22;79:15;
81:10
**SCHOENECK (2)**
17:19;71:22
**scope (2)**
45:14;52:1
**SCOTT (2)**
17:16;18:17
**scrivener's (3)**
56:16;57:12,21
**scrubbed (1)**
45:25
**scrubbing (1)**
41:18
**sec (1)**
92:25
**second (6)**
26:24;46:25;48:2;
80:20;81:2;93:2
**Section (1)**
43:3
**security (1)**
53:21
**seeing (1)**
67:22
**seek (10)**
73:15;74:24;77:11;
78:8;84:14;86:14;
87:22;90:11;96:15;
97:5
**seeking (20)**
37:18;62:1;66:9;
73:7,13;74:17;76:10,
18;77:15;78:17;
80:11;82:22;84:2;
85:5;86:13,25;87:15;
88:16;90:3,9
**seeks (5)**
78:1;80:5;81:6;
83:15;86:7
**seem (1)**
57:20
**seems (2)**
47:14;58:1
**Segal (4)**
20:15,16;92:2,2

**SEGALLA (1)**
19:10
**send (7)**
23:2;29:2,5;73:12;
79:15;90:9,17
**sending (3)**
26:25;33:14;36:11
**sense (9)**
20:21;50:19;55:22;
61:15;66:23;67:1,20;
68:15;74:4
**sensitive (1)**
67:11
**sent (7)**
23:1;26:10;29:3;
32:15;38:22;63:11;
84:9
**sentence (2)**
30:14,15
**sentiments (1)**
39:11
**separate (4)**
26:2,4;57:16;74:9
**sequence (4)**
25:6;30:18;52:3;
54:7
**sequencing (1)**
61:14
**sequentially (1)**
70:7
**series (2)**
23:9;28:10
**serve (1)**
31:24
**served (7)**
28:24;36:6;55:2;
75:21;85:10;92:9,16
**service (17)**
24:24;61:4;73:10;
74:20;75:1,13;76:13;
78:4;80:7;82:25;
83:17;84:5;86:10;
87:3,18;88:18;90:15
**services (1)**
90:5
**set (13)**
23:9,14;26:2,4;
31:13;38:9;46:25;
50:15;54:15;58:7;
64:23;90:20;100:12
**SETH (1)**
17:8
**setting (7)**
26:18;47:19;58:7,
16;73:9;74:19;76:12
**settle (3)**
63:8,9,12
**settled (1)**
64:2
**settlement (10)**
31:15;45:19,24;
62:16,20,25;65:2;
70:13;71:12;96:21

**settlements (1)**
61:23
**seven (3)**
73:14;78:23;90:10
**several (4)**
45:17;18;61:23;
78:10
**severely (1)**
57:1
**shake (1)**
67:17
**shall (1)**
55:2
**Shamah (2)**
12:19;87:13
**S-H-A-M-A-H (1)**
87:13
**Shapiro (1)**
13:20
**share (2)**
61:12;67:2
**shared (1)**
82:7
**shareholder (1)**
82:2
**Sharona (1)**
13:20
**sheets (1)**
74:3
**Sherman (15)**
65:14,14,18;66:1,
14;67:1,10,12,14;
68:5,22;69:1,4,9,22
**shocked (1)**
66:22
**short (2)**
38:3;93:8
**shorter (2)**
50:3,9
**shortly (4)**
31:19;34:15,18;
100:20
**shorty (1)**
32:4
**show (5)**
32:8;33:5;67:24;
68:2;69:21
**sic (1)**
98:12
**side (1)**
65:6
**SIEGEL (10)**
18:2,2,8;80:23,24;
81:21,24;82:10,11,15
**sight (1)**
50:20
**sign (1)**
72:13
**signed (5)**
13:7,10,13;22:24;
23:2
**significant (1)**
63:22

**sign-in (1)**
20:7
**similar (7)**
39:2;65:18;71:14;
76:17;81:10;84:9;
90:8
**Similarly (1)**
22:17
**similarly-situated (1)**
83:5
**simple (1)**
81:22
**simply (3)**
36:20;57:21;100:12
**single (1)**
44:15
**situation (3)**
39:3;46:17;81:25
**situations (2)**
67:4;78:21
**six (3)**
51:20,21;56:23
**six-month (1)**
47:14
**sixty (1)**
96:15
**size (1)**
74:12
**slate (1)**
77:5
**slightly (1)**
51:11
**slipped (1)**
73:20
**smart (1)**
93:1
**software (1)**
53:21
**SOLELY (23)**
8:3;9:3,8,13,18,23;
10:3,8,13,18,23;11:3,
8,13,18,23;12:3,8,13,
18,23;13:3;70:12
**Solutions (5)**
13:8;92:7,10,14;
95:15
**somebody (1)**
99:6
**some-thousand (1)**
43:11
**sometime (1)**
94:4
**sometimes (1)**
35:12
**somewhat (4)**
48:18;51:16;52:21;
53:1
**son (1)**
72:3
**soon (4)**
33:5;62:7;77:16;
101:6
**sooner (3)**

52:2;62:11;73:17
**sophistication (1)**
74:13
**sorry (13)**
23:7;25:18,23;
28:16;35:23;37:21;
50:5;59:25;60:19;
76:22;80:22;87:10;
96:18
**sort (18)**
24:20;33:18;46:10;
51:2,16,21,25;52:4,
13;58:6;66:9,24;
75:14,20;77:1;79:5;
92:14,17
**sound (3)**
44:20;50:25;81:3
**sounds (16)**
30:21;33:4;50:25;
52:6;57:12;67:9;
73:16,19;75:10;
76:20;82:4;84:18,18,
22;89:13;90:13
**Source (1)**
13:14
**SOUTHARD (1)**
17:11
**sparse (1)**
24:21
**speak (11)**
22:3,3;27:16,18;
29:4;32:22;41:4;
80:22;89:10;91:14;
98:13
**speaking (1)**
67:18
**specific (6)**
25:12,14;26:7;
32:13;50:11;70:15
**specifically (2)**
98:15;100:12
**spectrum (1)**
75:12
**spend (1)**
67:24
**spent (3)**
41:9,17;45:18
**Spike (1)**
19:11
**spot (2)**
29:20;52:8
**spreadsheets (1)**
29:11
**Square (1)**
16:15
**St (1)**
18:3
**stage (1)**
38:4
**stake (1)**
42:16
**stand (2)**
26:20;85:25

**standard (6)**
23:8,14;33:22;
43:15;51:16;56:19
**start (6)**
21:18;22:21;28:3,5;
42:25;61:16
**started (1)**
49:11
**starting (1)**
53:15
**state (1)**
46:18
**stated (2)**
39:2,5
**statement (1)**
71:14
**statements (1)**
45:20
**States (2)**
8:12;64:13
**stating (1)**
33:19
**Status (30)**
13:6,7,10,13;28:14;
41:8;43:8;60:21;61:3,
7;67:21;68:2,13;69:7,
16,17;72:19;91:15;
92:5;93:19;94:18;
95:22;96:11;97:8;
98:18;99:13,16,21;
100:4,12
**statute (2)**
56:23,24
**step (2)**
48:1;75:19
**steps (3)**
50:12;51:15;77:10
**STEVENS (1)**
17:11
**stick (1)**
73:1
**still (5)**
34:16;63:22;96:6;
98:21;100:16
**stipulation (6)**
72:13;84:9;86:15;
89:8;90:23,25
**stole (1)**
64:21
**Street (8)**
11:4,9;13:22;17:13;
19:4;80:3,14,16
**strength (1)**
85:23
**strong (2)**
36:14;44:3
**structure (1)**
66:24
**structured (1)**
46:10
**subject (8)**
28:13,19;31:17;
63:7;64:23;79:7;

95:10;99:2
**submit (9)**
22:20;35:19;51:7;
78:22;79:17;81:9;
92:22;94:24;95:8
**submitted (6)**
90:24;91:20;94:23;
95:1;100:15,20
**submitting (3)**
79:15,22;94:3
**subpoena (12)**
13:9,12,15;92:3,7,
15,16;93:20;94:8,20,
25;95:2
**subsequent (1)**
43:2
**substantial (2)**
42:5;88:6
**substantially (1)**
62:22
**successful (4)**
22:17;56:10,11;
96:23
**suffering (1)**
66:2
**sufficiency (1)**
51:1
**suggest (2)**
48:9;57:15
**suggesting (1)**
34:20
**suggestion (3)**
26:10;54:5;65:22
**suggestions (2)**
20:8;53:5
**suggests (1)**
98:13
**suitable (1)**
69:5
**Suite (7)**
13:22;15:5,14;16:6;
17:5;18:5;19:13
**Sultan (1)**
19:11
**sum (2)**
77:16;88:7
**summaries (1)**
27:3
**summarize (3)**
41:22;42:13;92:4
**summary (2)**
36:14;39:14
**summons (14)**
73:8,10;74:18;
76:12;78:3;80:6;
82:23;83:16;84:4;
86:9;87:1,17;88:17;
90:4
**supplement (1)**
41:7
**support (1)**
20:12
**suppose (1)**

41:6
**sure (26)**
20:23;21:23;23:10;
29:12;30:9,25;32:10;
34:1;55:1;58:10;61:9,
10,11;66:21;73:18,
19;74:13;75:13,15;
79:7;80:13;84:19;
93:11;94:7,11;98:8
**surely (1)**
43:20
**sureties (1)**
44:7
**surprising (1)**
90:8
**Surprisingly (1)**
73:12
**Susan (1)**
88:16
**suspension (1)**
45:23
**sustainable (1)**
52:3
**sympathetic (1)**
74:1
**sync (1)**
79:3
**Syracuse (1)**
17:23
**system (1)**
53:20

**T**

**table (1)**
64:5
**tackling (1)**
20:18
**takers (1)**
83:23
**talk (9)**
34:7;35:15;51:7,24;
53:15;54:3,6;58:11;
95:24
**talked (2)**
76:17;97:16
**talking (4)**
29:15,23;35:9;
47:14
**talks (5)**
31:15;34:20;35:10,
14;67:18
**TARTER (1)**
18:11
**team (2)**
48:19;77:17
**telephone (2)**
92:11,11
**telling (1)**
72:10
**TEMES (4)**
17:25;71:21,21;
72:11

**ten (3)**
31:13,21;41:17
**tenant (1)**
82:2
**tens (1)**
29:15
**tension (1)**
45:3
**terminal (1)**
66:3
**Terri (1)**
61:24
**terrific (1)**
34:2
**Thanks (10)**
22:7;37:24;54:4;
66:5;69:23;71:7;
72:25;80:1;100:21,25
**thence (1)**
45:7
**theory (1)**
56:14
**there'll (1)**
99:22
**thinking (6)**
42:13;45:25;48:11,
25;52:20;76:23
**Third (2)**
19:12;94:18
**Thirdly (1)**
43:12
**thirty (4)**
46:23,24;84:8;
96:16
**thirty-day (1)**
86:15
**though (3)**
28:8;66:25;96:6
**thought (8)**
20:9,10;24:9;35:16;
46:22;58:4;64:3;
94:11
**thoughts (2)**
25:12,14
**thousand (1)**
74:8
**thousands (1)**
29:15
**three (6)**
49:7,14;62:13;92:3,
11;95:24
**threshold (2)**
41:23;50:25
**throughout (1)**
93:10
**ties (1)**
72:4
**Times (4)**
16:15;57:14;69:19;
84:11
**timing (2)**
40:12;77:10
**tirelessly (1)**

96:14
**today (24)**
20:14;22:20;23:2;
29:20;30:3;36:10;
55:21;58:23;59:9;
70:2;71:2;74:10;75:7;
79:18;80:14;83:7;
89:25;92:5;96:2;
97:18;99:24;100:13,
17;101:2
**today's (4)**
35:21;58:25;61:1;
77:21
**Todd (1)**
65:14
**together (3)**
26:19;75:16;77:13
**TOGUT (27)**
8:3;9:2,7,12,17,22;
10:2,7,12,17,22;11:2,
7,12,17,22;12:2,7,12,
17,22;13:2;20:15;
21:9;37:6;71:10;92:2
**told (3)**
42:15;59:1;72:4
**tolling (2)**
96:19,24
**top (2)**
25:24;46:9
**totaling (10)**
37:18;73:7;78:2;
81:6;82:22;83:15;
84:3;86:7;87:16;
88:16
**totally (1)**
93:9
**touch (3)**
27:8;60:21;75:22
**towards (3)**
46:2;49:24;51:23
**traced (1)**
82:3
**track (4)**
24:17;48:14;49:21;
50:11
**tracked (1)**
51:11
**tracking (1)**
51:5
**Transcribed (1)**
13:20
**transcript (5)**
31:7;37:2;38:11;
39:13;66:20
**transcripts (1)**
74:9
**transfer (8)**
44:9;74:18;76:11;
78:2,17;80:5;85:6;
87:1
**transferee (1)**
43:2
**transferring (1)**

44:1
**transfers (22)**
37:18;42:16,17,21,
22,24;43:6,7,11,18,
21,24;56:24;73:7;
81:6;82:22;83:15;
84:3;86:7;87:15;
88:16;90:3
**transit (1)**
91:7
**treated (1)**
92:14
**treatment (1)**
38:20
**Tree (4)**
11:14;82:18,21;
83:6
**Tremada (1)**
97:24
**trial (1)**
85:15
**tricky (1)**
77:1
**triggering (2)**
56:16;57:13
**Triomphe (15)**
9:9;16:13;21:5,13,
20;37:8,17;40:6,12,
20,23;50:22;52:24;
53:1;56:10
**true (2)**
82:2,7
**trust (1)**
68:1
**TRUSTEE (94)**
8:4;9:4,9,14,19,24;
10:4,9,14,19,24;11:4,
9,14,19,24;12:4,9,14,
19,24;13:4;20:16;
22:11,13;23:23;
26:11,19;28:4,9,13,
16,17,18;31:14;
32:17;33:5,22;34:18;
37:1,14;38:2;39:8;
40:16,18;41:12,24;
42:17;43:10,12,25;
44:23;46:8,12;47:4,
10;49:10,16,19;56:9;
58:14;59:8;60:17,25;
61:9,23;62:15;64:11;
66:12;69:20;70:3,6;
73:5,6;74:2,17;76:10;
78:16;80:19;82:21;
84:2,14;85:5;87:15;
88:14;92:2,22,24;
95:8,9;96:9,18;97:2;
99:18
**trustees (1)**
60:13
**trustee's (13)**
41:12;43:22;47:4,
12;56:15;57:6,15;
63:6,11,13,18;97:6;

100:18
**try (8)**
22:3;24:15;29:22;
30:3,25;52:7;73:19;
82:8
**trying (6)**
52:24;58:9;63:8,9;
69:20;88:7
**turn (5)**
22:8;25:7;40:5;
60:13;91:13
**turned (4)**
77:14;96:4;98:12,
16
**turning (1)**
46:6
**twin (4)**
48:14;49:21;51:4,
11
**two (14)**
21:16;25:11;27:4;
31:16;43:6;49:20;
50:22;52:6;55:20;
56:25;58:24;67:23;
82:1;95:17
**type (1)**
51:1
**typewriter (1)**
52:22
**typical (1)**
92:14
**typically (2)**
36:13;44:7

## U

**ultimately (1)**
77:6
**Um-hum (2)**
27:2;65:17
**under (9)**
27:13;43:3,13,14;
59:13;63:6;85:11;
94:4;95:2
**understood (6)**
29:3;30:2;65:10;
68:25;99:1,12
**undertaking (1)**
24:13
**underwriting (1)**
31:16
**unexpected (1)**
58:19
**Unfortunately (3)**
22:16;26:13;56:20
**United (1)**
8:12
**universally (1)**
25:2
**University (5)**
9:24;17:20;71:11,
22;72:3
**unjust (3)**

43:13,17,20
**unless (12)**
64:14;76:5,21;
78:11,20;84:13;86:2,
13;87:9;88:21;91:12;
97:9
**unnecessary (3)**
48:4;74:7;96:22
**unravel (1)**
65:8
**unsuccessful (1)**
34:24
**up (18)**
20:12;32:8;33:5;
37:15;40:18;47:21;
50:16;58:7;67:18,24;
68:2;69:21;73:20;
83:12;84:11;91:8;
94:14;98:4
**update (10)**
69:17,18;71:11;
91:15,25;96:11;97:8;
99:13;100:5,24
**updates (1)**
72:21
**upon (1)**
55:8
**URBAN (9)**
15:17;63:2,3,24;
64:8,10,18;65:10;
68:7
**Urban's (1)**
67:2
**use (4)**
33:22;51:2,25;99:7
**using (4)**
25:6;57:6;58:15;
62:21
**usually (1)**
39:14

## V

**Valley (8)**
17:3;21:18;22:12,
13,22;29:2;31:11;
62:17
**Valley's (1)**
29:4
**various (2)**
90:3;91:24
**veiled (1)**
43:24
**verb (1)**
34:4
**VERONIQUE (2)**
15:17;63:2
**versus (1)**
52:2
**via (2)**
92:10,11
**viable (8)**
40:17;41:20,20;

43:14;45:22;52:12;
54:16,20
**video (1)**
53:14
**view (7)**
24:4;42:3;55:9;
57:25;58:18;63:18;
67:2
**virtually (2)**
42:7;43:22
**virtue (1)**
44:9
**vis-a-vis (1)**
38:21
**VNB (21)**
9:4;21:2,5,10,18;
22:8,13;26:11,20;
31:4,11;32:16,20;
34:10;35:4;37:1,6;
52:11,23;53:4;54:8
**voiced (1)**
63:1
**volume (1)**
22:4

## W

**Wagoner (1)**
43:15
**Wait (6)**
25:18;42:8;44:17;
54:21;98:17,21
**waiting (1)**
91:3
**waiving (1)**
90:10
**walk (1)**
60:22
**walking (1)**
47:24
**Wantagh (1)**
18:23
**wants (8)**
20:13;31:23;33:15;
61:8;69:18;70:4;96:4;
98:13
**warranted (1)**
92:19
**Washington (1)**
19:5
**waste (2)**
57:10,20
**wasted (2)**
48:16;73:18
**wasteful (1)**
98:7
**way (12)**
26:22;49:24;54:15,
20;58:10;64:18;
66:23;75:15;77:2;
83:9;89:11;92:14
**website (1)**
24:21

**week (5)**
41:17;62:1,2;69:2;
94:23
**weeks (4)**
49:1,8,14,14
**welcome (4)**
33:23;60:8;82:13;
91:7
**West (7)**
10:24;11:4;17:13;
78:16;79:9;80:3,14
**what's (3)**
28:14;64:3;91:8
**Whereupon (1)**
101:10
**whole (4)**
37:2;57:11;58:1;
82:3
**who's (2)**
54:12;78:21
**whose (1)**
43:23
**who've (1)**
95:13
**wife (1)**
66:2
**WILEY (1)**
19:2
**William (2)**
76:10;77:22
**willing (2)**
26:20;51:1
**WINTERS (1)**
17:11
**wire (1)**
59:13
**wise (1)**
92:18
**wish (3)**
47:4;59:14;64:1
**wished (1)**
49:13
**wishes (1)**
67:8
**withdraw (1)**
85:7
**within (5)**
31:12;49:1;73:14;
90:10,12
**without (7)**
36:18;40:14,15;
48:2;64:24;79:23;
81:20
**witness (1)**
34:20
**Woart (3)**
10:9;74:6,17
**wondering (2)**
26:16;52:13
**word (2)**
44:14;71:5
**worded (1)**
27:21

**word-processing (1)**
53:2
**words (4)**
40:7;64:25,25;65:1
**work (11)**
30:3;39:24;41:11;
49:12;51:24;53:25;
61:15;77:19;81:21;
101:5,5
**workable (2)**
28:13;68:4
**worked (1)**
23:13
**working (6)**
30:22;48:20;96:14;
97:6,14;100:18
**works (2)**
68:3;89:15
**worry (1)**
69:9
**worth (2)**
75:16;88:9
**write (2)**
57:11;58:1
**written (13)**
24:24;27:9,12;28:7;
46:11,25;48:16;
50:12;65:23;94:3;
95:1,4,5
**wrong (1)**
21:3
**wrote (1)**
94:1

**X**

**Xenopoulos (4)**
62:15,15;65:15,21

**Y**

**year (1)**
47:22
**years (3)**
56:23,25;82:1
**Yep (3)**
21:17;67:15;89:3
**yesterday (3)**
86:12;94:2,24
**yield (1)**
100:6
**yielded (1)**
99:16
**York (13)**
8:14,14;9:4;15:6,
15;16:16;17:6,14;
18:6,15;19:14;21:5;
31:11

**Z**

**ZEICHNER (2)**
17:2;31:10

**zoom (2)**
33:18;53:14
**Zweig (1)**
97:25

**1**

**1 (22)**
9:5,10,15,20,25;
10:5,10,15,20,25;
11:5,10,15,20,25;
12:5,10,15,20,25;
13:5;99:16
**1.6-plus (1)**
42:15
**10 (1)**
20:3
**10:00 (1)**
8:17
**1001 (1)**
15:15
**10017 (1)**
19:14
**10018 (1)**
18:15
**10036 (3)**
16:16;17:6,14
**1007 (1)**
15:6
**1017 (1)**
18:6
**1023 (3)**
72:16,18;73:1
**1067 (1)**
97:24
**107 (1)**
15:14
**1071 (1)**
78:14
**1073 (1)**
80:1
**1077 (1)**
83:24
**1084 (1)**
97:24
**1096 (2)**
98:1,3
**10th (1)**
90:4
**11:51 (1)**
101:10
**110,000-dollar (1)**
76:11
**1100 (1)**
98:1
**1113 (1)**
21:10
**1120 (1)**
15:5
**114,500 (1)**
88:17
**1141 (4)**
21:7,11;68:8;69:24

**1146 (5)**
21:7,11;71:1,2,6
**11530 (1)**
16:7
**1158 (2)**
21:7,13
**116,000-dollar (1)**
78:17
**1179 (1)**
18:23
**11th (1)**
18:14
**12 (4)**
44:20,20,21;84:17
**1211 (1)**
17:4
**125,000 (1)**
83:15
**12c (1)**
58:20
**12th (21)**
25:17,20,22;26:1,6;
62:9;67:22;68:13;
69:17;70:24;71:17;
72:12;73:23;85:15,
24;86:16;88:23;
89:15;93:10,10,10
**13 (1)**
38:11
**1320 (1)**
17:23
**133,000 (1)**
99:17
**1350 (1)**
18:13
**13th (2)**
88:18;90:5
**145 (3)**
11:19;83:12,21
**14th (1)**
38:1
**15 (7)**
36:7,8;54:9,10;
55:3,3,5
**150,000-dollar (1)**
80:5
**15th (13)**
23:16,17;92:21;
93:4,11;94:7;95:7,19;
97:16,21;98:7;99:3,5
**16 (1)**
38:12
**161 (3)**
10:24;78:16;79:9
**169 (3)**
11:4;80:2,14
**16th (3)**
13:22;38:9,25
**1700 (1)**
18:5
**175,000 (1)**
82:22
**17th (4)**

90:24;92:8;93:21;
94:21
**18th (2)**
17:22;85:10
**19 (1)**
39:13
**1900 (1)**
19:13
**19th (1)**
90:23
**1st (1)**
85:11

**2**

**2 (14)**
13:6;73:9;74:19;
76:12;78:3;80:6;
82:24;83:16;84:4;
86:9;87:1,17;88:17;
90:4
**200 (1)**
17:13
**20036 (1)**
19:5
**2004 (14)**
13:9,11,14;90:1,16;
91:14;92:3,7;93:20;
94:4,8,18,20;95:2
**2019 (1)**
72:4
**2023 (2)**
8:16;36:8
**2050 (1)**
19:4
**21 (1)**
38:12
**210,000-dollar (1)**
85:6
**21-10699 (1)**
20:5
**22 (4)**
11:4;39:13;80:3,14
**22-01113-dsj (1)**
9:2
**22-01141-dsj (1)**
9:12
**22-01146-dsj (1)**
9:17
**22-01158-dsj (1)**
9:7
**22-1113 (2)**
21:6;37:5
**22-1141 (3)**
60:10;61:20;65:13
**22-1146 (1)**
70:8
**22-1158 (2)**
37:7,16
**22nd (1)**
23:15
**23 (2)**
8:16;39:13

**23,600 (1)**
81:12
**23-01023-dsj (1)**
9:22
**23-01062-dsj (1)**
10:2
**23-01066 (1)**
74:6
**23-01066-dsj (1)**
10:7
**23-01069-dsj (1)**
10:12
**23-01071-dsj (1)**
10:17
**23-01073-dsj (1)**
10:22
**23-01074-dsj (1)**
11:2
**23-01075-dsj (1)**
11:7
**23-01076-dsj (1)**
11:12
**23-01077-dsj (1)**
11:17
**23-01079-dsj (1)**
11:22
**23-01080-dsj (1)**
12:2
**23-01081-dsj (1)**
12:7
**23-01083-dsj (1)**
12:12
**23-01086-dsj (1)**
12:17
**23-01092-dsj (1)**
12:22
**23-01094-dsj (2)**
8:6;13:2
**23-1023 (1)**
71:10
**23-1062 (2)**
73:2;74:9
**23-1063 (1)**
97:23
**23-1066 (1)**
74:15
**23-1069 (2)**
76:8;77:22
**23-1071 (1)**
77:23
**23-1073 (1)**
78:14
**23-1074 (1)**
80:2
**23-1075 (2)**
80:16;82:17
**23-1076 (1)**
82:18
**23-1077 (1)**
83:12
**23-1079 (1)**
83:25
**23-1080 (1)**

85:3
**23-1081 (1)**
86:5
**23-1083 (1)**
86:22
**23-1086 (1)**
87:13
**23-1092 (2)**
88:12;89:20
**23-1094 (1)**
89:23
**23rd (1)**
38:15
**25,000-dollar (1)**
86:25
**25th (1)**
94:23
**26th (3)**
38:7;39:13;94:24
**27 (2)**
54:9;55:2
**27th (2)**
36:7;92:10

**3**

**3 (4)**
13:7;73:11;88:19;
90:6
**300,000 (1)**
84:3
**302263-0885 (1)**
13:24
**30th (2)**
73:6;84:11
**31st (3)**
26:11;74:16;76:9
**3305 (1)**
18:22
**333 (3)**
11:9;18:3;80:16
**34 (1)**
38:2
**35 (1)**
38:3
**35,000-dollar (1)**
99:18
**3rd (9)**
73:9;74:20;76:13;
78:15;80:18;81:7;
82:20;84:1;85:4

**4**

**4 (15)**
10:24;13:10;74:21;
76:14;78:5,16;79:9;
80:8;83:1,18;84:6;
86:11;87:3,19;90:6
**4/17/2023 (3)**
13:7,10,13
**40th (1)**
17:5

**41st (1)**
17:13
**44 (1)**
38:12
**46/47 (2)**
10:19;77:24
**46th (3)**
11:9;18:3;80:16
**47 (1)**
38:18
**48 (1)**
38:18
**488 (1)**
15:4
**4th (9)**
78:4;80:7;82:24;
83:17;84:5;86:10;
87:2,18;93:23

**5**

**5 (4)**
13:13;78:19;81:8;
85:8
**5/12 (1)**
25:19
**509 (1)**
16:6
**521 (1)**
18:4
**550b (1)**
43:3
**5th (1)**
87:14

**6**

**6 (3)**
78:5;85:8;88:21
**6.1b (1)**
85:11
**64 (1)**
97:23
**666 (1)**
16:5
**6th (10)**
73:11;74:20;76:14;
80:7;82:25;83:18;
84:6;86:11;87:3,18

**7**

**7 (32)**
8:4;9:3,8,13,18,23;
10:3,8,13,18,23;11:3,
8,13,18,23;12:3,8,13,
18,23;13:3;16:15;
20:16;22:11;28:17;
37:13;49:18;60:17;
73:5;92:2;96:9
**7/12 (2)**
70:16;90:20
**7056 (1)**

36:12
**711 (1)**
19:12
**7227 (1)**
13:22
**73,315 (1)**
73:8
**7th (3)**
97:19;99:2,6

**8**

**85020 (1)**
13:23
**888-C (1)**
15:13

**9**

**900,000 (1)**
62:3
**9019 (1)**
61:25
**960- (1)**
43:10
**960,000 (1)**
42:16
**9th (3)**
38:24;78:18;88:21